**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- X

In re:

SOUNDVIEW ELITE, LTD., et al.,

                      Debtors.[1]

-------------------------------------------------------------X

Case Nos. 13-13098 (REG)
(Joint Administration Pending)

# DECLARATION OF ALPHONSE FLETCHER, JR., PURSUANT TO LOCAL RULE 1007-2

**ALPHONSE FLETCHER, JR.,** being duly sworn, deposes and says:

1. I am a Director of Soundview Elite, Ltd., Soundview Premium, Ltd., Soundview Star, Ltd., Elite Designated, Star Designated and Premium Designated, each a Cayman Island exempted company (collectively, the "Debtors"). As such, I am fully familiar with the facts set forth herein and am duly authorized to submit this Declaration in support of the petitions by the Debtors for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed on the date hereof (the "Petition Date").

2. I submit this Declaration pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"). Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge and my review of relevant documents.

## THE DEBTORS BUSINESS FACTORS PRECIPITATING THE CHAPTER 11 CASES

3. These cases consist of six (6) Debtors: three (3) Limited Debtors and three (3) SPV Debtors, all as defined below.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number are: (i) Soundview Elite, Ltd. (9469) (13-13098), (ii) Soundview Premium, Ltd. (9535) (13-13099); (iii) Soundview Star ,Ltd. (0416) (13-13101); (iv) Elite Designated (9735) (13-13102); (v) Star Designated (9713) (13-13104); and (vi) Premium Designated (9730) (13-13103).

1

## THE LIMITED DEBTORS

4. SoundView Elite, Ltd., SoundView Premium, Ltd., and SoundView Star, Ltd., (collectively, the "Limited Debtors") are open ended mutual funds created in the early 2000s by the Citco Group of Companies ("Citco") as part of its so-called Richcourt Group of Funds. Two (2) of these entities: Soundview Star, Ltd. and Soundview Elite, Ltd. were originally incorporated by Citco in the Bahamas in May 2002 and October 2003 respectively, but were then transferred by way of continuation to the Cayman Islands in June of 2005. Soundview Premium, Ltd. was incorporated by Citco in the Cayman Islands on November 21, 2005. These three (3) Limited Debtors are "Exempted Companies" under the provisions of the Cayman Companies Law.

5. The Confidential Private Placement Memoranda ("PPM") for Soundview Elite, Ltd. was prepared and distributed by Citco to potential investors.[2] The PPM described the investment parameters for those investing in the Funds, specifically including the following risk warnings:

> The circulation and distribution of this memorandum in certain countries is restricted by law. In particular, this memorandum may not be circulated or distributed in the United States.
>
> \*   \*   \*
>
> Certain actual and potential conflicts of interest exist in the structure and operations of the Fund. The Shares are suitable for purchase only by sophisticated high net worth investors…which are able to bear the potential loss of their entire investment.
>
> \*   \*   \*
>
> The Fund is responsible for all … expenses incurred by the Fund in the ordinary course of its business, including, without limitation, legal, accounting and auditing fees and expenses… . The Fund will also be responsible for any extraordinary expenses that it may incur … "FEES AND EXPENSES" must be paid regardless of whether the Fund realizes profits.

---

[2] I have used the PPM for Elite for the following discussion, but it is substantially identical to the PPMs for the other two Limited Debtors.

2

2544942

\* \* \*

A shareholder will not be able to liquidate its investment of the Fund immediately after deciding to do so… . The Fund may limit, defer or suspend redemptions under certain circumstances… . Further the ability of the shareholders to redeem Shares will be subject to the Fund's ability to make withdrawals from the Trading Vehicles, which may be restricted as described in their Memorandum.

\* \* \*

**Shareholders Will Not Participate In Management**

The Shares are nonvoting and as such will not entitle any of the holders thereof to participate in the management of the Fund.

\* \* \*

The Fund is not registered as an investment company under the U.S. Investment Company Act. Therefore, investors in the Fund will not be afforded the protective measures provided by the U.S. Investment Company Act… (which, among other things, require registered investment companies to have a majority of disinterested directors…).

\* \* \*

**Litigation**

The Fund might be named as a defendant in a lawsuit or regulatory action stemming from the conduct of its business and the activities of third parties with which it has business relationships. In the event such litigation were to occur, the Fund would bear the cost of defending against it and be at further risk if the case were to be lost.

\* \* \*

**Conflicts of Interest**

The Directors are affiliates of the administrator… . They are also affiliates of the Citco Group which is a minority shareholder of the Investment Manager…. Therefore, the directors may have a conflict of interest with respect to their duties to manage the Fund in the best interest of its shareholders… . There is an absence of arms-length negotiation with respect to the terms of the compensation payable to such parties pursuant to their respective agreements with the Fund.

\* \* \*

[T]he Directors do not intend to declare and pay dividends to shareholders.

\* \* \*

2544942

> The Directors, the Investment Manager, the Administrator, the Subadministrator… and their respective principals will not devote their time exclusively to the management or administration (as applicable) of the Fund… ."

Confidential Private Placement Memorandum for SoundView Elite, Ltd. (A Cayman Islands exempted company) dated June 1, 2005, (hereinafter "PPM").  A copy of the PPM (without exhibits) is annexed hereto as **Exhibit A**.

6. Each and every purchaser of Shares in the Fund was required to execute a Subscription Agreement ("Subscription Agreement") indicating that they had read and were fully familiar with the PPM.  A copy of the Subscription Agreement for Limited Debtor Soundview Elite, Ltd. is annexed hereto as **Exhibit B**.

7. Each of the Limited Debtors has one Class B Shareholder, with Class B representing the management and decision-making interests in each Debtors.  In the case of the Limited Debtors, the original Class B shareholder was Citco.  Classes D and E are the investor shares in each debtor with Class D representing investments made in dollars, and Class E representing investments made in Euros.

## CITCO'S INVESTMENT IN ITS OWN FUND

8. Because U.S. conflict of interest rules do not apply to the Debtors, on two (2) dates, September 1, 2005 and July 2, 2007, Citco Global Custody (NA) N.V., an affiliate of Citco as Class B Management Shareholder, made purchases of Class D investor shares in each of the Limited Debtors at an aggregate investment price (spread across the three Limited Debtors) of $16,803,640.33.

9. Thereafter in 2008, the related Citco managing entity sought to exit from its control and management of the fund by selling its Class B Management Shares in the Limited Debtors along with its management control of certain other entities forming the Richcourt Group.

4

As a result, on June 12, 2008, Fletcher Asset Management and affiliates purchased 85% of the Management Shares of the Limited Debtors and certain other entities, paying Citco $25,000,000 in consideration for the same.

10. Attached hereto as **Exhibit C**, is a copy of an organizational chart as it exists today following the acquisition of the Debtors by Fletcher Asset Management and affiliates.

## CITCO'S REDEMPTION DEMAND

11. On May 26, 2010, Citco sought to redeem the whole of its Class D investor Shares in the Limited Debtors. However, pursuant to the PPM that Citco had created and marketed (Exhibit "A" hereto), as agreed to by Citco in its own Subscription Agreement (*See* Exhibit "B" hereto) severe restrictions were in place on redemptions constituting more than 10% of the net asset values (NAV) of the Limited Debtors. Nonetheless, during the period September 30, 2010, through March 31, 2011, Citco was paid $8,315,342.28 by the Limited Debtors on account of its redemption requests.

12. The Limited Debtors do not dispute that Citco is a creditor of the Limited Debtors for the balance of its redemption request.

## THE SPV DEBTORS

13. On or about March 19, 2009, in an effort to address certain redemption requests, Elite Designated, Premium Designated, and Star Designated, (collectively, the "SPV Debtors") were formed as exempted companies registered in the Cayman Islands under the Companies Law. The purpose of the SPV Debtors as expressed in Article 38 of their Articles of Incorporation was to act as a closed end investment fund housing the illiquid assets of each of the Limited Debtors, respectively. The SPV Debtors were formed in such a way that the same shareholders in each class of Shares as were holders of the Limited Debtors became shareholders

of the SPV Debtors, in like proportion. Said differently, each investor's rights as to the Debtors' asset pools as they existed prior to the formation of the SPV Debtors remained unchanged with the singular exception that Fund assets were now divided between SPV Debtors and the Limited Debtors.

### THE WINDING UP PETITIONS FOR THE SPV DEBTORS

14. On August 14, 2013, "Winding Up" petitions (akin to an involuntary bankruptcy petition) were filed in the Grand Court of the Cayman Islands against the SPV Debtors (the "SPV Winding Up Petitions") by Deborah Hicks Midanek, a former non-management director of the Debtors who had resigned from the Debtors on June 19, 2013. Midanek's resignation came after the Debtors' Boards had removed her as a Director on June 12, 2013. Midanek filed the SPV Winding Up Petitions on behalf of Optima Absolute Return Fund, Ltd. ("Optima") and America Alternative Investments Ltd. ("America"), alleged redeeming shareholders of the SPV Debtors. Optima's Winding Up Petitions against Elite Designated and Premium Designated allege unpaid amounts of $435,688.53 and $263,776.14, respectively. America's Winding Up Petition against Star Designated alleges an unpaid amount of $199,621.93. The hearing on the three (3) SPV Winding Up petitions filed by Midanek on behalf of Optima and America, respectively have been scheduled by the Cayman Court to be heard September 24, 2013, at 11:00 a.m. EST. The SPV Winding Up Petitions are annexed hereto as **Exhibits D, E** & **F**.

### THE WINDING UP PETITIONS FOR THE LIMITED DEBTORS

15. On August 20, 2013, nearly two and one-half (2 ½) years following the Debtors' last payment on Citco's 2010 redemption request, and six (6) days after Midanek's SPV Winding Up Petitions, Citco filed its own "Winding Up" petitions under Cayman law for the Limited

Debtors with the Grand Court of the Cayman Islands (the "Citco Winding up Petitions"). Citco's Winding Up petitions, copies of which are annexed hereto as **Exhibits G, H** & **I** allege that "your petitioner [is] a creditor or potential contingent creditor of the company for the amount of the redemption price." No activity has occurred with respect to the Citco Winding Up Petitions, except that the Cayman Court has scheduled a hearing to consider appointment of liquidators, also on September 24, 2013 at 11:00 a.m. EST.

## EFFICIENCIES AND INEFFICIENCIES

16. Midanek seeks appointment of Kenneth Krys and Margot MacInnis as joint liquidators for the three (3) SPV Debtors, while Citco seeks appointment of Matthew Wright and Peter Anderson as joint liquidators for the three (3) Limited Debtors. Both the Limited Debtors and the SPV Debtors have the same managers, same shareholders and same creditors. As described in more detail below, virtually all of the Debtor's assets, including $19,167,313.78 in cash is located in the United States as are the Debtors' headquarters, management and control, which is located at 48 Wall Street, New York, New York.

## WILMINGTON TRUST ACCOUNTS AND INTERPLEADER ACTION

17. Nearly[3] All of the Debtors Cash, aggregating $19,167,313.78 is housed at Wilmington Trust and is the subject of an interpleader action brought by Wilmington Trust, National Association ("Wilmington Trust") in the Delaware Courts, and captioned, *Wilmington Trust, National Association v. Soundview Elite Ltd., et al,* Superior Court of Delaware, new Castle County, C.A. No. N13C-06-156-JTV-CCLD (the "Interpleader Action").

18. During the months of November 2012, December 2012, and January 2013, each of the Debtors entered into a substantially similar Custody Account Agreement (collectively, the "Agreements") with Wilmington Trust, National Association ("Wilmington Trust"), pursuant to

---

[3] Certain other cash is housed with creditor Citco, as listed on Schedule 7 hereto.

which, among other things, Wilmington Trust maintains custody of each Debtors' cash. The Custody Agreements were created by a former director of the Debtors, Gerti Muho ("Muho"), with, at the time, full authority of the Debtors' Boards. The Agreements provide that Wilmington Trust will "[m]ake any payments [the Debtors] instruct us to make."

19. The cash in Wilmington Trust's possession is the only source of cash available for the Debtors to be able to fund expenses, including professional fees and other reorganization/liquidation expenses. Upon information and belief, the current cash balances in the Debtors' Wilmington Trust accounts is as follows:

| Debtor | Wilmington Trust Account | Amount of Cash Held at Wilmington Trust |
|---|---|---|
| Soundview Elite, Ltd. | Account 103183 | $5,324,617.96 |
| Soundview Premium, Ltd. | Account 103186 | $637,066.46 |
| Soundview Star, Ltd. | Account 103184 | $3,280,557.56 |
| Elite Designated | Account 103194 | $3,369,768.75 |
| Star Designated | Account 103185 | $4,188,834.33 |
| Premium Designated | Account 103191 | $2,366,468.72 |
| | Total: | **$19,167,313.78** |

20. On April 3, 2013, Muho ceased to be a director of the Debtors. As a result, after April 3, 2013, he had no authority, actual or otherwise, to act on behalf of, or to bind the Debtors. Nonetheless, on or about May 7, 2013, Muho requested that $5,000,000 be transferred out of Wilmington Trust and delivered to his own entity, Leveraged Hawk, Inc. Those instructions directly contradicted instructions previously provided by the Debtors to Wilmington

2544942

Trust on May 1, 2013, to the effect that Mr. Muho "was no longer an authorized representative of the [Debtors] and could not authorize transfers to or from any of the accounts."

21.   The Debtors provided Wilmington Trust with proof that Muho was neither a director, nor authorized signatory, and that the instructions and documentation provided to Wilmington Trust by Muho were fraudulent and of no force and effect. Nevertheless, and perhaps understandably in light of the conflicting instructions, Wilmington Trust froze the Debtors' accounts and thereafter instituted the Interpleader Action.

22.   On or about July 23, 2013, the Debtors filed a motion for, *inter alia*, summary judgment in the Interpleader Action, directing disbursement of the Debtors' funds pursuant to the Debtors' instructions. At a hearing held on August 28, 2013, the court deferred its ruling on the summary judgment motion, directing that Muho and Leveraged Hawk, Inc. file a response to the Motion within twenty (20) days.

23.   No such response was timely filed, and instead on September 20, 2013, counsel for Leverage Hawk, Inc. filed a motion to withdraw as counsel.

## **THE DEBTOR'S GOALS IN THESE PROCEEDINGS**

24.   This proceeding is filed firstly, in order to obtain the benefit of the automatic stay and provide the enhanced procedural and substantive protections that U.S. Courts provide to creditors and all parties of interest. Unlike the situation in the affiliated case, *In Re Fletcher International, Limited*, Case No. 12-12796 (REG) where foreign liquidators were appointed in Bermuda prior to the filing of the Chapter 11 petition, here the foreign Cayman Islands proceedings are in their infancy, with no more than a single Petition for Winding Up having been filed against each Debtor and the Cayman Court having done nothing more than schedule a hearing, which as of this filing has not yet been held. With respect to the impact of the automatic

stay herein to the Cayman Islands matter, the Debtors respectfully refers to this Court to its oral ruling in the affiliated case, *Fletcher International, Ltd.*, Case No. 12-12796; Adv. No. 12-01740 on July 27, 2012 (see Transcript, Adversary Pro. Docket No. 48 at pages 164-169).

25.     Second, this proceeding will seek immediate access to the funds at Wilmington Trust, at least for the purpose of covering legal and financial professionals the Debtor desperately requires for moving towards formulation of a plan of orderly liquidation, maximizing value for all stakeholders.

26.     Third, through the chapter 11 process, the Debtors intend to utilize their exclusivity periods to formulate a plan of orderly liquidation.

## **MISCELLANEOUS**

27.     The Debtors do not intend at this time to seek immediate emergency relief, but reserve rights to file "first-day motions" as needed. The Debtors initially do intend to seek joint administration of these Debtors' Chapter 11 cases, retention of Porzio Bromberg & Newman, P.C. as counsel, and Cohn Reznick as financial advisors and an order establishing interim compensation procedures. Pleadings pertaining to each of these items will be filed shortly.

28.     Attached hereto is a list of the schedules of information required by Local Rule 1007-2. This information is accurate to my information and belief. However, the Debtors reserve all rights to supplement and revise this information.

I hereby declare under penalty of perjury that the foregoing is true.

By:   /s/ Alphonse Fletcher, Jr.
      Alphonse Fletcher, Jr.
      Director

Dated: September 24, 2013

# SCHEDULE 1
## 20 Largest Unsecured Claims

As required under Local Rule 1007-2(a)(4), the following is a schedule of the Debtors' 20 largest unsecured claims.

| CREDITOR | ADDRESS | AMOUNT OF CLAIM | CONTINGENT, UNLIQUIDATED, DISPUTED, OR PARTIALLY SECURED |
|---|---|---|---|
| Multiple Investors/Shareholders | | $11,793,740.00 | Unliquidated |
| Citco | Naritaweg 165 Amsterdam, 1043 Netherlands | $ 8,488,298,.05 | Unliquidated |
| Soundview Premium | 48 Wall Street New York, NY 10005 | $ 6,021,020.00 | Unliquidated |
| Pasig | C/O Citco Global Custody Naritaweg 165 Amsterdam 1043 Netherlands | $ 3,061,559.00 | Unliquidated |
| Soundview Star | 48 Wall Street New York, NY 10005 | $ 3,037,547.00 | Unliquidated |
| Richcourt Allweather Fund | c/o Deborah Hicks Midanek 81 South Charles St. Grenada, MS 38901 | $ 1,935,459.00 | Unliquidated |
| Optima Absolute Return Fund, Ltd., c/o Midanek | Intertrust Corporate Services (BVI) Ltd 171 Main St. PO Box 4041, Road Town, Tortola, British Virgin Islands VG1110 | $ 699,464.67 | Unliquidated |
| Lampost | 7777 Glades Rd. Baca Raton, FL 33434 | $225,000.00 | Unliquidated |
| America Alternative Investments, Ltd., c/o Midanek | Intertrust Corporate Services (BVI) Ltd 171 Main St. PO Box 4041, Road Town, Tortola, British Virgin Islands VG1110 | $ 199,621.93 | Unliquidated |
| RF Services | 48 Wall Street New York, NY 10005 | $175,398.00 | Unliquidated |
| Pinnacle Fund Administration | 15720 John J. Delaney Drive Suite 206 Charlotte, NC 28277 | $ 72,000.00 | Unliquidated |
| Richcourt Capital Management | 48 Wall Street New York, NY 10005 | $ 34,149.00 | Unliquidated |

2544942

## **SCHEDULE 2**
## **5 Largest Secured Claims**

As required under Local Rule 1007-2(a)(5), the following lists the Debtors' largest secured claims.[4]

       **None.**

---

[4] The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtors.

12

2544942

# SCHEDULE 3
## Summary of Assets and Liabilities

As required under Local Rule 1007-2(a)(6), the following is a summary of the Debtors' assets and liabilities. The following data is the most current information available and reflects the Debtors' financial condition as of the Petition Date.[5] The information set forth below shall not constitute an admission on behalf of the Debtors, nor is it binding upon the Debtors. The Debtors reserve all rights to challenge the priorities, nature, amount, and status of any claim or debt and of any lien or security interest securing such interest or debt.

*Estimated with Discounts*

| 7/31/2013 | Soundview Elite | Soundview Premium | Soundview Star | Premium Designated | Star Designated | Elite Designated | Total |
|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | |
| Cash | 5,538,847 | 637,066 | 3,280,558 | 3,059,566 | 4,190,648 | 4,129,020 | 20,835,704 |
| Citco Related Investments | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Richcourt Related Investments | 5,822,498 | 6,825,373 | 2,659,454 | 0 | 80,697 | 431,951 | 15,819,972 |
| Unaffiliated Investments | 1,000,894 | 0 | 0 | 2,811,794 | 1,985,993 | 3,273,989 | 9,072,670 |
| FAM Related Investments | 4,122,396 | 44,835 | 1,035,096 | 0 | 0 | 0 | 5,202,327 |
| Due from Leveraged Hawk | 2,067,377 | | | | | | |
| Receivable MRCFA | 1,842,068 | | | | | | 1,842,068 |
| **Total Assets** | 20,394,080 | 7,507,275 | 6,975,107 | 5,871,360 | 6,257,337 | 7,834,959 | 52,772,741 |
| **Liabilities** | | | | | | | |
| Redemptions Payable | 9,684,791 | 6,778,587 | 5,337,314 | 0 | 0 | 0 | 21,800,692 |
| Accrued Expenses | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 72,000 |
| Management Fees | 7,500 | 7,500 | 4,800 | 5,700 | 3,600 | 5,700 | 34,800 |
| Reserves | 2,097,570 | - | 237,588 | 1,077,751 | 1,174,261 | 1,468,266 | 6,055,436 |
| **Total Liabilities** | 11,801,861 | 6,798,087 | 5,591,702 | 1,095,451 | 1,189,861 | 1,485,966 | 27,962,929 |
| **Capital** | 8,592,219 | 709,187 | 1,383,405 | 4,775,909 | 5,067,477 | 6,348,993 | 24,809,812 |

---

[5] These were produced from unaudited books & records and include estimated income, expense, asset values (including values of certain investments of the funds), and liabilities. Further, these estimates may be based on various assumptions regarding litigation, pending litigation, or other factors. As such, these statements remain subject to change until the funds' annual financial statement audit is completed each year. The disclosure of any privileged information in these statements is inadvertent and not intended as a waiver.

# SCHEDULE 4
## Information Relating to Publicly Held Stock, Debenture and Securities of the Debtors

As required under Local Rule 1007-2(a)(7), the following is a list of the stock, debenture and other securities of the Debtors that are held by the Debtors' directors and officers.

None of the Officers or Directors of the Debtors directly hold any stock or other security in the Debtors.  See the Affiliation Chart at **Exhibit C**.

They are owned by Richcourt Holding, Inc., which is in turn owned 85% by Richcourt Acquisition, and 15% by the Citco Group, Ltd.

# SCHEDULE 5
## Debtors' Property Not in the Debtors' Possession

As required under Local Rule 1007-2(a)(8), the following describes the Debtor's property in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, secured creditor or agent for any such entity.

Each of the Debtors entered into a substantially similar Custody Account Agreement with Wilmington Trust, National Association ("Wilmington Trust") during the months of November 2012, December 2012, and January 2013, pursuant to which, among other things, Wilmington Trust maintains custody of the Debtors' cash.

2544942

## SCHEDULE 6
### Debtors' Owned and Leased Property

As required under Local Rule 1007-2(a)(9), the following lists premises owned, leased or held under other arrangement from which the Debtors operate their business.

### Owned Property

None.

### Leased Property

None.

2544942

## SCHEDULE 7

As required under Local Rule 1007-2(a)(10), the following describes the location of the Debtors' substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtors outside the territorial limits of the United States.

### Location of the Debtors' Cash

|  | Wilmington Trust | Citco | HSBC | Total |
|---|---|---|---|---|
| **Soundview Elite** | Acct 103183<br>5,324,617.96 | Acct 12209453200<br>214,229.25 | Acct 63996<br>- | 5,538,847.21 |
| **Soundview Premium** | Acct 103186<br>637,066.46 | | | 637,066.46 |
| **Soundview Star** | Acct 103184<br>3,280,557.56 | | | 3,280,557.56 |
| **Premium Designated** | Acct 103191<br>2,366,468.72 | Acct 12411286200<br>693,096.79 | | 3,059,565.51 |
| **Star Designated** | Acct 103185<br>4,188,834.33 | Acct 12411285200<br>1,813.58 | | 4,190,647.91 |
| **Elite Designated** | Acct 103194<br>3,369,768.75 | Acct 12411287200<br>759,251.07 | | 4,129,019.82 |

### Location of the Debtors' Books and Records

The Debtors' books and records are maintained at 48 Wall Street, New York, New York 10005.

### Nature, Location, and Value of Assets Located Outside of the United States

The Debtors do not have assets outside of the territorial United States.

2544942

# SCHEDULE 8
## Litigation Commenced Against the Debtors

As required under Local Rule 1007-2(a)(11), the following is a list of the nature and status of each action or proceeding against the Debtors where a judgment against the Debtors or a seizure of their property may be imminent.

| ACTION OR PROCEEDING | NATURE OF ACTION | STATUS OF ACTION |
|---|---|---|
| *In re Companies Law and In re Soundview Elite Ltd.*, No. 91-2013 (Grand Court of the Cayman Islands, Financial Services Division) | Winding Up Petition | pending |
| *In re Companies Law and In re Premium Designated*, No. 106-2013 (Grand Court of the Cayman Islands, Financial Services Division) | Winding Up Petition | pending |
| *In re Companies Law and In re Elite Designated*, No. 107-2013 (Grand Court of the Cayman Islands, Financial Services Division) | Winding Up Petition | pending |
| *In re Companies Law and In re Star Designated.*, No. 108-2013 (Grand Court of the Cayman Islands, Financial Services Division) | Winding Up Petition | pending |
| *In re Companies Law and In re Soundview Premium Ltd.*, FSD NO. 111-2013 (Grand Court of the Cayman Islands, Financial Services Division) | Winding Up Petition | pending |
| *In re Companies Law and In re Soundview Star Ltd.,* No. 112-2013 (Grand Court of the Cayman Islands, Financial Services Division) | Winding Up Petition | pending |

2544942

## SCHEDULE 9
### Senior Management

As required under Local Rule 1007-2(a)(12), the following lists the names of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience.

| NAME/POSITION | EXPERIENCE/RESPONSIBILITIES |
|---|---|
| Alphonse Fletcher, Jr., Director | Responsible for managing the business and affairs of the Debtors, including supervision of the activities of the administrator and the subadministrator and the maintenance of corporate records. Establish and maintain the Fund's bank, custodial and other accounts. |
| George Ladner, Director | Responsible for managing the business and affairs of the Debtors, including supervision of the activities of the administrator and the subadministrator and the maintenance of corporate records. Establish and maintain the Fund's bank, custodial and other accounts. |
| Floyd Saunders, Corporate Secretary | Responsible for managing the business and affairs of the Debtors, including supervision of the activities of the administrator and the subadministrator and the maintenance of corporate records. Establish and maintain the Fund's bank, custodial and other accounts. |

2544942