Hearing Date and Time: December 17, 2013 at 9:45 a.m. (EST)
Objection Deadline: December 10, 2013, at 12:00 p.m. (EST)

**OSTAD PLLC**
Karen Ostad
185 Great Neck Rd, Suite 330
Great Neck, NY 11021
(917) 443-1558
kostad@ostadllc.com

*Counsel to America Alternative Investments Inc.,*
*Optima Absolute Return Fund Ltd., and Richcourt Allweather Fund Inc.,*



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 13-13098 (REG) |
| | ) | (Jointly Administered) |
| Soundview Elite, Ltd., *et al.,* | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |

## MOTION FOR ORDER DISMISSING OR ABSTAINING FROM PROCEEDING IN THESE CASES, OR GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 105(a), 305(a)(1), 362(d)(2) and 1112(b), BANKRUPTCY RULE 4001 and LOCAL RULE 4001-1

Movants (i) Richcourt Allweather Fund Inc, (ii) Optima Absolute Return Fund,

Ltd. and (iii) America Alternative Investments Inc. (the "Movants") as creditors and

parties in interest of four of the Debtors, Soundview Elite Limited, Elite Designated,

Premium Designated and Star Designated (the "Referenced Debtors") and as petitioners

in Cayman Islands ("Cayman") foreign proceedings for the windup of the Referenced

Debtors, request that this Court:  (i) dismiss these chapter 11 cases or, alternatively, (ii)

grant Movants relief from the automatic stay so they may proceed with the foreign

proceedings and any other proceedings authorized or directed within such foreign

proceedings, and (iii) grant Movants such other and further relief as is just and proper,

pursuant to sections 105(a), 305(a)(1) and 362(d)(2) of the Bankruptcy Code, Bankruptcy

Rule 4001 and Local Rule 4001-1.

## I. INTRODUCTION AND SUMMARY OF ARGUMENTS[1]

1.       This Motion is made in response to this Court's Endorsed Order, dated October 7, 2013 (the "Endorsed Order") directing parties in interest to file briefs on the issue of whether the Court should dismiss the Debtors' petitions or appoint one or more chapter 11 or chapter 7 trustee for the Debtors' estates.  The Movants, which are BVI entities, submit to the jurisdiction of this Court only to the extent of seeking the relief herein and in the Objection to the Debtors' Motion for an Order Imposing Sanctions against the Movants and others for alleged violations of the automatic stay, which Objection is filed contemporaneously herewith.

2.       The Debtors' chapter 11 petitions appear to have been filed without the requisite authority. The Private Placement Memorandum ("PPM") of each Debtor entity states that the authority to enter into a voluntary winding up or liquidation of the company rests with the voting shareholders following a shareholder meeting and shareholder resolution.  (*See, e.g.*, the PPM attached to the Declaration of Alphonse Fletcher, Jr., pursuant to Rule 1007-2 ("Fletcher Aff."), Exhibit A at p. 34.)  The Debtors' filings, while accompanied by a director resolution, lack any evidence of the requisite shareholder resolution needed to file the Debtors' Petitions. Barring such evidence, the petitions should be dismissed as unauthorized filings.

3.       The Debtors are each Cayman Islands ("Cayman") exempt companies which, together with an affiliate, were the subject of winding up petitions being heard by

---

[1] Unless otherwise noted, the facts relevant to this Motion are set forth in the accompanying affidavits of Deborah Hicks Midanek (the "Midanek Affidavit") sworn to on December 2, 2013, and George Giglioli (the "Giglioli Affidavit"), sworn to on November 25, 2013, each filed contemporaneously with this Motion.  Defined terms used herein shall have the meanings set forth in the Midanek Affidavit.

the Cayman Court on the day the Debtors' petitions were filed herein (the "Petition Date").  The Debtors are also part of a larger group of 15 Richcourt Funds, some of which are creditors in previously pending liquidations of various Fletcher Funds in the Caymans.  These cases must be dismissed because the chapter 11 petitions herein were filed by Debtors with no reasonable prospect of reorganizing (as opposed to liquidating), in a bad faith attempt to thwart the existing winding up petitions filed by Movants and other significant creditors and noticed on all parties in mid-August. The Cayman winding up petitions against the three Limited Debtors have resulted in the appointment of official liquidators on the Petition Date. This Court should give comity to the Cayman proceedings and allow the liquidators appointed and to be appointed therein to administer and wind up the Debtors' assets and the assets of other Cayman organized Richcourt Funds for the benefit of all creditors and parties in interest.

4.     The Cayman Islands winding up proceedings are the most efficient and appropriate forum for the wind up of these Cayman Debtors, because all of the Debtors' shareholders and redemption creditors, the relevant regulator of several Debtors (the Cayman Islands Monetary Authority "CIMA"), and Debtors' significant non-cash investments are located outside the U.S. Moreover, the Debtors and other Richcourt Funds have claims against various Fletcher Funds in liquidation in the Caymans. Indeed, the only U.S.-based creditors appear to be professional service firms.  The Debtors' creditors and investors expected to be subject to Cayman laws, and the documents which set forth the Debtors' governance framework and the process of pursuing claims of creditors and shareholders against the Debtors are to be interpreted under Cayman law. One important aspect of proceeding with liquidation of the Debtors in Cayman is

preserving the bargained-for exemptions from U.S. taxation set forth in the PPMs. (*See* Fletcher Aff., Exhibit A at pp. 25-27.) As such, this Court is well within its discretion to abstain from and dismiss these chapter 11 cases.

5.      The Referenced Debtors first tried to stay the Petitions in the Cayman Court by arguing for a stay pending proceedings brought by the BVI Petitioners in the BVI courts. The Debtors then unsuccessfully sought a same-day stay of the Petitions filed by the BVI Petitioners and Citco Petitions before the Cayman Court by filing their chapter 11 petitions on the very day of the Cayman Court hearings on the respective winding up petitions.

6.      These chapter 11 cases are yet another effort by the Debtors' director, Alphonse Fletcher, Jr. ("Mr. Fletcher") who also controls the Debtors' non-debtor Bahamian investment manager Soundview Capital Management Limited ("SCM") "), and several other non-debtor funds in Cayman, to create another obstacle to complicate and delay, rather than simplify, creditor attempts to obtain an orderly and efficient wind down of off-shore investment funds which have: (i) failed to declare their final net asset values ("NAVs") to investors since 2010, (ii) not completed audited reports nor delivered them to their respective investors and fund regulators since 2009 (iii) failed to honor creditor redemption requests since 2011, despite the fact that the great majority of their investors have sought to redeem their investments, despite the existence of cash to at least partially redeem, and despite the funds' failure to notify investors that redemptions were being suspended, (iv) been grossly delinquent in their corporate recordkeeping and compliance with Cayman Companies Law and applicable laws and regulations governing Cayman funds.  During the time of these and other gross delinquencies and breaches, the

Debtors have made substantial transfers to Mr. Fletcher's controlled companies in under

questionable circumstances, without apparent benefit to the Debtors, and have paid

management fees to their Fletcher-controlled investment manager, SCM, as recently as

February, 2013.

7.      As such, the petitions herein were clearly intended to use the automatic

stay as a sword rather than to serve the best interests of creditors or investors.  It would

be inequitable to allow the Debtors' limited assets and funds to be used to pay yet another

set of professionals in another set of liquidation proceedings with no net benefit to

creditors or parties in interest.

8.      If the Court does not dismiss these cases, it should grant Movants relief

from the automatic stay to proceed with the winding up proceedings pending in the

Cayman Islands courts and to permit the liquidators appointed in such winding up

proceedings to take such actions as the Cayman courts and law allow. To the extent it is

determined at a later date that relief is needed in U.S. courts at all, such liquidators may

seek relief.

9.      This Court is well within its discretion, under principles of comity and the

principles set forth in section 1501 of the Bankruptcy Code to give recognition and

comity to the Cayman proceedings and to grant relief from the automatic stay to enable

the Movants to proceed to bringing the orderly winding up of the Referenced Debtors and

other related entities in the forum envisioned by substantially all parties in interest who

formed, invested in and managed the Debtors.

## II.    STATUTORY PREDICATES

10.     The statutory predicates for the relief sought herein are sections 105,

305(a)(1), 362(d)(1) and (2), and 1112(b) of chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code"), as well as Bankruptcy Rule 4001 and Local Rule 4001-1.

### III.    ARGUMENT

### A.    These Cases Should Be Dismissed
Pursuant to the Ultra Vires Doctrine

1.      The Debtors' respective PPMs provide that the entity "may be liquidated

or wound up at any time at the discretion of the holders of a majority of the Voting

Shares at a general meeting of the shareholders." *See, e.g.*, PPM annexed as Exhibit A to

Fletcher Aff. at p. 34.  The Movants have been provided no evidence that such a pre-

petition shareholder meeting or majority vote of Voting Shares occurred or was

documented. The Debtors' filings, while accompanied by a director resolution, lack any

evidence of the requisite shareholder resolution needed to file the Debtors' Petitions.

Barring such evidence, the petitions should be dismissed as unauthorized under their

PPMs and Cayman law.

2.      Such apparent lack of authority is buttressed by the apparent lack of

knowledge of the impending chapter 11 filings by the Debtors' other director, George

Ladner, who submitted an affidavit sworn to on September 23, 2013 in support of a

motion to stay the BVI Petitioners' Cayman Petitions pending the outcome of

proceedings in the BVI courts (see Giglioli Aff. para. 12.)

3.      It is well established that only a party with the proper authority may file a

chapter 11 petition on behalf of a corporation or other entity.  *See Price v. Gurney*, 324

U.S. 100, 104 65 S.Ct. 513, 515, 89 L.Ed. 776 (1945); *In re Stavola/Manson Electric Co.,*

*Inc.*, 94 B.R. 21, 24 (Bankr. D. Ct. 1988).  Authority to file is determined by intra-entity

structure and intra-entity agreements pursuant to the law of incorporation that applies to

the debtor entity. *In re Stavola/Manson Electric Co., Inc.*, 94 B.R. 21, 24 (Bankr. D. Ct. 1988). If a case is filed by an individual without the proper authority, the case must be dismissed. *See Price v. Gurney*, 324 U.S. 100, 104 65 S.Ct. 513, 515, 89 L.Ed. 776 (1945); *In re Stavola/Manson Electric Co., Inc.*, 94 B.R. 21, 24 (Bankr. D. Ct. 1988) (dismissing chapter 11 case filed by corporate president where no specific authorization granted him authority to file). *See also DB Cap. Holdings, LLC v. Aspen HH Ventures, LLC (In re DB Cap. Holdings, LLC)*, Nos. Co-10-046, 10-23242, 2010 WL 4925811, *2-3 (B.A.P. 10th Cir. Dec. 6, 2010)(dismissing chapter 11 case brought by LLC's manager in contravention of Operating Agreement).

4.      Where neither local law nor intra-entity agreements grant power to an individual, or group of individuals, to file a chapter 11 case, none can be inferred. *See In re Stavola/Manson Electric Co., Inc.*, 94 B.R. 21, 24 (Bankr. D. Ct. 1988) (agreement authorizing corporate president to wind up and dissolve corporation could not be inferred to grant him authority to file chapter 11 case). Similarly, a general grant of authority to manage an entity's ordinary course of business does not provide the authority to file insolvency proceedings. *See id.* at 24 (filing of bankruptcy case "goes beyond the daily management of corporate affairs")*; In re DB Cap. Holdings, LLC*, *See also, In re DB Cap. Holdings, LLC)*, 2010 WL 4925811, at *5 (contractual grant of power to manage business did not include authority to file bankruptcy petition).

**B.**      <u>**The Court Should Dismiss or Abstain From These Cases**</u>

1.      This Court has numerous grounds to dismiss or abstain from these Chapter 11 cases.

2.      Section 1112(b) of the Bankruptcy Code requires the Bankruptcy Court to

dismiss cases that, like these, have no reorganization purpose or intent and serve solely to

delay or evade another legal proceeding that has the probability of expeditiously

resolving the issues at hand. The Debtors' own Rule 1007-2 Affidavit concedes there is

no reason for these cases other than to get the benefit of the automatic stay, liquidate the

Debtors and obtain funds from the Delaware interpleader action to pay professionals. *See*

Fletcher Aff. ¶¶ 24-26.

3.        Pursuant to section 1112(b) of the Bankruptcy Code,

> Except as provided in paragraph (2) of this subsection, subsection (c) of this
> section, and section 1104(a)(3), on request of a party in interest, and after notice
> and a hearing, the court *shall* convert a case under this chapter to a case under
> chapter 7 *or dismiss* a case under this chapter, whichever is in the best interests of
> creditors and the estate, for cause. . . .  11 U.S.C. § 1112(b) (emphasis added).

Section 1112(b)(4) sets forth a non-exclusive list of the grounds for cause, which include

"substantial or continuing loss or diminution of the estate and the absence of a probability

of a reorganization. 11 U.S.C. § 1112(b)(4).  A finding of cause for Section 1112(b)

purposes is factual and is based on the totality of circumstances, including whether the

petitions were filed in good faith. *See In re C-TC 9th Ave. Partn. v. Norton Co.*, 113 F.3d

1304, 1310-11 (2d Cir. 1997) (affirming dismissal on grounds of objective futility of the

reorganization process and bad faith); *In re Gen. Growth Prop., Inc.*, 409 B.R. 43, 55

(Bankr. S.D.N.Y. 2009)

4.        Cause, including a lack good faith in filing the petition, has been found to

exist where, as here, a debtor's petition indicates no reorganizational intent, and there is

no "reasonable probability" of reorganization.  *See In re C-TC 9th Ave. Partn. v. Norton

Co.*, 113 F.3d at 1309.  Lack of such probability to reorganize is especially fatal when, as

here, the petition is filed at the eleventh hour to interfere with ongoing legal proceedings

in another venue that have the ability to accomplish the goals of winding up the Debtors for the benefit of their creditors and shareholders.  *See, e.g.*, *In re Squires Motel, LLC*, 416 B.R. 45 (Bankr. N.D.N.Y. 2009) (dismissing case filed on eve of foreclosure sale); *In re Island Helicopters, Inc.*, 211 B.R. 453 (Bankr. E.D.N.Y.  1997) (dismissing case where Debtor filed its chapter 11 petition the day after it lost a final bid in federal court to enjoin its eviction); *In re JER/Jameson Mess Borrower II, LLC*, 461 B.R. 293 (Bankr. Del. 2011) (dismissing case filed on eve of foreclosure sale where no evidence indicated additional value would be realized in bankruptcy process).

5.      Debtors are not permitted to use chapter 11 cases as a litigation tactic, especially where there is a pre-existing court proceeding that can protect the interests of the creditors, shareholders and other interested parties and avoid piecemeal handling of the administration of the Debtors and the other Cayman-based Richcourt Funds.  *In re Island Helicopters, Inc.*, 211 B.R. 453 (Bankr. E.D.N.Y. 1997) (Debtor could not use chapter 11 case to wage political battle with owner of property on which it did business.); *see also*, *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976) (court may dismiss case and defer to other pending proceedings that have a probability of resolving a lawsuit in another court based on "wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation."), 424 U.S. at 817.; *National Mut. Fire Ins. Co.  v. George V. Hamilton,* 571 F. 3d 299, 308 (court can evaluate the convenience of the forum to the parties concerned, the desirability of avoiding piecemeal litigation, whether the other forum's laws apply to the case, the order of the filing of cases in the two jurisdictions and whether the other case will adequately protect the interests of the parties).

6.      Many factors support cause for dismissal here: (i) the Debtors' filing of petitions on the date of hearings scheduled as early as August 14 to wind up and administer the Debtors' estates in Cayman with court-appointed official liquidators,  (ii) the fact that the Debtors are organized under Cayman law, their investors, regulators and non-cash fund investments are offshore and parties in interest (including the Debtors) reasonably expected the wind ups to take place in the Caymans, (iii) the filing of the Debtors' chapter 11 cases in the U.S. jeopardizes the Debtors' intended tax exempt structure and poses significant potential adverse U.S. tax consequences to the Debtors and their investors that were sought to be avoided by the structure of the Debtors, (iv) certain other Cayman funds that are part of the Richcourt Funds and which may also have claims against the Debtors and the Debtors' investment managers and others have commenced or are in the process of commending winding up petitions in Cayman, (v) several Fletcher Funds against which the Debtors and other Richcourt Funds have claims are the subject of winding up proceedings in Cayman, (vi) the Debtors have filed petitions with no reason offered for the filing of these cases other than to stay Cayman proceedings and obtain turnover of monies for the payment of professional fees, (vii) there is no reasonable prospect for reorganization within a reasonable time offered for funds in which the overwhelming majority of investors have sought to redeem their shares several years ago and that have been seriously derelict in their audit and  NAV reporting and other duties to regulators and redeeming shareholders, and (viii) as discussed below, the Cayman winding up proceedings will provide a fair and transparent as well as efficient forum to administer the Debtors' estates.

**C.**    **The Court Should Dismiss or Abstain**
**from These Cases Pursuant to Section 305**
**and Principles of International Comity**

7.    The doctrine of international comity provides that U.S. bankruptcy courts

should decline to exercise jurisdiction out of respect for the laws and interest of a foreign

country.[2]  The principles of comity were codified into the Bankruptcy Code section 1501,

which emphasizes the objectives of  "cooperation between… courts and other competent

authorities of foreign countries,"  "greater legal certainty for trade and investment," fair

and equitable administration of cross-border insolvencies that protects the interests of all

creditors and other parties in interests, including the debtor."  11 U.S.C section 1501(1).

Here, where the Debtors have failed to articulate the benefit of these cases for either

themselves or their creditors, and the Cayman insolvency laws are well established and

respected, principles of comity are particularly strong and tip the balance in favor of

abstention and dismissal of these cases, especially where several other Cayman

proceedings are pending in which the Debtors and other Richcourt Funds have claims.

8.    Bankruptcy Code section 305(a) grants this Court the discretion to dismiss

or suspend all proceedings in a case at any time if "the interests of creditors and the

debtor would be better served by such dismissal or suspension."  11 U.S.C. § 305(a).  *See*

*also GMAM Inv. Funds Trust I v. Globo Comunicacoes E Participacoes S.A. (In re Globo*

*Comunicacoes E Participacoes S.A.)*, 317 B.R. 235, 255 (S.D.N.Y. 2004).  When

deciding whether to dismiss or suspend proceedings pursuant to section 305, courts

---

[2] International comity is "the recognition which one nation allows within its territory to the legislative,
executive and judicial acts of another nation, having due regard both to international duty and convenience,
and to the rights of its own citizens or of other citizens or of other persons who are under the protection of
its laws."  *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).

consider numerous factors, including, *inter alia*, (1) whether another forum is available,

(2) the economy and efficiency of administration; (3) whether federal proceedings are

necessary to reach a just and equitable solution; (4) whether there is an alternative means

of achieving an equitable distribution of assets; (5) whether the debtor and the creditors

are able to work out a less expensive out-of-court arrangement which better serves all

interests in the case; (6) whether a non-federal insolvency has proceeded so far that it

would be costly and time consuming to start afresh with the federal bankruptcy process;

and (7) the purpose for which bankruptcy jurisdiction has been sought. *In re Compania*

*de Alimentos Fargo, S.A.*, 376 B.R. 427, 434 (Bankr. S.D.N.Y. 2007). Additionally,

when a foreign insolvency proceeding is underway, courts must take comity concerns

into account.

9.      When analyzing abstention, the Second Circuit consistently recognizes

and emphasizes the importance of deference to foreign insolvency proceedings. In 2005,

the Second Circuit Court of Appeals explained:

> We have repeatedly held that U.S. courts should ordinarily decline to
> adjudicate creditor claims that are the subject of a foreign bankruptcy
> proceeding. . . . In such cases, deference to the foreign court is appropriate
> so long as the foreign proceedings are procedurally fair and . . . do not
> contravene the laws or public policy of the United States.

*J.P. Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424.

*See also, Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240 (2d Cir. 1999); *In re*

*Maxwell Commun. Corp.,* 93 F.3d 1036, 1048 (2d Cir. 1996), *quoting Cunard S.S. Co. v.*

*Salen Reefer Servs. AB,* 773 F.2d 452, 458 (2d Cir. 1985) ("[D]eference to foreign

insolvency proceedings will, in many cases, facilitate 'equitable, orderly and systematic'

distribution of the debtor's assets.").

10.     The key question, then, is whether "the foreign forum will determine and adjust the parties' rights in a fair and equitable manner." *In re Compania de Alimentos Fargo*, 376 B.R. at 434-35. *See also, In re Gee*, 53 B.R. at 905. If they will, the case is usually dismissed. *See In re Compania de Alimentos Fargo*, 376 B.R. at 434-35 (granting involuntary debtor's motion to dismiss because debtor had limited ties to the U.S., had all business operations, customers, and employees in Argentina, and insolvency proceedings pending in Argentina were considered procedurally and substantively fair); *In re Gee*, 53 B.R. at 904-904 (dismissing chapter 11 case because Cayman insolvency system was deemed similar to U.S. system). *See also J.P. Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (affirming dismissal of action in deference to Mexican insolvency proceeding).

11.     Cayman insolvency proceedings are considered procedurally and substantively fair. *See Hoffman v. Bullmore* (B.A.P. 8th Cir. 2000) (recognizing Cayman liquidation proceeding as analogous to chapter 11 case in the U.S.). *See, also, In re Gee*, 53 B.R. 891, 902-903 (S.D.N.Y. Bankr. 1985) ("The [Cayman] Companies Law . . . is similar to our Bankruptcy Code. . . . [It] provide[s] a comprehensive procedure for the orderly and equitable distribution of the debtor's assets among its creditors.").

12.     Additionally, the purpose of section 305 would be ill served if the Debtors were permitted to pursue these cases. The predecessor to section 305 "was designed to avoid needless duplication of effort by courts and creditors in those cases where an ancillary proceeding in this country could be coordinated with or entirely dismissed in favor of a domiciliary proceeding abroad. . . .," *In re Gee*, 53 B.R. 891, 904 (S.D.N.Y. Bankr. 1985), *quoting Banque de Financement S.A. v. First Nat'l Bank of Boston*, 568

F.2d 911, 921 (2d Cir. 1977) (*cit. omitted*).  Section 305(a) effectuates this purpose as

well.  *See id.* at 905 (section 305 was "designed in part to avoid duplication of effort by

the courts and creditors).

13.     Accordingly, these chapter 11 cases are, at best, duplicative of the existing

Cayman petitions against the Debtors and are unnecessary, wasteful and contravene the

clear purposes of section 305.

14.     Additionally, the use of the Bankruptcy Code by one party to gain

leverage in a separate legal proceeding or out-of-court workout has been frowned upon.

*See, e.g., In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 463 (S.D.N.Y. Bankr. 2008)

(discussing purpose of section 305 and reviewing case history).  The Court may, and

should, apply this principle not only to involuntary petitions filed by creditors, but also to

voluntary petitions.  *Id.*

15.     The Debtors have, in effect, asked the Court to declare the Cayman

winding up petitions and the proceedings pursuant thereto illegitimate and unfair.  They

have provided no evidence of this, though, and their papers offer no substantive reason

for these cases.  The Court should not reward the Debtors' attempt to end-run the

Bankruptcy Code and the Second Circuit's ample case law regarding comity toward

foreign insolvency proceedings.


**D.**     **Relief from the Automatic Stay Should Be Granted**


16.     Alternatively, if the Court does not dismiss or abstain from these cases, the

Court should grant Movants relief from the automatic stay so they may proceed with their

Cayman winding up petitions and any other proceedings authorized or directed within

such foreign proceedings.

17.     Section 362(d) of the Bankruptcy Code provides that:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1)     for cause, including the lack of adequate protection of an interest in property of such party in interest.

(2)     with respect to a stay of an act against property under subsection (a) of this section if—

(A)     the debtor does not have an equity in such property, and

(B)     such property is not necessary to an effective reorganization.

11 U.S.C. §§ 362(d)(1), (d)(2).

18.     Adequate protection of the Movants' investments in and other claims against the Debtors would be lacking during the pendency of these duplicative chapter 11 cases, especially under Fletcher-controlled management that has failed to honor redemption requests, breached reporting obligations to investors and regulators and made transfers that do not appear to have benefitted the Debtors.   Also, adequate protection of the interests of the Debtors' investors and creditors (including the Movants) supports relief from the automatic stay to allow the Debtors' assets to be liquidated under Cayman law and to avoid unintended and unbargained-for potential adverse tax consequences of proceeding to liquidate and distribute the Debtors' assets in a U.S. proceeding.

19.     Additionally, the Debtors' deemed bad faith filing of these cases constitutes cause to modify the automatic stay.  The standard is essentially the same under sections 362(d)(1) and 1112(b) "for bad faith as evidence of cause." *In re 234-6 West 22nd Street Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y 1997).

20.     Also, the automatic stay should be lifted pursuant to section 362(d)(2),

because the Debtors have no equity or economic stake in their assets, which are held for their redeeming shareholders and other creditors. *See* 11 U.S.C. § 362(d); *In re State Street Assoc., L.P.*, 342 B.R. 32, 38-39 (Bankr. N.D.N.Y 2005) (granting stay relief where Debtors had no equity in estate assets or ability to reorganize those assets, and holding the debtor has the burden of showing necessity of assets for a reorganization under section 362(d)(2)). Not only have the Debtors indicated a desire to liquidate, there is no legally authorized prospect for the Debtors to reorganize their assets pursuant to the PPMs.  Accordingly, for all of the reasons stated above, Movants submit that the Court should grant them relief from the automatic stay.

**WHEREFORE**, Movants respectfully request that the Court enter an order (i) dismissing these Chapter 11 cases as to the four Referenced Debtors or, alternatively, (ii) granting Movants relief from the automatic stay so they may proceed with the Cayman proceedings with respect to their winding up petitions and any other proceedings authorized or directed within such foreign proceedings, and (iii) granting Movants such other and further relief as this Court deems just and proper.

Dated: December 2, 2013

Respectfully submitted,

**OSTAD, PLLC**

By:    /s/ Karen Ostad_____
       Karen Ostad, Esq.

*Counsel to America Alternative Investments Inc., Optima Absolute Return Fund Ltd., and Richcourt Allweather Fund Inc.,*