Hearing Date and Time: December 17, 2013 at 9:45 a.m. (Eastern Time)
Objection Deadline: December 10, 2013

**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006 Telephone
(973) 538-5146 Facsimile
-and-
156 West 56th St.
New York, NY 10019
Warren J. Martin Jr.
Mark J. Politan
Terri Jane Freedman

*Counsel to the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X
In re:

    Soundview Elite, Ltd., *et al.*   Case No. 13-13098 (REG)
                                                       (Jointly Administered)

              Debtors
------------------------------------------------------------ X

**AFFIDAVIT OF REBUTTAL TESTIMONY OF RICHARD T.W. ANNETTE IN
CONNECTION WITH THE TRIAL PROCEEDINGS ON DECEMBER 17-18, 2013**

2615892

**AFFIDAVIT**

Richard T.W. Annette, of full age, being duly sworn upon his oath, deposes and states:

1. I am Senior Counsel with the law firm of Stuarts Walker Hersant, Attorneys-at-Law, Cayman Islands counsel for the Debtors.

2. I make this Affidavit to rebut certain statements made by the Joint Liquidators in their filings of December 3, 2013.

3. I have reviewed the brief filed in these matters by the Joint Liquidators (the "**Brief**"), the direct testimony Affidavit of Janet Francis as well as the Affidavit of George P. Giglioli (each an "**Affidavit**", and together the "**Affidavits**" [Dkt. Nos. 97, 100 and 110]. While I find the Affidavits to be generally accurate in their presentations respecting the conduct of the proceedings in the Cayman Islands held on September 24, 2013 [for which I was present throughout], a couple of points bear mentioning with respect to factual statements in the Brief.

4. First, in Paragraphs 19 and 20 of his Affidavit, Mr. Giglioli refers to § 100(2) and § 99 of the Companies Law, for the proposition that a Winding Up is "deemed to commence" at the time of the presentation of the petitions. The effect of these sections is to backdate the operation of the winding-up order (in relation to certain statutory provisions such as § 99) to the time when the petition for winding up was presented.

5. To provide a finer point, the policy behind this rule is that inappropriate transfers of assets after the date the petition is filed (here August 20, 2013), but before the Winding Up order is entered (here September 24, 2013) should be subject to avoidance (unless the Court orders otherwise). The purpose of the combined effect of § 100(2) and § 99 (equivalent

provisions of which have been in existence in English company and insolvency statutes since at least 1862[1]) is to prevent the improper dissipation of the company's assets so as to protect the general body of creditors and to ensure they are paid *pari passu*;[2] it is not to prohibit resort to other Courts whose insolvency processes are also motivated to make a full and fair distribution of a debtor's assets (which is, indeed, the rationale behind the *pari passu* principle itself).

6.  In Paragraph 1 of the Brief, the Joint Liquidators state that "the Cayman Islands proceedings provided the Fletcher team ample notice and opportunity to participate and to oppose the Winding Up petitions and the JOL's appointment." This is true, with respect to the Winding Up petitions. However, it is certainly not true that there was ample time to deal with CIMA's involvement which commenced at the last minute. CIMA only served a Notice of Appearance on Friday, September 20, 2013 and that was late according to the Companies Winding Up Rules (the "**CWR**") (those Rules requiring three days' notice (CWR Order 3 Rule 8 (4) and Saturday and Sunday not being counted for these purposes (Grand Court Rules Order 3 Rule 2 (5)). Indeed, CIMA's affidavit was sent at 4:19 p.m. on Friday, September 20, 2013, just two business days prior to the hearing.

7.  The Debtors were not provided with a copy of CIMA's skeleton argument until mid-day on the September 24, 2013, the day of the hearing. Further, contrary to what is set

---

[1] Sections 129(2) and 127 of the English Insolvency Act 1986, which can be traced back to Sections 84 and 153 of the English Companies Act 1862

[2] Sealy & Milman 2013, vol. 1, p. 135 and *Re Gray's Inn Construction Co Ltd* [1980] 1 WLR 711 at 718-719 (in which Buckley LJ, in the English Court of Appeal, summarized the effect of long-standing authorities); this is further confirmed by Buckley: The Law and Practice under the Companies Acts, 2nd ed., 1875, which, in discussing s. 153 of the Companies Act 1862 (the predecessor of s. 127 of the English Insolvency Act 1986), says at p. 288 *"The words of this section are very wide, and properly so, to prevent, in the interval which must necessarily elapse between the presentation and the hearing of a petition, the improper alienation and dissipation of the property of the company. But the words at the end of the section are necessarily introduced in order to give the Court a discretion to say that a transaction which is, in its opinion, perfectly fair and bona fide shall stand."*

2613597
2615892

forth in Paragraph 1 of the Joint Liquidators Brief, we did not decline to participate; indeed, we attended the hearing and presented argument.

8. As stated, I was personally present in the Grand Court representing the Debtors throughout the day on September 24. Contrary to what is stated in Paragraph 1 of the Joint Liquidators brief, I have no recollection that the Grand Court reached a finding "that the Chapter 11 petitions were merely a delay tactic".

9. Rather, my recollection is that the Court's Order was made on the basis of a finding that the debts claimed by Citco were due and owing.

10. Further, at the hearing, there was no detailed consideration by the Court of any of the separate grounds alleged by CIMA -- the Court acknowledged the matters raised by CIMA but did not reach a concluded view on whether the individual concerns were validated or not.

Further affiant sayeth not.

_____
Richard T.W. Annette

Sworn to before me this 11th day
of December, 2013


_____
A Notary Public

4

2613597
2615892