**HEARING DATE AND TIME: March 5, 2014 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: February 26, 2014 at 4:00 p.m. (Eastern Time)**

**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile
-and-
156 West 56th St.
New York, NY 10019
Warren J. Martin Jr. (admitted *pro hac vice*)
Mark J. Politan

*Counsel to the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X

In re:

      Soundview Elite, Ltd., *et al.*,

                          Debtors.

Case No. 13-13098 (REG)

Jointly Administered

------------------------------------------------------------X

# FIRST INTERIM APPLICATION OF PORZIO, BROMBERG & NEWMAN, P.C., AS COUNSEL FOR THE DEBTORS AND DEBTORS–IN–POSSESSION, FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM SEPTEMBER 24, 2013 THROUGH JANUARY 24, 2014

Porzio, Bromberg & Newman, P.C. ("**Porzio**"), counsel to Soundview Elite Ltd., and certain of its debtor affiliates, as Chapter 11 debtors and debtors in possession[1] (each a "**Debtor**" and collectively, the "**Debtors**") in the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**"), hereby submits this first interim fee application (the "**Application**") pursuant to sections 330 and 331 of title 11 of the United State Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

---

[1] On January 23, 2014, the Court issued a decision directing the appointment of a Chapter 11 trustee in these cases. Although the Debtors are now Debtors out-of-possession, this first interim fee application covers only the period during which the Debtors were in possession.

"**Bankruptcy Rules**"), and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**") for allowance of compensation in the aggregate amount of $1,578,020.00 for professional services performed and the reimbursement of actual and necessary expenses in the aggregate amount of $65,828.58 incurred by Porzio for the period from September 24, 2013 through January 24, 2014, (the **"Fee Period"**).  In support of this Application, Porzio respectfully states as follows:

<u>**Background**</u>

1.      On September 24, 2013 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.

2.      On September 27, 2013, the Debtors filed a Motion for an Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals and Authorizing and Directing Wilmington Trust's Disbursement of Funds in Accordance With Same [Doc. No. 9] (the "**Compensation Motion**").

3.      The Compensation  Motion was carried without date; thus no monthly fee statements have been filed.

4.      On October 9, 2013, Porzio filed its application to be retained, effective as of September 24, 2013 (the "**Porzio Retention Application**") [Doc. No. 29].  The application was supplemented on October 13, 2013  [Doc. No. 71].

5.      On October 30, 2013 Pasig Ltd. and the Joint Official Liquidators independently filed objections to the retention of Porzio  [Doc. Nos. 49 and 50].

6.      On November 4, 2013 Porzio filed a reply to the objections of Pasig Ltd. and the Joint Official Liquidators [Doc. No. 53].

7.      The Court heard oral argument on the Porzio Retention Application on November 6, 2013 and overruled all objections.  Thereafter, on November 14, 2013, this Court

2

entered an Order authorizing the employment and retention of Porzio as counsel to the Debtors, effective as of September 24, 2013 [Doc. No. 78]. A copy of the order is annexed hereto as **Exhibit A**.

## Compliance with Guidelines and Rules

8.      This Application has been prepared in accordance with: (a) the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330, issued on January 30, 1996 (the "**UST Guidelines**"); and (b) the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, Administrative Order M-447, adopted by the Court on January 29, 2013 (the "**Local Guidelines**," collectively, the "**Guidelines**"). Porzio is providing the Debtors and counsel for the Chapter 11 Trustee with a copy of the Application.

9.      By this Application, Porzio seeks allowance of compensation for professional services rendered to the Debtors during the Fee Period in the amount of $1,578,020.00, and reimbursement of actual, necessary and reasonable out-of-pocket expenses in the amount of $65,828.58. During the Fee Period, Porzio professionals and paraprofessionals expended a total of 3,604.70 hours for which compensation is requested.

10.     Except with respect to a single prepetition payment in the amount of $25,000 made to Porzio, as previously disclosed in the Retention Application, Porzio has received no payment from any source and no promise of payment from any source for services rendered in connection with these Chapter 11 cases other than in accordance with this Application and the Bankruptcy Code and Rules. There is no agreement or understanding between Porzio and any other person for sharing of compensation to be received for the services rendered in these Chapter 11 cases.

3

2638901

11.     The fees charged by Porzio in this case are billed in accordance with Porzio's existing billing rates and procedures in effect during the Fee Period except for (i) those instances where the Guidelines require lower charges than would be the case using Porzio's regular rates, and (ii) rate increases implemented at Porzio effective January 1, 2014, which rate increases were not passed through to these estates.   The rates Porzio charges for the services rendered by its professionals and paraprofessionals in these Chapter 11 cases are the same rates Porzio charges for professional and paraprofessional services rendered in comparable bankruptcy matters.  Such fees are reasonable based on the experience level of the Porzio professionals and paraprofessionals working on these matters and constitute customary compensation charged by comparable skilled practitioners in a competitive legal market.

12.     Pursuant to, and consistent with, the relevant requirements of the Guidelines, as applicable, the following Exhibits are attached:

   a.   **Exhibit B** contains a certification by undersigned counsel regarding compliance with the Guidelines;

   b.   **Exhibit C** contains a list of Porzio project categories and the total billed to each category;

   c.   **Exhibit D** contains a schedule of Porzio professionals and paraprofessionals who have performed services for the Debtor during the Fee Period, the capacities in which each such individual is employed by Porzio, the department in which each individual practices, the hourly billing rate charged by Porzio for services performed by such individuals, the year in which each professional was first licensed to practice law and the aggregate amount of hours expended in this matter and the fees billed thereto;

4

d.  **Exhibit E** contains a summary of Porzio's total actual and necessary out-of-pocket expenses and disbursements during the Fee Period; and

e.  **Exhibit F** contains Porzio's detailed time records organized chronologically by project category.

### Summary of Professionals' Services

13.    During the Fee Period, Porzio provided significant professional services to the Debtors in connection with these Chapter 11 cases.  These services were often performed under severe time constraints as was necessary in connection with the "high stakes" litigation which characterized these cases.  Porzio also addressed a multitude of critical issues typically faced by corporate debtors in cases of this complexity, as well as certain issues unique to these Chapter 11 cases.

14.    The following is a summary, by project category, of the most significant professional services rendered by Porzio during these Chapter 11 cases.  The summary is organized in order of project category, or "task codes" ("**Task Codes**"), as they are called internally at Porzio, presented in order of Task Codes with the greatest number of hours to the least number of hours.

### A.    Litigation Task Code

15.    Litigation was unfortunately the primary focus of these cases.  Fully 76% of Porzio's fees and nearly 76% of timekeeper hours expended resulted from Porzio's efforts to defend both the jurisdiction of the United States Bankruptcy Court and the *bona fides* of the Debtors' decisions to file Chapter 11 Petitions before this Court, rather than permitting an involuntary liquidation of the Debtors' assets in the Cayman Islands.

16.    As only the first example and a preview of what was to come, the Debtors' *pro forma*  application for joint administration was objected to just one week into these cases by

5

the Cayman Islands' Joint Liquidators ("**JOLs**").   A review of the docket reveals that there was

not one motion or application made by these Debtors, no matter how seemingly administrative or

perfunctory, that was met without objection.   Thus, the litigated applications and motions

included, among others, the Debtors' applications to retain counsel and financial advisors, to seek

joint administration of the cases, to establish procedures for monthly compensation and

reimbursement and to assume a services contract with the Debtors' fund administrator.

17.    As a result, in addition to the trial held before the Court from December

17, 2013 through January 7, 2014, various briefs and affidavits and three (3) sets of multiple-

issue hearings were required to address retention issues, §363 and other "first day" applications.

In virtually every instance, these motions and applications were ultimately granted over the

JOLs, Pasig's and/or Midanek's objections.

**(i)   Commencement of the Litigation and Documentary Discovery**

18.    With respect to the motions to dismiss, convert or appoint a trustee, and to

enforce the automatic stay, the Debtors were faced with an aggressive litigation schedule and

were required to litigate against four (4) separate adversaries, to wit:   the JOLs, Pasig, the

Deborah Midanek controlled entities and the United States Trustee.

19.    Thus a "Stipulation and Consent Order"  was entered on October 9, 2013,

just two weeks after these cases were filed, which established the following hearing dates and

briefing schedule:

(i)      A status conference would be held before the Court on October 16,

2013;

(ii)     All written discovery demands would be exchanged by the parties

by October 18, 2013;

(iii)    Documentary discovery would be completed by October 29, 2013;

(iv)    Depositions completed by November 8, 2013; and

(v)    Initial pleadings and briefs to be filed no later than November 29, 2013.

20.    In accordance with the Stipulation, the Debtors originally served discovery demands on Citco, Pasig, the JOLs, the Midanek controlled entities and HSBC.  Similarly, the Debtors' received discovery demands from the JOLs and from Pasig.  Initially, Citco refused to cooperate in discovery.   But rather than engage in costly and wasteful litigation practice, Porzio worked out an understanding with Citco pursuant to which discovery from Citco would be deferred until after discovery was obtained from Pasig.  Thereafter, Pasig's attorney advised the Debtors that "my client is not giving you a single piece of paper unless you can explain why you need it."

21.    With no voluntary discovery to be provided by either Citco or Pasig, Porzio needed to advise its client on how best to prepare its case.  Porzio's attorneys made the judgment call that the Debtors would ultimately be able to put on an effective defense to the motions without obtaining discovery from either of these parties.  These strategic judgments and many others like them[2] saved the expenditure of estate funds and avoided clogging the Court's calendar with costly discovery disputes.

22.    On the other side of the equation, the demands from the JOLs for the Debtors to provide documentary discovery were broad and unrelenting.  Again, although the labor required by the Porzio attorneys was extensive, Porzio saved these estates substantial legal fees by keeping the communications open, and the discovery flowing as demanded by the adversaries, thereby avoiding the need for court intervention.

---

[2] As another example, the JOLs advised that their witnesses, e.g., the two JOLs and later, their expert, Kenneth Farrow, Q.C., would only be made available in the Cayman Islands.  While Debtors' counsel flew to the Cayman Islands once in November to take the depositions of the two JOLs, after the JOL's expert witness was later identified, Porzio made the judgment call to forego a second trip to the Cayman Islands to depose Mr. Farrow.

7

23.    Specifically, in order for the Debtors to meet their discovery responsibilities, Porzio reviewed more than 180,000 documents and e-mails consisting of more than 2.25 million pages of information.  In order to perform this work and to comply with the extremely shortened discovery schedule, Porzio enlisted a team of eleven (11) attorneys and paralegals, each of whom were assigned large batches of electronic documents to review.  The Porzio team worked around the clock for several weeks pulling responsive documents and providing them to the JOLs and to Pasig in response to their discovery requests.  Porzio also contracted with a third-party vendor, DTI, to provide a platform to assist in wading through the emails.  Porzio presented a list of search terms to the parties to the litigation which search terms instructed the third-party vendor what to search for in the e-mails.  This partial automation of the searches helped the Debtors meet their deadlines while keeping the size of the review team down to eleven (11) timekeepers.   From October 28, 2013 through the eve of trial on December 17, 2013, the Debtors continued producing information to the JOLs and Pasig on a rolling basis.

24.    Ultimately, Porzio produced some 36,000 pages of responsive documents, including nearly 10,000 pages of company records and more than 26,000 pages of emails with attachments.  Porzio takes particular pride in having managed this discovery process without the need to have had a single discovery issue brought before the Court for intervention.

**(ii)    <u>Depositions and Experts</u>**

25.    After the initial exchange of discovery documents, and while rolling productions of additional documents continued unabated, Porzio planned, prepared for and engaged in eight (8) days of deposition discovery of the following eight (8) witnesses:

(i)    George Ladner;

(ii)    Floyd Saunders;

(iii)    Alphonse Fletcher, Jr. (two days);

8

(iv)   Peter Anderson;

(v)   Matthew Wright;

(vi)   Gary Smith;

(vii)   Deborah Midanek; and

(viii)   Bernard Katz.

26.   Preparation for these depositions included culling through the 36,000 pages of documents produced by the Debtors, as well as the documents produced by the JOLs, and selecting and analyzing the important documents dealing with the critical issues in dispute that would be marked as exhibits at the depositions and/or for trial.

27.   Porzio also spent significant time working with the Debtors' retained financial expert, Bernard Katz, CPA and the Debtors' Cayman Island law expert, Gary Smith, Esq.   These experts were provided with direction, documents and support by Porzio in connection with their preparation of their expert reports.  The  expert reports were filed with the Court and the experts provided both deposition and trial testimony in connection with such reports.

### (iii)   FILB and The Final Trial Preparation

28.   Two (2) days before the stipulated deadline for filing briefs in this matter --- on November 25, 2013 -- the FILB Trustee issued his 299 page "Report and Disclosure Statement" (the **"Report"**).   Porzio's team immediately needed to analyze the Report.   A determination was then made by Porzio's team that the factual presentation which it had prepared for trial had to be completely reworked and an entirely new factual presentation had to be formulated for the trial so as to address many of the matters contained in the Report.   As a result, the parties quickly negotiated a short five-day extension of the briefing schedule through the

9

Thanksgiving weekend.  The extension enabled the Debtors and the JOLs to address certain matters contained in the Report.

29.    At no time during this entire process did Porzio ever request that the December 17th trial date be adjourned.  Rather, Porzio attorneys simply worked more hours, cramming what could easily have been – based on the issues, discovery volume, and work to be done -- a twelve (12) month discovery and trial schedule into a 75 day timeframe.

30.    The FILB Trustee's Report also required Porzio attorneys to work with new experts in connection with understanding the valuation of the Debtors' affiliates' long-term warrants and options.  These valuations were not directly at issue in these cases until the Report was issued.  While there was insufficient time to name, depose and qualify such experts for trial, Porzio was able to weed through the complex information quickly and obtain an appropriate understanding of these investments and their valuations such that Porzio could present Alphonse Fletcher, Jr.'s opinions on these valuations at trial.

31.    As the trial week approached, demands from the Joint Liquidators for additional documents, follow-up materials and the like continued and accelerated.   Again, in order to avoid any type of discovery skirmishes before the Court, Porzio continued searching out, finding and producing all documents  requested by the JOLs as quickly as was humanly possible.

32.    For its final trial preparation, Porzio rented a block of hotel rooms for its trial team just across the street from Porzio's New York offices, so as to enable its attorneys to work with the necessary intense trial focus and without any distractions, including the need to commute back and forth to their homes.  We note that Porzio does not seek reimbursement for any of these expenses.

33.    Porzio makes no comment here about the quality of its actual trial presentation, since the Court was there to witness it.  However, Porzio does wish to emphasize

10

that it believes that it presented a fair and honest case on behalf of the Debtors, adducing all facts and law both helpful and harmful to the Debtors' cause and presenting such facts with integrity.

34.    Set forth below are the hours spent on the "Litigation" Task Code, which collectively constitute 76% of the hours and 76% of the dollars of work performed in the case:

| Professional | Admitted | Time | Rate | Amount ($) |
|---|---|---|---|---|
| **Principals** | | | | |
| Warren J. Martin Jr. | 1986 | 696.5 | $700 | $486,675.00 |
| John S. Mairo | 1994 | 18.5 | $595 | $11,007.50 |
| Christopher F. Schultz | 1976 | 19.4 | $550 | $10,670.00 |
| Brett S. Moore | 2000 | 32.1 | $550 | $17,655.00 |
| **Of Counsel** | | | | |
| Jeffrey K. Cymbler | 1984 | 88.9 | $555 | $49,339.50 |
| **Counsel** | | | | |
| Terri Jane Freedman | 1991 | 377.1 | $445 | $167,253.25 |
| Mark J. Politan | 1999 | 426.1 | $445 | $185,943.25 |
| **Associates** | | | | |
| Michael J. Naporano | 2008 | 125.8 | $385 | $48,433.00 |
| Kelly D. Curtin | 2009 | 63.1 | $345 | $21,769.50 |
| Rachel A. Segall | 2011 | 202.7 | $300 | $60,818.00 |
| Matthew C. Mills | 2012 | 66.2 | $300 | $19,860.00 |
| **Paraprofessionals** | | | | |
| Paul C. Wittekind, Director, IT Services | N/A | 19.2 | $275 | $0.00 NO CHARGE |
| Garcia Samuylov, Paralegal | N/A | 20.0 | $235 | $4,700.00 |
| Henry M. Goldblum, IT Support | N/A | 2.3 | $220 | $0.00 NO CHARGE |
| Mathew D. Laskowski, Paralegal | N/A | 352.0 | $205 | $70,438.00 |
| Maria P. Dermatis, Paralegal | N/A | 218.5 | $205 | $44,792.50 |
| **Category Total** | | **2,728.4** | | **$1,199,354.50** |

## B.  Case Administration

35.    The "Case Administration" Task Code constitutes 10% of the billing professionals' hours expended on this matter and 8% of the requested fee for services. This category includes much of the First Day Applications, the First Day Affidavit, and various administrative motions. The itemized listing of all work performed by billing timekeeper in this

2638901

category is annexed hereto at Exhibit F, at pp. 22 - 44 thereto.  The following summary listing, however, captures the vast majority of the work performed under the "Case Administration" Task Code category:

(i)     completion of the First Day Affidavit;

(ii)    preparing the motion for joint administration;

(iii)   communications with the United States Trustee concerning the initial Debtor interview, schedules and statements of financial affairs, and in general providing information about the case to the U.S. Trustee, including with respect to the appointment of a Chapter 11 trustee;

(iv)    communications and work with the client including daily status calls and team meetings to keep the team focused and working in coordination;

(v)     preparation of agendas for each of the client and team status calls;

(vi)    work on the monthly compensation motion;

(vii)   work in connection with considering Cayman Islands law issues, other than in connection with the litigation;

(viii)  conferences with Court staff members and Chambers regarding scheduling, motions and follow ups on various matters;

(ix)    the administrative aspects of filing all pleadings, certificates of service and affidavits, including attending to Exhibits and PACER work, and monitoring of the docket (all of the foregoing services were performed by paralegals);

12

(x)    the preparation of a motion to extend the time to file schedules and statements of financial affairs;

(xi)    attorney communications with the FILB Chapter 11 Trustee's counsel;

(xii)    responding to inquiries from shareholders and creditors; and

(xiii)    analyses of corporate authority issues.

36.    Set forth below are the hours spent on the "Case Administration" Task Code, which collectively constitute 10% of the hours and 8% of the dollars of work performed in the case:

| Professional | Admitted | Time | Rate | Amount ($) |
|---|---|---|---|---|
| **Principals** | | | | |
| Warren J. Martin Jr. | 1986 | 26.5 | $700 | $18,550.00 |
| John S. Mairo | 1994 | 4.7 | $595 | $2,796.50 |
| **Of Counsel** | | | | |
| Jeffrey K. Cymbler | 1984 | 17.4 | $555 | $9,657.00 |
| **Counsel** | | | | |
| Terri Jane Freedman | 1991 | 29.0 | $445 | $10,686.00 |
| Mark J. Politan | 1999 | 47.1 | $445 | $20,514.50 |
| **Associates** | | | | |
| Michael J. Naporano | 2008 | 102 | $385 | $39,270.00 |
| Kelly D. Curtin | 2009 | 13.3 | $345 | $4,588.50 |
| Rachel A. Segall | 2011 | 4.2 | $300 | $1,260.00 |
| Matthew C. Mills | 2012 | 2.8 | $300 | $840.00 |
| **Paraprofessionals** | | | | |
| Mathew D. Laskowski, Paralegal | N/A | 91.4 | $205 | $18,737.00 |
| Maria P. Dermatis, Paralegal | N/A | 15.0 | $205 | $3,075.00 |
| Kathy A. Mulch, Document Clerk | N/A | 8.7 | $155 | $1,348.50 |
| **Category Total** | | **362.1** | | **$131,323.00** |

13

2638901

## C.  Asset Analysis

37.    The third largest category of work performed by Porzio is captured under the "Asset Analysis" Task Code.  Porzio's asset analysis work falls into six (6) broad categories as follows:

(i)    obtaining financial information regarding the Debtors from Pinnacle Fund Administration ("**Pinnacle**") and efforts to assume the Debtors' six (6) contracts with Pinnacle;

(ii)    working with the Debtors' financial advisors, Bernard Katz and Howard Konicov of CohnReznick, first, on the Debtors' schedules and statements of financial affairs, and thereafter on understanding the Debtors' assets and liabilities in connection with proposing a plan and in preparation for trial;

(iii)    certain work in connection with freeing up the Debtors' Wilmington Trust funds from the interpleader action;

(iv)    understanding Gerti Muho's pre-petition theft and working with special litigation counsel to recover an initial $400,000 of the amount stolen;

(v)    working on various options for the Debtors to consider seeking Court permission to fund an appeal of the Cayman Islands' FIA Leveraged Winding Up Order, in order to maximize the Soundview Debtors' recoveries in FIA Leveraged, Arbitrage and FILB; and

(vi)    certain of the work in objecting to the FILB Disclosure Statement, including appearing at the hearing to prosecute the objection and

14

preparing the Soundview Debtors' statement of position with respect to their valuable assets in FIA Leveraged, Arbitrage and FILB.

Each of these six (6) categories of the asset analysis Task Code is discussed in more detail below:

### (i)    <u>Pinnacle</u>:

38.    These efforts included numerous conversations and meetings with Brian Smith of Pinnacle resulting in the successful negotiation of amendments to each of Pinnacle's six (6) pre-petition contracts; such that Pinnacle's would accept $240,000 to complete all six (6) of Debtors' post-petition financials (plus $65,000 in cure costs). It also included interfacing with CohnReznick and putting CohnReznick together with Pinnacle to work on preparing the Debtors' schedules and statements of financial affairs.

39.    The Pinnacle work included bringing two (2) separate motions -- the first of which was denied, without prejudice -- to assume the Debtors' six (6) pre-petition executory contracts with Pinnacle, as renegotiated and amended. The second motion remains pending for the Chapter 11 Trustee to evaluate and, if desired, to prosecute.

40.    As Mr. Katz testified to at trial, Pinnacle provides the actual "back office" accounting function for the Debtors, and thus its work was critical to the Debtors' compliance with its obligations under the Bankruptcy Code and the US Trustee's Guidelines.

### (ii)    <u>Work With CohnReznick</u>

41.    Porzio also worked extensively with the Debtors' retained financial advisors, CohnReznick, to understand the Debtors' assets and financial affairs. Porzio attorneys spent an extensive amount of time with CohnReznick, working initially on the Debtors' schedules and statements of financial affairs. Once the Pinnacle motion was denied, Porzio

15

2638901

worked on verifying and testing the Debtors' financial records so as to present those records in an honest, clear and comprehensive form both to the Court and to the United States Trustee. Porzio's work with CohnReznick was also invaluable in obtaining the confidence of Pinnacle in order to move forward with Pinnacle's retention.

### (iii)    **Wilmington Trust**

42.    Because of objections filed by various parties, all of which were ultimately overruled, an extensive amount of work was necessary simply for the Debtors to seek to obtain release of the Debtors' own funds from the Wilmington Trust interpleader action.  At no time did the Debtors propose that any of those funds be accessible without order of this Court. Nevertheless, objections abounded.  As a result of Porzio's efforts, the interpleader action was ultimately resolved as to the Debtors by the Wilmington Trust stipulation which, as modified, was entered on consent of all parties, including the United States Trustee.

### (iv)    **The Muho Action**

43.    Porzio's asset analysis work also included understanding Gerti Muho's pre-petition theft, as well as the history leading up to and surrounding it, and working with special litigation counsel, Peter Harvey, Esq. of Patterson Belknap, to pursue Muho.  Thus far, Mr. Harvey has obtained a TRO restraining more than $400,000 in funds improperly removed from the Debtors.  This work also involved consideration and discussion on how best to approach the future action to be brought against HSBC.

### (v)    **FIA Leveraged Appeal**

44.    As the Court is aware, approximately 29% of the Debtors' assets are tied up in investments in FIA Leveraged, Arbitrage and FILB.  As part of its asset analysis function, Porzio considered various strategies and prepared drafts of various pleadings with an eye towards prosecuting an appeal of the Cayman Islands Winding Up Orders over FIA Leveraged

16

and Arbitrage to the Privy Council in London.  As a result of the Cayman Liquidators' settlement of 18 million of UCB warrants for a mere $2.5 million, both FILB and the Debtors have suffered an unacceptable loss.  Work in this vein included obtaining a detailed understanding of the FIA Leveraged and Arbitrage Winding Up proceedings and the decisions rendered therein, analyzing the methods of funding an appeal to the Privy Council in London and the likelihood of success on such an appeal, and preparing initial drafts of a motion to assume the MRCFA, such that the Debtors could request the Court's authority to participate in an appeal to the Privy Council.

<b>(vi)    <u>FILB Disclosure Statement Hearing</u></b>

45.    Directly related to (v) above, Porzio assisted the Debtors in preparing and filing an objection to the FILB Disclosure Statement, and in obtaining an order from the Court permitting the Debtors to issue a statement in connection with the FILB Disclosure Statement challenging many of the findings made by the FILB Trustee.  Porzio believes that its work here will be of particular value to the Chapter 11 Trustee and if continued by the Trustee, is likely to dramatically improve the distributions to the Debtors from FILB, FIA Leveraged and Arbitrage.

46.    Set forth below are the hours spent on the "Asset Analysis" Task Code, which collectively constitute 5% of the hours and 6% of the dollar value of the work performed in the case:

2638901

| Professional | Admitted | Time | Rate | Amount ($) |
|---|---|---|---|---|
| **Principals** | | | | |
| Warren J. Martin Jr. | 1986 | 61.2 | $700 | $41,980.50 |
| Christopher F. Schultz | 1976 | 2.2 | $550 | $1,210.00 |
| **Of Counsel** | | | | |
| Jeffrey K. Cymbler | 1984 | 39.1 | $555 | $21,700.50 |
| **Counsel** | | | | |
| Mark J. Politan | 1999 | 22.5 | $445 | $10,012.50 |
| **Associates** | | | | |
| Michael J. Naporano | 2008 | 21.6 | $385 | $8,316.00 |
| Kelly D. Curtin | 2009 | 19.9 | $345 | $6,865.50 |
| Rachel A. Segall | 2011 | 12.5 | $300 | $3,675.00 |
| **Category Total** | | **179.0** | | **$93,760.00** |

### D.  Retention Applications and Objections Thereto, And Fee Applications

47.    Porzio maintains two Task Codes: Fee/Employment Applications and Fee/Employment Objections which are covered in this Section D.  The majority of Porzio's work in connection with these Task Codes arose out of Porzio's prosecution of four (4) separate retention applications as follows:

(i)    application to retain Porzio, Bromberg & Newman as Chapter 11 counsel to the Debtors;

(ii)    application to retain CohnReznick as Debtors' financial advisors;

(iii)    application to retain Patterson Belknap as special litigation counsel to the Debtors in three (3) pending actions; and

(iv)    application to retain Stuarts Law as Cayman Islands' counsel to the Debtors.

48.    Each of these four (4) applications was objected to by some or all of the Joint Liquidators, Pasig, and/or Midanek.  Ultimately, each of the applications was granted, at least in part.

18

2638901

49.    A relatively smaller percentage of the time expended in this category is for preparing Porzio's first interim fee application, all of which was accomplished over the two weeks preceding this filing.

50.    Set forth below are the hours spent on the Fee/Employment Applications and Fee/Employment Objections Task Codes, which collectively constitute  4% of the hours and 3% of the dollar value of the work performed in the case:

| Professional | Admitted | Time | Rate | Amount ($) |
|---|---|---|---|---|
| **Principals** | | | | |
| Warren J. Martin Jr. | 1986 | 29.0 | $700 | $20,300.00 |
| **Of Counsel** | | | | |
| Jeffrey K. Cymbler | 1984 | 13.8 | $555 | $7,659.00 |
| **Counsel** | | | | |
| Terri Jane Freedman | 1991 | 10.9 | $445 | $4,850.50 |
| Mark J. Politan | 1999 | 17.0 | $445 | $7,565.00 |
| **Associates** | | | | |
| Kelly D. Curtin | 2009 | 3.7 | $345 | $1,276.50 |
| Rachel A. Segall | 2011 | 13.0 | $300 | $3,900.00 |
| Matthew C. Mills | 2012 | 2.8 | $300 | $840.00 |
| **Paraprofessionals** | | | | |
| Mathew D. Laskowski, Paralegal | N/A | 27.7 | $205 | $5,678.50 |
| Maria P. Dermatis, Paralegal | N/A | 13.7 | $205 | $2,808.50 |
| **Category Total** | | **131.6** | | **$54,878.00** |

### E.    Asset Dispositions

51.    Porzio's services captured in the "Asset Disposition" Task Code fall into two (2) categories:

(i)  certain of the work relating to paying Pinnacle, and

(ii)  certain of the work relating to the FILB Disclosure Statement.

52.     First, the Debtors sought to pay Pinnacle $65,000 in cure amounts, plus an additional $240,000 for its anticipated work in bringing all six (6) Debtors' financials current.

2638901

In Porzio's, the Debtors' and CohnReznick's view, the proposed expenditure was justified insofar as it would establish the baseline of creditor claims for calculating a fair distribution to creditors and would present a full transparent and verified understanding of the Debtors' assets and financial affairs.

53.    Second, a portion of the time captured here is the time expended in objecting to the FILB Disclosure Statement, as well as in preparing the detailed statement the Court authorized the Debtors to annex as an exhibit to the FILB Disclosure Statement. Specifically, Porzio prepared an opposition statement to educate the FILB creditor body that the FILB plan is currently poised to dispose of a very valuable asset of the Soundview Debtors, i.e., their claims, for no consideration. The FILB plan also proposes to elevate claims which are structurally identical to the Debtors claims, i.e., the claims of the Louisiana Pension Funds, which are not claims against FILB at all, to "senior" status in the FILB case. The Debtors believe that this work will be of substantial value to the Chapter 11 Trustee herein.

54.    Set forth below are the hours spent on the Asset Disposition Task Codes, which collectively constitute 2% of the hours and 2% of the dollar value of work performed in the case:

| Professional | Admitted | Time | Rate | Amount ($) |
|---|---|---|---|---|
| **Principals** | | | | |
| Warren J. Martin Jr. | 1986 | 32.7 | $700 | $22,890.00 |
| **Counsel** | | | | |
| Mark J. Politan | 1999 | 4.4 | $445 | $1,958.00 |
| **Associates** | | | | |
| Kelly D. Curtin | 2009 | 14.2 | $345 | $4,899.00 |
| Rachel A. Segall | 2011 | 25.3 | $300 | $7,590.00 |
| **Paraprofessionals** | | | | |
| Mathew D. Laskowski, Paralegal | N/A | 0.2 | $205 | $41.00 |
| **Category Total** | | **76.8** | | **$37,378.00** |

2638901

F.    **Business Operations**

55.    Work captured under the "Business Operations" Task Code includes the following:

(i)    preparation of the Debtors schedules and statements of financial affairs,

(ii)    corporate compliance issues and corporate resolutions,

(iii)    implementation of the litigation agreement,

(iv)    some portion of the work on retaining Pinnacle, and

(v)    certain of the work on freeing up the Wilmington Trust moneys and obtaining a new funds depository.

56.    Set forth below are the hours spent on the Business Operations Task Codes, which collectively constitute 2% of the hours and 2% of the dollar value of work performed in the case:

| Professional | Admitted | Time | Rate | Amount ($) |
|---|---|---|---|---|
| **Principals** | | | | |
| Warren J. Martin Jr. | 1986 | 25.5 | $700 | $17,850.00 |
| **Counsel** | | | | |
| Kevin J. McCaffrey | 1985 | 1.8 | $445 | $801.00 |
| Mark J. Politan | 1999 | 3.1 | $445 | $1,379.50 |
| **Associates** | | | | |
| Michael J. Naporano | 2008 | 12.0 | $385 | $4,620.00 |
| Kelly D. Curtin | 2009 | 21.8 | $345 | $7,521.00 |
| **Paraprofessionals** | | | | |
| Mathew D. Laskowski, Paralegal | N/A | 1.7 | $205 | $348.50 |
| **Category Total** | | **65.9** | | **$32,520.00** |

21

2638901

G.    **Plan and Disclosure Statement**

57.    Prior to the denial of the Pinnacle motion, Porzio began work on preparing a plan of liquidation and/or reorganization.  The plan would have provided for a substantial payment to the redeeming creditors and an opportunity for non-redeeming investors to elect to "ride through" on their investment, in anticipation of a significant distribution to the Debtors out of the FIA Leveraged/FILB cases.  The Debtors' and Porzio's intention was to file a proposed Chapter 11 plan and disclosure statement prior to the December 17th hearing on the motions to dismiss, convert or appoint a trustee.  The Chapter 11 plan was being designed so that it could also be prosecuted by a Chapter Trustee if that were the outcome of the December 17th hearings.

58.    Unfortunately, following denial of the Pinnacle motion this strategy was no longer possible since the Debtors were unable to obtain verifiable information with regard to the Debtors' assets and liabilities.  As a result of this development, preparation of a Plan and Disclosure Statement – which was only modestly commenced -- was deferred until after a hopefully successful conclusion of the December 17th hearings, and the retention of Pinnacle.

59.    Other time entries billed to this category relate to the Debtors' motions to extend their exclusive periods.

60.    Set forth below are the hours spent on the Plan and Disclosure Statement Task Codes, which collectively constitute less than 2% of the hours and also less than 2% of the dollar value of work performed in the case:

22

2638901

| Professional | Admitted | Time | Rate | Amount ($) |
|---|---|---|---|---|
| **Principals** | | | | |
| Warren J. Martin Jr. | 1986 | 4.8 | $700 | $3,360.00 |
| **Of Counsel** | | | | |
| Jeffrey K. Cymbler | 1984 | 28.8 | $555 | $15,984.00 |
| **Counsel** | | | | |
| Terri Jane Freedman | 1991 | 0.3 | $445 | $133.50 |
| Mark J. Politan | 1999 | 5.1 | $445 | $2,269.50 |
| **Associates** | | | | |
| Matthew C. Mills | 2012 | 12.5 | $300 | $3,750.00 |
| **Paraprofessionals** | | | | |
| Mathew D. Laskowski, Paralegal | N/A | 5.7 | $205 | $1,168.50 |
| **Category Total** | | **57.2** | | **$26,665.50** |

### Actual and Necessary Expenses Incurred by Porzio

61.     As set forth in Exhibit E, Porzio has incurred a total of $65,828.58 in expenses on behalf of the Debtors during the Fee Period. This amount is broken down into categories of charges, as set forth in detail in Exhibit E. Expenses of the type requested herein are customarily charged to Porzio's non-bankruptcy clients.

62.     Porzio only seeks reimbursement of actual costs and for disbursements incurred both in-house and from third party vendors. Only clients who actually use office services of the types set forth in Exhibit F are separately charged for such services.

63.     With respect to in-house document reproduction expenses, Porzio charges its regular clients $.20 per page. These charges are intended to cover Porzio's direct operating costs for copying and printing in the case of in-house photocopying, or the costs of any third party vendors which costs are not incorporated into Porzio's hourly billing rates.  In compliance with the Guidelines which permit photocopying charges at 10¢ per page only, Porzio has

2638901

provided an adjustment to its statement and is requesting $2,149.80 for photocopying 21,498 pages.

64.    Porzio absorbs and does not pass through to its clients charges for long distance telephone services, other than with respect to international calls and fees for telephone conference services.

65.    Porzio also incurred expenses for computerized legal research.  Porzio uses Westlaw for computerized legal research, unless a particular necessary research materials is unavailable on Westlaw, in which case Porzio uses Lexis. Porzio pays Westlaw a flat monthly contract fee and charges clients the proportionate share attributed to each client's matter as a percentage of the total research time in all billable matters during each month. Research transactions that are not covered by the flat monthly contract rate are billed directly to the clients benefitting from such services at cost. Clients receive a significant discount under Porzio's Westlaw plan.

66.    Expenses for searches of official records, for which Porzio uses the Public Access to Court Electronic Records ("PACER") system, were also incurred. The Judicial Conference of the United States established the fee to be collected for access to PACER at $.10 per page.  Porzio bills only clients that actually use PACER official record searches the actual and direct cost of such searches.

67.    Expenses were also incurred for hearing and deposition transcripts; dinner expenses but only on those occasions where Porzio attorneys and paraprofessionals rendered services late into the evening; travel expenses; and document delivery. The actual expenses incurred were necessary, reasonable and justified under the circumstances to serve the needs of the Debtors and the estate, and are summarized in Exhibit "E" and itemized in Exhibit "F" hereto.

2638901

**Porzio's Requested Compensation and Reimbursement Should be Allowed**

68.    Professional services performed by Porzio on behalf of the Debtors required an aggregate expenditure of 3,604.70 recorded hours by Porzio's principals, counsel, of counsel, associates and paraprofessionals.  Of the aggregate time expended, 2,087.80 hours were expended by principals, counsel and of counsel, 740.80 hours were expended by associates and 776.10 hours were expended by paraprofessionals of Porzio.

69.    Porzio's hourly billing rates for attorneys ranged from $300 to $700 per hour.  Allowance of compensation in the amount requested would result in a blended hourly rate for attorneys of approximately $503.74 (based on 2,828.60 recorded hours at Porzio's regular billing rates in effect at the time of performance of services).

70.    Section 331 of the Bankruptcy Code allows a bankruptcy court to authorize compensation to be paid to "a debtor's attorney, or any professional person employed under section 327 of this title." 11 U.S.C. §331.  Such professional person "may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title." *Id.* Section 331 further provides that "[a]fter notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement." *Id.*

71.    Sections 330(a)(1)(A) and (B) of the Bankruptcy Code provide, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses." *Id.* § 330(a)(1)(A)-(B). In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent and the value of such services, taking into account all relevant factors, including:

25

a. The time spent on such services;

b. The rates charged for such services;

c. Whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

d. Whether the services were performed within a reasonable amount of time commensurate with this complexity, importance, and nature of the problem, issue, or task addressed, and

e. Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.* § 330(a)(3)

72.     In the instant cases, Porzio respectfully submits that the services for which it seeks compensation in this Application were necessary for and beneficial to the Debtors' orderly administration of its estate.  The issues in these Chapter 11 cases were extraordinarily complex, and all work was required to be done in an extremely truncated timeframe.   Porzio worked diligently to anticipate and respond to the all issues that arose during the Fee Period. The work conducted by Porzio was carefully assigned to appropriate attorneys or paraprofessionals according to expertise and level of experience.  Of particular note, nearly 40% of the dollar value of the work performed in these cases is comprised of hours personally worked by the lead engagement partner, Warren J. Martin Jr., at a fee value of $613,215.50 out of the total requested fee of $1,578,020.  Because of the complexity of the matter and the "high stakes" nature of the litigation for the Debtors and the estate, it was appropriate for Porzio to assign an

26

attorney of Mr. Martin's expertise, reputation and level of seniority to perform the largest share of the legal work on these cases.

73.    Notice of this Application has been provided to (i) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Richard C. Morrissey, Esq.), (ii) the holders of the twenty largest unsecured claims against the Debtors (on a consolidated basis), (iii) Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104 (Attn: Gary S Lee, Esq. and John A. Pintarelli, Esq.) as Counsel for Peter Anderson and Matthew Wright, As Purported Joint Official Liquidators of Soundview Elite, Ltd., Soundview Premium, Ltd. and Soundview Star, Ltd., (iv) Richard J. Davis, Esq., 415 Madison Ave., 11th Floor, New York, NY 10017, the Chapter 11 Trustee and Michael Luskin, Esq., Luskin, Stern & Eisler LLP, Eleven Times Square, 8th Ave. & 41st St., New York, NY 10036, Counsel for the Chapter 11 Trustee in Fletcher International, Ltd., Case No. 12-12796 (REG), (v) Ostad PLLC, 185 Great Neck Rd., Suite 330, Great Neck, NY 11021 (Attn: Karen Ostad, Esq.) as Counsel for Optima Absolute Return Fund, Ltd., Richcourt Allweather Fund, Inc., America Alternative Investments, Ltd., Solon Group, Inc. and Deborah Hicks Midanek, (vi) Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, New York 10019 (Attn: Andrew K. Glenn, Esq. and Jeffrey R. Gleit, Esq. as Counsel for Pasig Ltd., (vii) Corinne Ball, Esq., Jones Day LLP, 222 East 41st Street, New York, NY 10017-6702  and (viii) those persons who have formally appeared and requested service in these cases pursuant to Bankruptcy Rule 2002.  Porzio respectfully submits that further notice of this Application is neither required nor necessary.

74.    This Application is filed as the Debtors "First Interim" Application only because additional work has been required from and after January 24, 2014 (the date Porzio closed its books for the purpose of this Application) through the date hereof (such as in preparing

27

2638901

this Application) and because it is anticipated that further transition work may be required now that the Chapter 11 Trustee's appointment has been confirmed. Porzio intends to confer with the United States Trustee and the Chapter 11 Trustee prior to the hearing on this application to determine whether or not a supplement should be filed, and as to whether or not Porzio's Application should be deemed "Final."

75.     No prior application for the relief requested herein has been made to this or any other Court.

WHEREFORE, for the reasons set forth herein, Porzio respectfully requests: (i) allowance of compensation in the amount of $1,578,020.00 as compensation for professional services rendered and in the amount of $65,828.58 for reimbursement for actual and necessary expenses Porzio incurred during the Fee Period and (ii) that the Court grant such other and further relief as is just and proper.

Dated: February 4, 2014

**PORZIO, BROMBERG & NEWMAN, P.C.**
*Counsel to the Debtors and Debtors-in-Possession*

By:     /s/Warren J. Martin Jr.
        Warren J. Martin Jr.
        (admitted *pro hac vice*)
        100 Southgate Parkway
        P.O. Box 1997
        Morristown, New Jersey 07962
        (973) 538-4006 Telephone
        (973) 538-5146 Facsimile
        -and-
        156 West 56th St.
        New York, NY 10019

28

2638901