JONES DAY
222 East 41st Street
New York, New York 10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Veerle Roovers
Amy Edgy Ferber

*Proposed Attorneys for the Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                           :
In re                                                      :        Chapter 11
                                                           :        Case No. 13-13098 (REG)
                                                           :
        SOUNDVIEW ELITE LTD. *et al.*,                     :        (Jointly Administered)
                                                           :
                            Debtors.                       :
                                                           :
-----------------------------------------------------------X

## NOTICE OF HEARING ON
## APPLICATION OF CHAPTER 11 TRUSTEE FOR AN ORDER
## AUTHORIZING HER TO RETAIN AND EMPLOY KINETIC PARTNERS US LLP
## AS HER FINANCIAL CONSULTANT *NUNC PRO TUNC* TO FEBRUARY 13, 2014

### PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      A hearing to consider the Application of Chapter 11 Trustee for an Order

Authorizing Her to Retain and Employ Kinetic Partners US LLP as Her Financial Consultant

*Nunc Pro Tunc* to February 13, 2014 (the "**Application**"), filed by Corinne Ball, not individually

but solely in her capacity as chapter 11 trustee (the "**Trustee**") for the above-captioned debtors

(collectively, the "**Debtors**"), shall be held before the Honorable Robert E. Gerber, United States

Bankruptcy Judge, in the United States Bankruptcy Court, in courtroom 523 at One Bowling

Green, New York, New York 10004, on **March 19, 2014, at 9:45 a.m. (New York time)**, or as

soon thereafter as counsel may be heard.

2.      Objections, if any, to the relief sought in the Application must be made in writing, with a hard copy to Judge Gerber's Chambers, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004, conform to the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York and the Case Management Order #1 (Docket No. 19) (the "**Case Management Order**") entered in these cases and be filed with the Bankruptcy Court and must be served in accordance with the provisions of General Order M-399 on: (a) Porzio, Bromberg & Newman, P.C., counsel to the Debtors, 100 Southgate Parkway, Morristown, NJ 07962 (Attn: Warren J. Martin, Jr., Esq.); (b) the Trustee, 222 East 41st Street, New York, NY 10017 (Attn: Corinne Ball, Esq.); (c) Jones Day, proposed counsel to the Trustee, 222 East 41st Street, New York, NY 10017 (Attn: Veerle Roovers, Esq.); (d) the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Linda Riffkin, Esq.); and (e) all parties requesting notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002, not later than **4:00 p.m. (New York time) on March 12, 2014** (the "**Objection Deadline**").

3.      If no objections are timely filed and served with respect to the Application, the Trustee may, on or after the Objection Deadline, submit to the Court an order substantially in the form attached to the Application, which order shall be submitted and may be entered with no further notice or opportunity to be heard offered to any party.

4.      Copies of the Application, the Case Management Order and General Order M-399 may be obtained from the Court's website at http://ecf.nysb.uscourts.gov.

Dated: March 5, 2014
      New York, New York

               /s/ Veerle Roovers
               Veerle Roovers
               Amy Edgy Ferber
               JONES DAY
               222 East 41st Street
               New York, New York 10017
               Telephone: (212) 326-3939
               Facsimile: (212) 755-7306

               *Proposed Attorneys for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X
                                                             :
In re                                                        :        Chapter 11
                                                             :        Case No. 13-13098 (REG)
                                                             :
            SOUNDVIEW ELITE LTD., *et al.*,                  :        (Jointly Administered)
                                                             :
                                        Debtors.             :
                                                             :
------------------------------------------------------------ X


### APPLICATION OF CHAPTER 11 TRUSTEE FOR AN ORDER AUTHORIZING HER TO RETAIN AND EMPLOY KINETIC PARTNERS US LLP AS HER FINANCIAL CONSULTANT *NUNC PRO TUNC* TO FEBRUARY 13, 2014

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Corinne Ball, not individually but solely in her capacity as chapter 11 trustee

(the "**Trustee**") for the above-captioned debtors (collectively, the "**Debtors**"), hereby makes this

application (the "**Application**"), pursuant to sections 327(a) and 328(a) of title 11 of the United

States Code (the "**Bankruptcy Code**"), Rule 2014(a) of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**") and Rule 2014-1 of the Local Rules for the United States

Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), for entry of an

order authorizing her to retain and employ Kinetic Partners US LLP ("**Kinetic Partners**") as her

financial consultant in the Chapter 11 Cases (as defined below) and pursuant to the terms and

conditions of the engagement letter between Kinetic Partners and the Trustee dated

February 13, 2014 (the "**Engagement Letter**"),[1] *nunc pro tunc* to February 13, 2014.  A copy of

the Engagement Letter is attached hereto as Exhibit B.   In support of this Application, the

---

[1]      Any references to or summaries of the Engagement Letter herein are qualified by the express terms of the
         Engagement Letter, which will govern if there is a conflict between the Engagement Letter and the
         summaries provided herein.  All capitalized terms used but not defined herein have the meanings given to
         such terms in the Engagement Letter.

Trustee relies upon the Declaration of Geoffrey Varga, a member at Kinetic Partners (the "**Varga Declaration**") attached hereto as Exhibit A and incorporated herein by reference, and respectfully represents as follows:

**BACKGROUND**

A.    <u>General</u>

      1.    On September 24, 2013, the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code (together, the "**Chapter 11 Cases**").  The six Debtors consist of (a) three open ended Cayman Islands mutual funds (the "**Limited Debtors**") and (b) three Cayman Islands exempt companies (the "**SPV Debtors**") created to hold certain illiquid assets of the three Limited Debtors.  The Limited Debtors are Soundview Elite Ltd., Soundview Premium, Ltd. and Soundview Star Ltd.  The three SPV Debtors are Elite Designated, Premium Designated and Star Designated.  By Order dated October 16, 2013 (Docket No. 40), this Court directed that the Chapter 11 Cases be procedurally consolidated and jointly administered.

      2.    On January 23, 2014, this Court entered a bench decision (Docket No. 156) (the "**Bench Order**") which, among other things, authorized and directed the United States Trustee (the "**U.S. Trustee**") to appoint a chapter 11 trustee.  By a notice dated January 31, 2014 (Docket No. 160), the U.S. Trustee appointed Corinne Ball to serve as the Trustee in these Chapter 11 Cases.  On February 3, 2014, the Court approved (Docket No. 164) the U.S. Trustee's appointment of Corinne Ball as Trustee.

B.    **The Grand Cayman Proceedings**

      3.    On or about July 26, 2013, Optima Absolute Return Fund, Ltd., Richcourt Allweather Fund, Inc. and America Alternative Investments, Ltd. filed winding up petitions against the SPV Debtors and Debtor Soundview Elite Ltd. in the Grand Court of the Cayman

Islands (the "**Grand Court**"), seeking an order by the Grand Court that (a) the SPV Debtors and Soundview Elite Ltd. be wound up and (b) liquidators be appointed.

4.    On or about August 20, 2013, the Citco Group of Companies filed winding up petitions in the Grand Court seeking (a) the winding up of Soundview Premium, Ltd. and Soundview Star Ltd. and (b) the appointment of Peter Anderson and Matthew Wright (the "**JOLs**") as Joint Official Liquidators.

5.    The Debtors' chapter 11 petitions were filed on the date of a previously-scheduled hearing in the Grand Court with respect to the winding up petitions. The Grand Court subsequently entered winding up orders appointing the JOLs with respect to each of the Limited Debtors. To date, winding up orders for the SPV Debtors have not been entered.

6.    The Bench Order directed the Trustee to work out a protocol with the JOLs for a division of responsibilities between them, subject to the approval of the Grand Court and this Court. See Bench Order, at 28.

**C.    Fletcher International Ltd.**

7.    Fletcher International Ltd. ("**FILB**") is the debtor in a separate chapter 11 case before this Court (Case No. 12-12796 (REG)) (the "**FILB Chapter 11 Case**"). FILB, a Bermuda corporation, is a "master fund" in a group of affiliated private investment funds, or "feeder funds," organized in a master-feeder fund structure.

8.    On September 28, 2012, this Court entered an order appointing Richard J. Davis as the chapter 11 trustee (the "**FILB Trustee**") in the FILB Chapter 11 Case. See Order Approving the Appointment of Chapter 11 Trustee, Case No. 12-12796 (REG) (FILB Docket No. 115). The FILB Trustee was charged with the tasks of managing FILB's affairs and conducting an investigation of various transactions by the company's insiders. See Order Directing Appointment of a Chapter 11 Trustee, Case No. 12-12796 (REG) (FILB Docket

No. 95).  On January 24, 2014, the FILB Trustee filed a report with this Court in the FILB

Chapter 11 Case.  See Trustee's Report and Disclosure Statement, Case No. 12-12796 (REG)

(FILB Docket No. 393).

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this matter pursuant to

28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

pursuant to 28 U.S.C. §§ 1408 and 1409.

## BASIS FOR RELIEF

10.     Section 327(a) of the Bankruptcy Code provides that:

> the trustee, with the court's approval, may employ one or more . . .
> professional persons, that do not hold or represent an interest
> adverse to the estate, and that are disinterested persons, to
> represent or assist the trustee in carrying out the trustee's duties
> under this title."

11 U.S.C. § 327(a).

11.     Pursuant to section 328(a) of the Bankruptcy Code, a debtor in possession

may employ professional persons under section 327(a) of the Bankruptcy Code "on any

reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a

fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

12.     Pursuant to Bankruptcy Rule 2014(a), an application to employ

professional persons under section 327(a) of the Bankruptcy Code:

> shall state the specific facts showing the necessity for the
> employment; the name of the person to be employed, the reasons
> for the selection, the professional services to be rendered, any
> proposed arrangement for compensation, and, to the best of the
> applicant's knowledge, all of the person's connections with the
> debtor, creditors, any other party in interest, their respective
> attorneys and accountants, the United States trustee, or any person
> employed in the office of the United States trustee."

Fed. R. Bankr. P. 2014(a).  Local Rule 2014-1 requires that the "specific facts showing the reasonableness of the terms and conditions of the employment, including the terms of any retainer, hourly fee, or contingent fee" be disclosed.

***The Necessity For Kinetic Partners' Employment and Its Qualifications***

13.    The Trustee requires the services of an experienced financial consultant, knowledgeable about liquidation proceedings of offshore funds under U.S. and Cayman Islands law, to assist her in the exercise of her statutory responsibilities and maximize recoveries for creditors.  The Trustee has selected Kinetic Partners as her financial consultant because she believes that Kinetic Partners possesses:  (a) experience and in-depth knowledge with respect to the liquidation of funds under U.S. and Cayman Islands law; (b) a deep understanding of the issues in U.S. / Cayman Islands cross-border chapter 11 cases; and (c) the qualifications to provide the financial consultancy services that will be required in these Chapter 11 Cases.

14.    Kinetic Partners is a global professional services firm primarily focused on the asset management, banking and brokerage industries.  Kinetic Partners currently has approximately 160 professional staff globally, operating from its offices in New York, the Cayman Islands, London, Hong Kong, Dublin, Geneva, Luxembourg, and the Channel Islands. Kinetic Partners' range of services include, without limitation, corporate recovery and restructuring, forensic accounting and litigation support, regulatory and compliance consulting, tax advisory, and audit and assurance.

15.    With regards to its corporate recovery and restructuring services, Kinetic Partners has been involved in managing or advising in many large and complex bankruptcies and liquidation proceedings of offshore investment funds, special purpose vehicles and other asset management related structures, including:  Palm Beach Offshore Ltd / Palm Beach Offshore II

Ltd. / Lancelot Investors Fund; Bear Stearns High-Grade Structured Credit Strategies (Overseas) Ltd. and Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd.; Himelsein Mandel Offshore Fund; Commonwealth Funds / Sand Springs Funds; Mariah Re Ltd.; Saad Investment Finance Company (No.5) Limited; Mezzanine Financing Ltd. / Consistent Return Ltd. / Silverback Fund Ltd. / Nauticus Fund Ltd.; Ariel Fund Limited; Tarchon Fund of Funds SPC; Security Capital Ltd.; ThreeAM SPC Ltd.; Parmalat Capital Finance Limited; and SPhinX Strategy Fund.. Many of these offshore investment funds, special purpose vehicles and other asset management related structures involved entities and/or assets domiciled in the Cayman Islands, the Bahamas and the British Virgin Islands.

16.    Kinetic Partners has considerable experience performing forensic financial analysis, fraudulent conveyance and solvency analysis and other financial advisory related services. These services have been provided within the liquidations and bankruptcy proceedings in which Kinetic Partners was retained, including those listed above. They have also been provided to third parties, which generally have either been fiduciaries or legal counsel in civil litigation. Such matters have included Highview Point/Michael Kenwood, Madoff and Regents Park. Kinetic Partners has also been involved in other confidential asset tracings and financial reconstructions.

17.    The Trustee believes that Kinetic Partners' experience in these areas of service will allow Kinetic Partners to provide effective and cost-efficient services in these Chapter 11 Cases, enable the Debtors to achieve substantial benefits by maximizing asset recovery, cost control and efficiency, and that its employment is in the best interest of the estates.

### Services To Be Provided By Kinetic Partners

18.    As described in the Engagement Letter, Kinetic Partners will provide the Trustee with such financial consulting services as the Trustee and Kinetic Partners deem

appropriate and feasible to assist the Trustee in the course of the Chapter 11 Cases.  Specifically,

Kinetic Partners will render various services for the Trustee, including but not limited to, the

following:

### *Phase I (Months 1 through 2)*

(a)    at the direction of the Trustee, develop an operating procedure and task list in conjunction with the Trustee's counsel and other advisors to ensure proper coordination of activities and efficiencies with respect to the Trustee's administration of the Chapter 11 Cases;

(b)    analyze the activities in various liquidation proceedings in the Grand Court (the **"Cayman Proceedings"**) to advise the Trustee on how to proceed in the Chapter 11 Cases;

(c)    assist with the negotiation, drafting and implementation of an agreed cross-border protocol between the Cayman Proceedings and the Chapter 11 Cases for the effective and efficient administration of the Debtors' estates;

(d)    assist with the collection and if necessary reconstitution of the Debtors' books and records;

(e)    analyze information relevant to the Debtors from the FILB Chapter 11 Case obtained from the Trustee, her counsel and other advisors, to the extent necessary;

(f)    evaluate other offshore issues such as, among others, the JOLs' approach and involvement with Leverage, Arbitrage, Alpha and other offshore entities;

(g)    advise the Trustee regarding proofs of debt and claims filed by the Debtors and, if necessary, correct the same;

(h)    identify, locate and analyze the Debtors' assets, wherever they may be situated;

(i)    advise the Trustee, based on prior experience, of tasks that require attention and assist with such tasks as directed by the Trustee, her counsel and other advisors;

(j)    analyze the cogency and quantum of inter-estate claims including, but not limited to, claims between and among the Debtors, the FILB Trustee and other Cayman Proceedings;

(k)     advise on issues arising in connection with the FILB Chapter 11 Case and the plan proposed in that case;

(l)     advise on other matters related to the Chapter 11 Cases including, but not limited to, whether a chapter 11 proceeding should be initiated for other related or controlled entities; and

(m)     perform such other services, as requested by the Trustee and agreed to by Kinetic Partners, that are not duplicative of work the Trustee's counsel and other advisors are performing for the Debtors.

*Phase II (Months 2 through 4)*

(a)     complete any incomplete or in process tasks from Phase I, as directed by the Trustee or her counsel and agreed to by Kinetic Partners;

(b)     advise the Trustee, her counsel and other advisors regarding interviews of witnesses;

(c)     participate in discussions, analysis and negotiations among the various parties to the Chapter 11 Cases and the Cayman Proceedings regarding, among other things, the Debtors' assets, net asset value calculations and potential claims and defenses regarding claims the Trustee may wish to assert in either the Chapter 11 Cases or the Cayman Proceedings; and

(d)     perform such other services, as requested by the Trustee and agreed to by Kinetic Partners, that are not duplicative of work the Trustee's counsel and other advisors are performing for the Debtors.

19.     The Trustee may terminate Kinetic Partners' engagement by giving notice

in writing at any time, <u>provided</u> that such termination will not affect Kinetic Partners' rights to

fees or charges incurred prior to termination which will then be charged on a pro rata basis.

***Arrangements For Compensation***

20.     Subject to the Court's approval, the Trustee will compensate Kinetic

Partners in accordance with the terms and conditions of the Engagement Letter, which provides

in relevant part for the following compensation structure:

(a)     Kinetic Partners will be compensated for its services on an hourly basis at Kinetic Partners' normal hourly rates as set forth below, <u>provided, however,</u> that Kinetic Partners will limit its fees (but not its expenses) charged until and including March 31, 2014 to $475,000, and after

March 31, 2014, Kinetic Partners will discount its hourly rates by 10% as set forth below.  These rates are subject to annual review.

| Position | Hourly Rate | Discounted Rate |
|---|---|---|
| Member | US$600 – US$750 | US$540 - US$675 |
| Director | US$500 – US$650 | US$450 - US$585 |
| Associate Director | US$300 – US$495 | US$270 - US$445.50 |
| Associate | US$225 – US$300 | US$202.50 - US$270 |
| Administrator | US$100 – US$150 | US$90 - US$135 |

(b)     The payment of fees and expenses shall not be contingent on any of the analysis or on the outcome of any litigation or other dispute; and

(c)     In addition to the fees, Kinetic Partners will charge appropriate out-of-pocket expenses, including travel and accommodation (if required), and a general charge to cover general expenses such as postage, stationery, photocopying, telephone and fax costs that cannot economically be recorded in respect of each specific case.  Accordingly, Kinetic Partners will charge for such expenses at the rate of US$5 per chargeable hour incurred.

21.     The Trustee believes that the compensation arrangements with Kinetic Partners are reasonable and at market rates for engagements and chapter 11 cases (and out-of-court liquidations) of this size and complexity that require the level of service set forth above, and that these compensation arrangements are both fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

22.     The Trustee has been advised that Kinetic Partners intends to maintain detailed contemporaneous time records in increments of one-tenths of an hour and apply to this Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the United States Trustee Guidelines and any additional procedures that may be established by the Court in the Chapter 11 Cases.  Kinetic Partners understands that interim and final fee awards are subject to approval by this Court.

-9-

23.     As part of the overall compensation payable to Kinetic Partners under the terms of the Engagement Letter, the Trustee has agreed to certain indemnification provisions set forth in the Engagement Letter and as modified herein and by the proposed order.  The Engagement Letter provides that the Trustee will indemnify Kinetic Partners against all liability, claims, actions, proceedings, costs, damages or demands arising out of or in connection with unauthorized disclosure of the services provided by Kinetic Partners or any product thereof to any third party.  However, in no event will Kinetic Partners be indemnified where Kinetic Partners has or is alleged to have acted in bad faith, with self-dealing, with breach of fiduciary duty (if any), negligently, with willful misconduct, or due to Kinetic Partners' breach of the Engagement Letter.  Likewise, in no event will Kinetic Partners be indemnified if a court of competent jurisdiction, by a final non-appealable order, finds Kinetic Partners directly liable for bad faith, self-dealing, breach of fiduciary duty (if any), negligence, willful misconduct or breach of the Engagement Letter.  Both the Trustee and Kinetic Partners believe that such provisions are customary and reasonable for financial advisory engagements in chapter 11 proceedings.

24.     The Trustee has been advised that Kinetic Partners has not agreed to share any of the compensation it receives for providing the services contemplated under the Engagement Letter.

**_"Connections" and Disinterestedness of Kinetic Partners_**

25.     Kinetic Partners has informed the Trustee that, except as set forth in the Varga Declaration:

(a)     neither Kinetic Partners, nor any of its professionals, have any connection with the Trustee, the Debtors, their creditors, the U.S. Trustee, any person employed in the Office of the U.S. Trustee or any other party with an actual or potential interest in these Chapter 11 Cases or their respective attorneys or accountants;

(b)     neither Kinetic Partners, nor any of its professionals, are a creditor, equity security holder or insider of the Debtors;

(c)     no Kinetic Partners professional is, or was within the past two years, a director, officer or employee of the Debtors; and

(d)     neither Kinetic Partners, nor any of its professionals, hold an interest materially adverse to the Debtors, their respective estates, any class of the Debtors' creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

26.     Accordingly, the Trustee believes that Kinetic Partners is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code.

*Nunc Pro Tunc*

27.     Kinetic Partners has performed work in good faith, beginning on February 13, 2014, when the Trustee selected Kinetic Partners as her financial consultant, subject to Court approval.  Kinetic Partners performed this work at the Trustee's direction.  The Trustee submits that Kinetic Partners has provided necessary services and that such services are of value to the Debtors' estates and all parties in interest.

## NOTICE

28.     Notice of this Application will be provided to (a) the U.S. Trustee, (b) counsel to the Debtors and (c) all parties-in-interest who have filed a notice of appearance in the Chapter 11 Cases.  The Trustee respectfully submits that no other or further notice need be provided.

## NO PRIOR REQUEST

29.     No prior request for the relief sought in this Application has been made to this or to any other court.

**WHEREFORE**, the Trustee respectfully requests that this Court:  (i) enter an order, substantially in the form attached hereto as Exhibit C, authorizing the Trustee to employ

Kinetic Partners as her financial consultant in the Chapter 11 Cases pursuant to the terms and conditions of the Engagement Letter, *nunc pro tunc* to February 13, 2014 and (ii) granting such other and further relief as the Court may deem proper.

Dated:  March 5, 2014
       New York, New York

                        /s/ Corinne Ball
                        Corinne Ball,
                        In her capacity as Chapter 11 Trustee
                        of the Debtors
                        222 East 41st Street
                        New York, New York 10017
                        Telephone:  (212) 326-3939
                        Facsimile:  (212) 755-7306

Filed by:

Dated:  March 5, 2014
       New York, New York

                        /s/ Veerle Roovers
                        Veerle Roovers
                        Amy Edgy Ferber
                        JONES DAY
                        222 East 41st Street
                        New York, New York 10017
                        Telephone: (212) 326-3939
                        Facsimile: (212) 755-7306

                        *Proposed Attorneys for the Chapter 11 Trustee*

# EXHIBIT A

**Varga Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
                                  :

In re                            :        Chapter 11
                                  :        No. 13-13098 (REG)

        SOUNDVIEW ELITE LTD., *et al.*,   :
                                  :        (Jointly Administered)

                      Debtors.    :
                                  :
---------------------------------------------------------------X

**DECLARATION OF GEOFFREY VARGA IN SUPPORT**
**OF THE APPLICATION OF CHAPTER 11 TRUSTEE FOR AN ORDER**
**AUTHORIZING HER TO RETAIN AND EMPLOY KINETIC PARTNERS US LLP**
**AS HER FINANCIAL CONSULTANT, *NUNC PRO TUNC* TO FEBRUARY 13, 2014**

GEOFFREY VARGA declares, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a Member of Kinetic Partners US LLP (**"Kinetic Partners"**) and am duly authorized to make this declaration (the **"Declaration"**) on behalf of Kinetic Partners. I make this Declaration in support of the Application of Chapter 11 Trustee for an Order Authorizing Her to Retain and Employ Kinetic Partners US LLP as Her Financial Consultant *Nunc Pro Tunc* to February 13, 2014 (the **"Application"**).[1] Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

2.      Kinetic Partners has agreed to provide financial consulting services to the Trustee in the Chapter 11 Cases, pursuant to the terms and conditions of the engagement letter dated February 13, 2014 between the Trustee and Kinetic Partners (the **"Engagement Letter"**). A copy of the Engagement Letter is attached to the Application as <u>Exhibit B</u>.

---

[1]     Capitalized terms used but not defined herein have the meanings given to them in the Application.

3.      Kinetic Partners has performed work in good faith, beginning on February 13, 2014, when the Trustee selected Kinetic Partners as her financial consultant, subject to Court approval.  Kinetic Partners performed this work at the Trustee's direction.

***Kinetic Partners' Qualifications***

4.      Kinetic Partners is a global professional services firm primarily focused on the asset management, banking and brokerage industries.  I am the global head of Kinetic Partners' Corporate Recovery and Restructuring practice.  I have 18 years of professional experience in the areas of insolvency, corporate recovery and restructuring including, in the last eight years, liquidating multiple distressed or insolvent offshore and onshore funds and asset management structures.  The engagements I have managed while with Kinetic Partners have generally comprised structures with entities and/or assets domiciled in jurisdictions such as (a) the Caribbean, specifically the Cayman Islands, the Bahamas and the British Virgin Islands, (b) the United States and (c) Europe.  Assets that that I have been responsible for monetizing in these various estates have included real estate, aircraft, private equity investments, marketable securities, structured products and hedge fund and private equity fund interests.  Additionally, I have considerable experience in pursuing recoveries through litigation.  Engagements on which I have been actively involved include:  Palm Beach Offshore Ltd / Palm Beach Offshore II Ltd. / Lancelot Investors Fund; Bear Stearns High-Grade Structured Credit Strategies (Overseas) Ltd. and Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd.; Himelsein Mandel Offshore Fund; Commonwealth Funds / Sand Springs Funds; Mariah Re Ltd.; Saad Investment Finance Company (No.5) Limited; Mezzanine Financing Ltd. / Consistent Return Ltd. / Silverback Fund Ltd. / Nauticus Fund Ltd.; Ariel Fund Limited; Tarchon Fund of

Funds SPC; Security Capital Ltd.; ThreeAM SPC Ltd.; Parmalat Capital Finance Limited; and

SPhinX Strategy Fund.

5.      I hold a Bachelor of Commerce from Queen's University which I obtained

in 1991.  I am also a Canadian Chartered Accountant since 1994 and hold a Canadian Chartered

Insolvency & Restructuring Professional designation which I obtained in 2004.

6.      Prior to joining Kinetic Partners in 2005, I was a Vice President within the

Business Recovery Services practice of PricewaterhouseCoopers, based in Calgary.

7.      As described in the Application, Kinetic Partners currently has

approximately 160 professional staff globally, operating from its offices in New York, the

Cayman Islands, London, Hong Kong, Dublin, Geneva, Luxembourg, and the Channel Islands.

Kinetic Partners' range of services include, without limitation, corporate recovery and

restructuring, forensic accounting and litigation support, regulatory and compliance consulting,

tax advisory, and audit and assurance.

8.      With regards to its corporate recovery and restructuring services, Kinetic

Partners has been involved in managing or advising in many large and complex bankruptcies

and/or liquidation proceedings of offshore investment funds, special purpose vehicles and other

asset management related structures, including the engagements set forth above.  Many of these

offshore investment funds, special purpose vehicles and other asset management related

structures involved entities and/or assets domiciled in the Cayman Islands, the Bahamas and the

British Virgin Islands.

9.      Kinetic Partners has considerable experience performing forensic financial

analysis, fraudulent conveyance and solvency analysis and other financial advisory related

services.  These services have been provided within the liquidations and bankruptcy proceedings

in which Kinetic Partners was retained, including those listed above.  They have also been

provided to third parties, which generally have either been fiduciaries or legal counsel in civil

litigation.  Such matters have included Highview Point/Michael Kenwood, Madoff and Regents

Park.  Kinetic Partners has also been involved in other confidential asset tracings and financial

reconstructions.

>    10.    Accordingly, Kinetic Partners' experience in these areas of service will

allow Kinetic Partners to provide effective and cost-efficient services in these Chapter 11 Cases.

***Professional Services to Be Rendered***

>    11.    As described in the Engagement Letter, Kinetic Partners will provide the

Trustee with such financial consulting services as the Trustee and Kinetic Partners deem

appropriate and feasible to assist the Trustee in the course of the Chapter 11 Cases.  Specifically,

Kinetic Partners will render various services for the Trustee, including but not limited to, the

following:

> *Phase I (Months 1 through 2)*

(a)    at the direction of the Trustee, develop an operating procedure and task list in conjunction with the Trustee's counsel and other advisors to ensure proper coordination of activities and efficiencies with respect to the Trustee's administration of the Chapter 11 Cases;

(b)    analyze the activities in various liquidation proceedings in the Grand Court (the "**Cayman Proceedings**") to advise the Trustee on how to proceed in the Chapter 11 Cases;

(c)    assist with the negotiation, drafting and implementation of an agreed cross-border protocol between the Cayman Proceedings and the Chapter 11 Cases for the effective and efficient administration of the Debtors' estates;

(d)    assist with the collection and if necessary reconstitution of the Debtors' books and records;

(e)      analyze information relevant to the Debtors from the FILB Chapter 11
         Case obtained from the Trustee, her counsel and other advisors, to the
         extent necessary;

(f)      evaluate other offshore issues such as, among others, the JOLs' approach
         and involvement with Leverage, Arbitrage, Alpha and other offshore
         entities;

(g)      advise the Trustee regarding proofs of debt and claims filed by the Debtors
         and, if necessary, correct the same;

(h)      identify, locate and analyze the Debtors' assets, wherever they may be
         situated;

(i)      advise the Trustee, based on prior experience, of tasks that require
         attention and assist with such tasks as directed by the Trustee, her counsel
         and other advisors;

(j)      analyze the cogency and quantum of inter-estate claims including, but not
         limited to, claims between and among the Debtors, the FILB Trustee and
         other Cayman Proceedings;

(k)      advise on issues arising in connection with the FILB Chapter 11 Case and
         the plan proposed in that case;

(l)      advise on other matters related to the Chapter 11 Cases including, but not
         limited to, whether a chapter 11 proceeding should be initiated for other
         related or controlled entities; and

(m)      perform such other services, as requested by the Trustee and agreed to by
         Kinetic Partners, that are not duplicative of work the Trustee's counsel and
         other advisors are performing for the Debtors.

*Phase II (Months 2 through 4)*

(a)      complete any incomplete or in process tasks from Phase I, as directed by
         the Trustee or her counsel and agreed to by Kinetic Partners;

(b)      advise the Trustee, her counsel and other advisors regarding interviews of
         witnesses;

(c)      participate in discussions, analysis and negotiations among the various
         parties to the Chapter 11 Cases and the Cayman Proceedings regarding,
         among other things, the Debtors' assets, net asset value calculations and
         potential claims and defenses regarding claims the Trustee may wish to
         assert in either the Chapter 11 Cases or the Cayman Proceedings; and

(d)    perform such other services, as requested by the Trustee and agreed to by Kinetic Partners, that are not duplicative of work the Trustee's counsel and other advisors are performing for the Debtors.

12.    It is my belief that the resources, capabilities and resources of Kinetic Partners in advising the Trustee are crucial to these Chapter 11 Cases.  As a financial consultant experienced in, among other things, the liquidation of Cayman Islands and other offshore funds, Kinetic Partners provides a critical service in these Chapter 11 Cases.

***Arrangements for Compensation***

13.    The terms of Kinetic Partners' proposed compensation are fully set forth in the Application and the Engagement Letter attached to the Application as Exhibit B.

14.    I believe that the compensation arrangements with Kinetic Partners are reasonable and at market rates for engagements and chapter 11 cases (and out-of-court liquidations) of this size and complexity that require the level of service set forth above, and that these compensation arrangements are both fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

15.    Kinetic Partners intends to maintain detailed contemporaneous time records in increments of one-tenths of an hour and apply to this Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the United States Trustee Guidelines and any additional procedures that may be established by the Court in the Chapter 11 Cases. Kinetic Partners understands that interim and final fee awards are subject to approval by this Court.

16.    Kinetic Partners has not agreed to share any of the compensation it receives for providing the services contemplated under the Engagement Letter.

*"Connections" and Disinterestedness of Kinetic Partners*

17.    In connection with the preparation of this Declaration, Kinetic Partners conducted a review of its contacts with the Trustee, the Debtors, their creditors, the U.S. Trustee, or any other party in interest that were made known to Kinetic Partners.  A listing of the parties reviewed is set forth on Schedule 1 to this Declaration (the **"Interested Parties"**).  Kinetic Partners' review, completed under my supervision, consisted of (a) a review of its computerized accounting records and database of current and former clients and (b) a general inquiry to all its members, relying on the list of Interested Parties.

18.    Based on the results of its review, Kinetic Partners does not have a relationship with any of the Interested Parties except as follows:

(a)    As set forth on the attached Schedule 2, Kinetic Partners currently represents and has formerly represented, in matters unrelated to these Chapter 11 Cases, parties that are (i) Interested Parties and/or (ii) potential affiliates of Interested Parties.

(b)    Kinetic Partners has also worked with or against, but not represented, other Interested Parties in matters unrelated to these Chapter 11 Cases. The identities of such parties are also set forth on Schedule 2 attached hereto.

(c)    From time to time, Kinetic Partners may perform or may have performed services for, or maintain other commercial or professional relationships with, certain creditors of the Debtors and various other parties that are adverse to the Debtors, in each case in matters unrelated to these Chapter 11 Cases.

(d)    As part of its diverse practice, Kinetic Partners appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in the Chapter 11 Cases.  In addition, Kinetic Partners has in the past, may currently and likely will in the future be working with or against other professionals involved in the Chapter 11 Cases in matters unrelated to the Debtors and the Chapter 11 Cases.  Based on Kinetic Partners' current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests adverse to the Debtors, and all are unrelated to the Chapter 11 Cases.

19.     To the best of my knowledge, information and belief, Kinetic Partners has

not been retained to assist any entity or person other than the Trustee on matters relating to, or in

direct connection with, the Chapter 11 Cases.  If Kinetic Partners' proposed retention by the

Trustee is approved by the Court, Kinetic Partners will not accept any engagement or perform

any services for any entity or person other than the Trustee in these cases.

20.     For the reasons set forth above, to the best of my knowledge, except as set

forth herein:

(a)     neither Kinetic Partners, nor any of its professionals, have any connection
to the Trustee, the Debtors, their creditors, the U.S. Trustee, any person
employed in the Office of the U.S. Trustee or any other party with an
actual or potential interest in these Chapter 11 Cases or their respective
attorneys or accountants;

(b)     neither Kinetic Partners, nor any of its professionals, are a creditor, equity
security holder or insider of the Debtors;

(c)     no Kinetic Partners professional is, or was within the past two years, a
director, officer or employee of the Debtors; and

(d)     neither Kinetic Partners, nor any of its professionals, hold an interest
materially adverse to the Debtors, their respective estates, any class of the
Debtors' creditors or equity security holders, by reason of any direct or
indirect relationship to, connection with, or interest in, the Debtors, or for
any other reason.

Accordingly, I believe that Kinetic Partners is a "disinterested person" as such term is defined in

section 101(14) of the Bankruptcy Code.

21.     If any new relevant relationship is discovered or any conflict arises,

Kinetic Partners will promptly file a supplemental affidavit as required by Bankruptcy

Rule 2014(a).

### SIGNATURE PAGE FOLLOWS

I declare under penalty of perjury that the foregoing is true and correct.


Executed on:   March 5, 2014                    _____
                                               Geoffrey Varga

**Schedule 1 to Varga Declaration**

**Schedule 1**

**Soundview Elite Ltd., et al.**

**Interested Parties**

**Soundview Chapter 11 Trustee**

Corinne Ball

**Professional Proposed to be Retained by Soundview Chapter 11 Trustee**

Jones Day

**Debtors**

SoundView Elite, Ltd.
SoundView Premium, Ltd.
SoundView Star, Ltd.
Elite Designated
Star Designated
Premium Designated

**Top 20 Unsecured Creditors**

America Alternative Investments, Ltd., c/o
    Midanek
Citco
Lampost
Optima Absolute Return Fund, Ltd., c/o Midanek
Pasig
Pinnacle Fund Administration
RF Services
Richcourt Allweather Fund
Richcourt Capital Management
SoundView Premium
SoundView Star

**Corporate Ownership**

Citco Global Custody NV
Equity Income Corporation
Fletcher Asset Management, Inc.
The Fletcher Fund, L.P.
Fletcher Income Arbitrage Fund, L.P.
Fletcher International, Inc.
Fletcher International Ltd.
Multi Manager Investors LLC
Nautical Nominees Limited
Prevoyance Sante Valance
Richcourt Acquisition Inc.

Richcourt Holding Inc.
RPGP Limited
SIX SIS AG – Global Fund Services

**Parties Identified in Soundview Elite Ltd. Chapter 11 Petition**

AAI
ABN Amro Custodial Services
Alphonse Fletcher
American Alternative Investments, Ltd.
Banca Commerciale Lugano
Banca Euromobilare
Bank Morgan Stanley AG Zurich
Bank Sal Oppenheim Jr. & Cie
Banque Martin Maurel
Banque Pasche SA
BNP Paribas Arbitrage SNC
CA Titres
Caceis BL SA
Citco Global Custody NV
Crédit Agricole (Suisse) S.A.
Credit Suisse IC Services Prod
Credit Suisse International
Credit Suisse London Nominees
Credito Privato Commerciale SA
Deborah Hicks Midanek, President, Solon Group,
    Inc.
Denis Kiely
Deutsche Bank (Suisse) S.A.
DMS Corporate Services
Floyd Saunders
FS Morval
George Ladner
Gergoire Schucani
HSBC Private Bank (Suisse) S.A.
HSH Norbank Securities S.A.
Julius Baer
KBL European Pvt Bankers S.A.
KPMG
KPMG Financial Services
KPMG (Cayman)
Laan Van Langerhuize 1
Lampost
Mechanema Investments Limited c/o Nerine Trust
    Co. (BVI) Ltd.

Mizuho Bank
Nautical Nominees Limited
New Wave Fund SPC
Optima Absolute Return Fund ICS (BVI) Ltd.
Paribas (Suisse) S.A.
Pasig c/o Citco Global Custody
Pictet & Cie
Pinnacle Fund Administration
Pitagora Fund Ltd.
Prevoyance Sante Valance
RAF
Rahn Bodmer
Reichmuth & Co.
RF Services
Rich & Conolly
Richcourt Allweather Fund
Richcourt Capital Management
Richcourt Capital Mgmt., Inc.,Walkers Corporate
    Services (BVI) Ltd.
Richcourt Composite, Inc.
Richcourt Euro Strategies, Inc.
Richcourt Top Stars 1 Fund Ltd.
SG Private Banking (Suisse)
Six SIS AG - Global Fund Services
Société Générale
SoundView Capital Management
SoundView Composite Ltd.
Stichting MN Services H-Funds
Stuart Turner
Walkers Legal Services
Weil Gotshal & Manges

**Other Creditors of the Debtors**

The Firefighter's Retirement System (Louisiana)
The Municipal Employees' Retirement System of
    Louisiana
The New Orleans Fire Fighters' Pension & Relief
    Fund

**Debtors' Retained
Professionals in Chapter 11 Cases**

Richard J. Annette
CohnReznick Advisory Group
Porzio Bromberg
Patterson Belknap Webb & Tyler
Bernard Katz

**Other Professionals**

Janet Francis
George P.E. Giglioli

Giglioli & Company
Kasowitz, Benson, Torres & Friedman LLP
Loeb Smith & Brady
Terry Marsh
Morrison & Foerster
Smeets Law (Cayman)
Gary Smith

**Director/Officer**

Stuart MacGregor

**Former Directors**

Deborah Hicks Midanek
Gerti Muho

**Trust Company, Litigation Counterparty**

Wilmington Trust, National Association

**Other Interested Parties**

Citco Global Custody (N.A.) N.V.
The Citco Group, Ltd.
Citco Trading, Inc.
Fletcher International Bermuda
Kenneth Krys
Leveraged Hawk, Inc.
Margo MacInnis
Matthew Wright (RHSW Cayman)
Peter Anderson (RHSW Cayman)
Richcourt Acquisition, Inc. BVI
Richcourt Allweather B, Inc.
Richcourt Composite, Inc.
Richcourt Euro Strategies, Inc.
Richcourt Holding, Inc. BVI
Solon Group
SoundView Capital Management, Ltd.
SoundView Cayman Islands

**Office of the United States Trustee**

William K. Harrington
Richard C. Morrissey
Linda A. Riffkin

**Affiliated Debtor and Its Chapter 11 Trustee**

Fletcher International, Ltd.
Richard J. Davis, Chapter 11 Trustee

**Fletcher Affiliates and Related Parties**

BRG Investments LLC
Adolphe Fletcher
Geoffrey Fletcher
MV Nepenthes LLC

**Administrators for Fletcher**
**Feeder Funds and Their Affiliates**

Citco Corporate Services, Inc.
Citco Fund Services (Cayman Islands) Ltd.
Citco Fund Services (USA), Inc.
SS&C Technologies

**Auditors for Fletcher-Related Entities**

Eisner Amper LLP
Grant Thornton LLP

**Outside Counsel to Fletcher Entities**

Skadden, Arps, Slate, Meagher & Flom LLP
Walkers Legal Services

**Third Party Valuators for Fletcher Funds**

Duff & Phelps LLC
Quantal International, Inc.

**Investors in Fletcher Funds**

Massachusetts Bay Transportation Authority
    Retirement Fund

**Accounting and Tax Service**
**Providers to Fletcher Entities**

Duhallow
McGladrey LLP
RF Services

**Fletcher Third-Party Business Partners**

Credit Suisse (Europe) LLC
Credit Suisse (USA) LLC
Credit Suisse Securities (USA) LLC
Gyre Capital Management LLC
JPMorgan Securities LLC
Kohlberg Capital Corporation
Royal Bank of Scotland
United Community Banks, Inc.

**Entities Identified by Adolphe Fletcher as**
**Willing to Buy the ION Shares**

Credit Suisse
Del Mar Asset Management

**Richcourt Funds**

America Alternative Investments, Inc.
Elite Designated
New Wave Fund SPC
Optima Absolute Return Fund Ltd.
Pitagora Fund, Ltd.
Premium Designated
Richcourt Allweather B, Inc.
Richcourt Allweather Fund, Inc.
Richcourt Composite, Inc.
Richcourt Euro Strategies, Inc.
SoundView Composite, Ltd.
SoundView Elite, Ltd.
SoundView Premium, Ltd.
SoundView Star, Ltd.
Star Designated

**Miscellaneous Parties Identified**
**in Fletcher International, Ltd. Trustee's Report**

Consulting Services Group
Lampost Capital
Michael Meade
Joseph Meals
UBS

### Schedule 2 to Varga Declaration

**SOUNDVIEW ELITE LTD., *ET AL.***

**Current or Former Clients of Kinetic Partners in Matters Unrelated to the Chapter 11 Cases that Are Interested Parties as Set Forth on Schedule 1 or Potential Affiliates of Such Interested Parties**

| INTERESTED PARTY | DISCLOSURE OF KINETIC PARTNERS' RELATIONSHIP[1] |
|---|---|
| ABN Amro Custodial Services | • Affiliated company ***ABN Amro Bank NV*** is a current client. |
| BNP Paribas Arbitrage SNC | • Affiliate company ***BNP Paribas Securities Services*** is a current client. |
| Citco<br>Citco Global Custody N.V.<br>Citco Global Custody (N.A.) N.V.<br>The Citco Group, Ltd.<br>Citco Trading, Inc.<br>Citco Corporate Services, Inc.<br>Citco Fund Services (Cayman Islands) Ltd.<br>Citco Fund Services (USA), Inc. | • The Citco Group, Ltd. was a former client; and<br>• Affiliated companies ***Citco Group Limited***, ***Citco Bank Nederland N.V. Dublin Branch***, ***Citco Fund Services (Europe) B.V.*** and ***Citco (Canada) Inc.*** are current clients. |
| Credit Suisse IC Services Prod<br>Credit Suisse International<br>Credit Suisse London Nominees<br>Credit Suisse (Europe) LLC<br>Credit Suisse (USA) LLC<br>Credit Suisse Securities (USA) LLC | • Affiliated company ***Credit Suisse Securities (Europe) Ltd*** and ***Credit Suisse Administration Services (Ireland) Ltd*** are current clients. |
| Deutsche Bank (Suisse) AG | • Affiliate company ***Deutsche Bank AG*** is a current client; and<br>• Affiliated company Deutsche International Corporate Services (Ireland) was a former client. |
| HSBC Private Bank (Suisse) S.A. | • Affiliate companies HSBC Bank plc and HSBC Securities Services (Ireland) Limited were former clients. |

---

[1]    The names of current clients of Kinetic Partners appear in bold and italics.

**Interested Parties and Affiliates of Interested Parties That
Were Not Clients of Kinetic Partners But With Whom Kinetic Partners
Has Worked (Included Has Been Adverse to) in Matters Unrelated to the Chapter 11 Cases**

Citco
Citco Global Custody (N.A.) N.V.
Citco Global Custody NV
Credit Suisse International
Credit Suisse London Nominees
DMS Corporate Services
HSBC Private Bank (Suisse) S.A.
Pictet & Cie
HSBC Bank plc
HSH Norbank Securities S.A.
Hong Kong and Shanghai Bank Corporation Limited
Julius Baer
KPMG
KPMG (Cayman)
Reichmuth & Co.
The LA Firefighter ' Retirement System
The Municipal Employees Retirement System of LA
The New Orleans Fire Fighters Pension & Relief Fund
Walkers Legal Services
Wilmington Trust, National Association

# **EXHIBIT B**

**Engagement Letter**



675 Third Avenue, 21st Floor
New York NY 10017
**t** +1 212 661 2200
**f** +1 646 867 7879
**www**.kinetic-partners.com

February 13, 2014

Ms. Corinne Ball
222 East 41st Street
New York, NY 10017-6702
(212) 326-3939
cball@jonesday.com

Dear Ms. Ball,

**Subject:** ***Engagement Between Corinne Ball, not Individually but Solely as the Chapter 11 Trustee for the Debtors in the Chapter 11 Cases Styled as In re Soundview Elite Ltd., et al., Case No. 13-13098 (REG), and Kinetic Partners US LLP***

**1.    Introduction**

This letter confirms our discussions concerning the limited scope, terms, and conditions of our engagement (the "Engagement") by you, not individually but solely in your capacity as chapter 11 trustee (the "Trustee" or "you") for the debtors (the "Debtors" or "Soundview") in the chapter 11 bankruptcy cases styled *In re Soundview Elite Ltd. et al.*, Case No. 13-13098 (REG) (the "Bankruptcy Cases") currently pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") with respect to your administration of the Bankruptcy Cases under the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). Specifically, the Trustee seeks to retain Kinetic Partners US LLP ("Kinetic Partners") to provide certain consulting services to the Trustee as set forth herein.

**2.    Understanding of the Situation**

We understand that by order of the Bankruptcy Court on February 3, 2014, you were appointed the official Trustee for the Debtors. We understand that in your capacity as Trustee for the Debtors you have succeeded to all rights of the Debtors.

**3.    Services**

During the term of the Engagement, which is expected to last between two (2) and four (4) months, it is expected that we will provide the following Services to assist the Trustee, her counsel, and other professionals retained by the Trustee (collectively, the "Services"):

**Phase I (Months 1 through 2)**
    a)  At the direction of the Trustee, develop an operating procedure and task list in conjunction with the Trustee's counsel and other advisors to ensure proper coordination of activities and efficiencies with respect to the Trustee's administration of the Bankruptcy Cases;

b) Analyzing the activities in the various liquidation proceedings in the Cayman Island courts (the "Cayman Proceedings") to advise the Trustee on how to proceed in the Bankruptcy Cases;

c) Assisting with the negotiation, drafting and implementation of an agreed cross-border protocol between the Cayman Proceedings and Bankruptcy Cases for the effective and efficient administration of the Debtors' estates;

d) Assisting with the collection and if necessary reconstitution of the Debtor's books and records;

e) Analyzing information relevant to the Debtors, to the extent necessary, obtained from the Chapter 11 Trustee, her counsel and other advisors in the case styled as *In re Fletcher International, Ltd.,* Case No. 12-12796 (REG) (Bankr. S.D.N.Y. 2012);

f) Evaluating other offshore issues such as, among others, the Joint Operating Liquidators approach and involvement with Leveraged, Arbitrage, Alpha and other offshore entities;

g) Advising the Trustee regarding proofs of debt and claim filed by the Debtors and, if necessary, correcting the same in the Bankruptcy Court or other forum;

h) Identifying, locating, and analyzing the Debtors' assets, wherever they may be situated;

i) Advising the Trustee based on prior experience of tasks that require attention and assisting with such tasks as directed by the Trustee, her counsel, and other advisors;

j) Analyzing the cogency and quantum of inter-estate claims including, but not limited to, claims between and among the Debtors, the chapter 11 Trustee in *In re Fletcher International, Ltd.,* Case No. 12-12796 (REG) (Bankr. S.D.N.Y.) (the "Davis Trustee Case") and other Cayman proceedings;

k) Advising on issues arising in connection with the Davis Trustee Case and the plan proposed in that case;

l) Advising the Trustee on other matters related to the Bankruptcy Cases including, but not limited to, whether a chapter 11 proceeding should be initiated for other related or controlled entities; and

m) Performing such other services as requested by the Trustee, and agreed to by Kinetic Partners, that are not duplicative of work the Trustee's counsel and other advisors are performing for the Debtors.

### Phase II (Months 2 through 4)

a) Completing any incomplete or in process tasks from Phase I, as directed by the Trustee or her counsel and agreed to by Kinetic Partners;

b) Advising the Trustee, her counsel and other advisors regarding interviews of witnesses;

c) Participating in discussions, analysis, and negotiations among the various parties to the Bankruptcy Cases and Cayman Proceedings regarding, among other things, the Debtors' assets, NAVs, and potential claims and defenses regarding claims the Trustee may wish to assert in either the Bankruptcy Case or Cayman Proceedings; and

d) Performing such other services as requested by the Trustee, and agreed to by Kinetic Partners, that are not duplicative of work the Trustee's counsel and other advisors are performing for the Debtors.

The undersigned parties understand and agree that the Kinetic Partners' work on the Engagement is being performed to assist the Trustee and her counsel and other advisors on behalf of the Debtors and not for any individual or other party in any other matter. Furthermore, the undersigned parties understand and agree that any liability or other financial obligations hereunder apply to the Trustee.



It is understood and agreed that Kinetic Partners has not arrived at any final conclusions with respect to any matter relating to the Services. It is further understood that Kinetic Partners, subject to approval by the Bankruptcy Court, shall be entitled to receive payment of fees and expenses regardless of any conclusions at which it may arrive. If Kinetic Partners is asked to prepare and provide any testimony and agrees to do so, it shall be entitled to receive payment of fees and expenses relating thereto, subject to Bankruptcy Court approval, even in the event such testimony is not required or the Bankruptcy Court or any other tribunal determines, for any reason, not to permit Kinetic Partners to provide such testimony.

**4.     Fees**

Based on our understanding of the situation as conveyed to us, we propose to charge for conducting the Services on a rates and hours basis using our normal hourly rates as follows:

| | |
|---|---|
| Member | US$600-US$750/hr |
| Director | US$500-US$650/hr |
| Associate Director | US$300-US$495/hr |
| Associate | US$225-US$300/hr |
| Administrator | US$100-US$150/hr |

Please note that the above fees are subject to annual review (as applicable).

Notwithstanding the foregoing, Kinetic Partners has agreed, at the request of the Trustee, to (a) limit its fees (but not its expenses) charged until and including March 31, 2014 to $475,000; and (b) thereafter, discount its above rates by 10%. As noted above, payment of fees and expenses shall not be contingent on any of the analysis or on the outcome or any litigation or other dispute.

The Trustee shall promptly file an application seeking approval of the Engagement *nunc pro tunc* to the date hereof. The payment of fees and reimbursement of expenses hereunder shall be subject of the approval of the Bankruptcy Court. Kinetic Partners agrees to make applications for fees and expenses in accordance with the Bankruptcy Code and the guidelines, rules and procedures of the Bankruptcy Court.

In addition to the fees outlined above, appropriate out-of-pocket expenses and incidentals, including travel and accommodation (if required), will be charged as incurred. There will also be a general charge to cover general expenses such as postage, stationery, photocopying charges, telephone and fax costs, each of which cannot economically be recorded in respect of each specific case. Accordingly, these will be charged at the rate of US $5 per chargeable hour incurred.

**5.     Terms of Business**

The attached Terms of Business set out the duties of each of the undersigned in respect of the Services. The Terms of Business provide, among other things, that you will indemnify Kinetic against claims brought against Kinetic by any third party and that Kinetic's aggregate liability to you or the Debtors whether in contract, tort or otherwise will be limited to the maximum amount paid by the Debtors in respect of the Services.

This letter and the Terms of Business attached comprise the entire agreement for the provision



of the Services to the exclusion of any other express or implied term, whether expressed orally or in writing, including any conditions, warranties and representations and shall supersede all previous letters of engagement, undertakings, agreements and correspondence regarding the Services.

**6.       Governing Law and Jurisdiction**

The Contract shall be governed by and interpreted in accordance with the laws of the State of New York.  The Bankruptcy Court shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning this Engagement and any matter related to it.

**7.       Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of the Engagement under this agreement by signing the confirmation below and returning a copy of this letter and a copy of the attached terms and conditions to us at the above address.

If you have any questions regarding this letter or the attached terms and conditions, please do not hesitate to contact us.

Yours faithfully,

*Kinetic Partners US LLP*

Kinetic Partners US LLP

Confirmation of Terms of Engagement

**Having read both the above letter of engagement from Kinetic Partners US LLP and the Terms of Business attached thereto, we agree to appoint Kinetic Partners US LLP upon the terms set out therein.**

By:        _____

Corinne Ball, not individually but solely in my capacity as chapter 11 Trustee for the Debtors

Date:      _____



## TERMS OF BUSINESS

1. **Terms of Business**

These Terms of Business apply to the delivery of services to a client by Kinetic Partners US LLP in the United States and its territories pursuant to the engagement letter enclosing these Terms of Business and recording the engagement.

2. **Definitions**

In these Terms of Business the following expressions will have the following meanings:

2.1. This Contract means these Terms of Business and the signed letter of engagement;

2.2. Fees means the fees set out in this Contract;

2.3. Start Date means the date of commencement of this Contract;

2.4. Services means the services referred to in this Contract and signed letter of engagement, including the Nature of Work, toolkits and templates provided and any other matter arising from time to time where we act on your express instruction;

2.5. We, us, our, LLP means Kinetic Partners US LLP including their Members, employees, agents and advisors;

2.6. You, your means the addressees of the engagement letter, its affiliates, and any other legal person who has signed the engagement letter to indicate that they will be bound by the Terms of Business.

2.7. In the Terms of Business the masculine includes the feminine and the neuter, and the singular includes the plural and vice versa as the context admits or requires.

3. **Limited Liability Partnership**

Kinetic Partners US LLP is constituted as a limited liability partnership in accordance with the Limited Liability Partnerships laws of the state of Delaware. Any references in the Terms of Business or the engagement letter to the term 'partner' or 'member' will be taken to refer to a member of Kinetic Partners US LLP only.

4. **Performance of the Services**

4.1. In consideration of you agreeing to pay our Fees we will, with effect from the Start Date, provide the Services to the standards of conduct and care expected of us by law and by relevant governing professional bodies.

4.2. Apart from the agreed scope of our engagement, we have no responsibility to update any report or other product of the Services for events which take place after it is issued in final form.

5. **Instructions**

5.1. Your acceptance of this Contract will be evidenced by the return of a signed engagement letter or your formal instruction to begin to provide the Services set out in that letter.

5.2. You authorise us to act from time to time on instructions given in any manner, including verbal, written and electronic in circumstances where we reasonably believe those instructions have emanated from you or from any person we could reasonably expect to have authority to instruct us on your behalf.

5.3. Where we reasonably believe certain action needs to be taken by us on your behalf in order to properly perform the Services but no adequate or

timely instructions have been received by us, you authorise us to take whatever action we consider reasonably appropriate in the circumstances.

5.4. Where a letter of engagement has been prepared by us but not yet signed by you and you subsequently instruct us on any matter, then you will be deemed to have accepted these Terms of Business provided you have been sent a copy.

6. **Fees, Billing and Payment**

6.1. We reserve the right at all times to obtain information from external sources in order to enable us to assess your creditworthiness.

6.2. Our Fees will be invoiced monthly in arrears. We may make arrangements with you to invoice an agreed portion of the fee in advance or part way through the engagement.

6.3. Invoices will take the form of a final account for all work carried out during the period covered by the relevant invoice and will be due for payment in full, in the invoiced currency, without any deduction, set-off or counterclaim on presentation unless otherwise stated. If an invoice is not paid within 30 days of presentation we reserve the right to charge interest on any outstanding balance at 4% per annum above the prevailing daily dollar base-lending rate of Barclays Bank Plc until the date of settlement.

6.4. If you disagree with an invoice you must notify us in writing within 30 days of the invoice date, failing which you will be deemed to have agreed to its terms. You agree that you will in any event pay all undisputed amounts in accordance with this Contract.

6.5. We are entitled to recover on a full indemnity basis, any costs incurred by us in collecting overdue payments to which it is ultimately determined we are entitled, including our time charges, the costs and expenses of any third parties we may appoint to collect such amounts. Subject to applicable law we reserve the right to retain all documents and any items in our possession relating to any matter until all invoices are paid in full.

6.6. If any agreement has been made whereby our Fees are to be paid by someone other than you, you will nevertheless remain liable for all our Fees outstanding and all expenses incurred on your behalf until payment has been made in full.

6.7. You agree that we may deduct or cause to be deducted the Fees and all additional charges from any monies or assets held by us for you. Further we shall be entitled to charge or sell assets under our control belonging to you for the purposes of meeting outstanding fees.

7. **Disbursements**

Additional fees to cover reasonable disbursements such as transaction charges, bank fees, government levies, duties or fines and all other charges reasonably incurred in the provision of the Services together with all other disbursements and reasonable and properly vouched out of pocket expenses may be made from time to time. A fee of 2% will be levied on all invoices to cover general disbursements. We may render invoices in advance of any anticipated additional charges.

8. **Variation**

With your written approval, not unreasonably withheld, we may vary our Fees and/or these Terms of Business from time to time. Such changes will be advised to you in writing and unless you notify us in writing that you

disagree, will be deemed to be accepted by you 30 days after posting.

## 9. Ownership

9.1. Unless otherwise agreed or required by a regulatory body, we will retain ownership of the copyright and all other intellectual property rights in the product of the Services, whether oral or tangible, and the ownership of our working papers and all other materials.

9.2. Any product of the Services released to you in any form is supplied by us on the basis that it is for the sole benefit of and use by you and any entities listed in the engagement letter and the appendices hereto, and for use in connection with the services. No report, documentation or publication produced by us may be reproduced, in whole or in part or provided to any third party without our prior written consent which will not be unreasonably withheld.

## 10. Information

10.1. To enable us to perform the Services, you will promptly supply all information and assistance and all access to documentation in your possession, custody or under your control and to personnel under your control, where reasonably required by us or which you would reasonably expect to be relevant to us to perform the Services.

10.2. You will use reasonable endeavours to ensure that all information provided by you is accurate and is held honestly and is complete in all material aspects and is not misleading.

10.3. We may receive information from other sources in the course of delivering the Services. To the fullest extent possible by law, we shall not be liable to you for any loss or damage suffered by you arising from fraud, misrepresentation, withholding of information material to the Services, provision of inaccurate or misleading information provided by any third party unless such fraud, misrepresentation, withholding, inaccuracy or such default is evident to us, or should reasonably be, without further enquiry.

10.4. You will supply information in response to our enquiries and authorise us to obtain any references required to enable us to comply with our statutory obligations relating to money laundering. We will be entitled to make any further enquiries and obtain any references as we may from time to time consider reasonably necessary for continuing compliance with our legal obligations.

## 11. Data Protection & Confidentiality

11.1. Both parties each acknowledge that, during the term of this Contract, each party shall have access to confidential and proprietary information of the other party, including information not related to the process which is the object of this Contract. Both parties shall maintain the confidentiality of such information beyond the term of this Contract and execute any confidentiality agreements associated with the Services. This clause will confirm our understanding with respect to such information.

11.2. Both parties agree that all confidential information will be held and treated by both parties, their officers, directors, partners, employees, representatives and agents (collectively "Representatives") in confidence and will not be disclosed by their Representatives without the other party's prior written consent.

11.3. Notwithstanding paragraph 11.2, nothing in this Contract shall preclude either party from disclosing any information specifically requested or subpoenaed by regulatory, administrative, supervisory, or judicial authorities or to its professional advisers. However, both parties will notify each other of any such request prior to providing such information. Such disclosure will be to comply with any requirement of US law, of our regulatory bodies or any other governmental or regulatory agency for the purpose of any inquiry, inspection or investigation with whose requirements we are bound to comply to disclose confidential information.

11.4. Confidential information shall not include any information that (i) at the time of disclosure or thereafter is in or comes into the public domain other than as a result of a disclosure by you or your Representatives, (ii) is already available to you or becomes available to you on a non-confidential basis from a source other than Kinetic Partners US LLP, provided that such other source is not bound by any obligation of confidentiality relating to the information provided, or (iii) you can demonstrate such information has been independently developed by you without violation of the agreements contained herein.

11.5. Our obligations of confidentiality will no longer apply where confidential information properly enters the public domain.

11.6. Our obligations regarding Data Protection will be those expected of us by relevant governing professional bodies.

11.7. Data Protection

To enable us to discharge the services agreed under this Contract, and for other related purposes including updating and enhancing client records, analysis for management purposes and statutory returns, crime prevention and legal and regulatory compliance, we may obtain, use, process and disclose personal data about you, your business and your officers and employers. We confirm when processing data on your behalf that we will comply with the relevant provisions of US law.

## 12. Anti-Corruption and Anti-Bribery

Both parties shall comply with all applicable US laws, statutes and regulations relating to anti-bribery and anti-corruption, and not engage in any activity, practice or conduct which would constitute an offence under those laws. Breach of this clause shall be deemed a material breach of this Contract.

## 13. Publicity

13.1. In connection with the provision of Services you may include reference to us (if we agree in advance the text of any such reference save as required by any law) in any press release, advertisement or other public record following completion of the Services.

13.2. Following completion of the Services we may publicise or advertise or disclose our role in the provision of the Services and when doing so we may refer to your name and may use your logo, and may refer to any press release, advertisement or other public record that may be issued by you provided that you agree, in writing, the text of any such disclosure in advance.

13.3. You may withdraw the consent given in clause 13.2 above, in writing to our Compliance Officer, at any time.

### 14. Other Professional Advisers

14.1. You will be responsible for the nomination, appointment and payment of other professional advisers who may be retained by you to advise on a transaction or any matter in respect of which the Services are or may be supplied.

14.2. We will be entitled, to appoint other professional advisers to assist us in delivering the Services and to include their fees and expenses as part of our charges. You will reimburse us promptly for such fees and expenses. We undertake to ensure that such professional advisers are subject to confidentiality terms similar to those presented in clause 11.

### 15. Liability

15.1. Subject to clauses 15.2 to 15.4, our aggregate liability to you, (whether in contract, tort, breach of statutory duty, restitution for losses or costs suffered under or in connection with the contract or the Services) will be limited to the amount specified in the engagement letter.

15.2. We will not be liable to you, whether in tort, contract or otherwise, for:

15.2.1. indirect or consequential loss or damage;

15.2.2. loss of profits;

15.2.3. loss of business, or

15.2.4. loss or damage as a result of any third party claims suffered or incurred by you.

15.3. We will not be liable to you for any losses arising from or in connection with electronic communication of information between you and us, except if such losses are directly or indirectly caused by an act or an omission committed by us.

15.4. We do not limit or exclude our liability (if any) to you for:

15.4.1. personal injury or death resulting from our negligence;

15.4.2. any work that we undertake for you for which it would be illegal for us to exclude or attempt to exclude our liability;

15.4.3. our deliberate breach of regulation, duty or relevant laws; or

15.4.4. fraud, or wilful default.

15.5. Where any damage or loss is suffered by you, the extent to which such loss will be recoverable by you will be limited so as to be in proportion to our contribution to the overall fault for such loss or damage taking into account any contributory negligence of you, other advisers or other third parties.

15.6. Our work is not, unless there is a legal or regulatory requirement, to be made available to third parties without our written permission and we will accept no responsibility to third parties for any aspect of our professional services or work under this Contract that is made available to them.

15.7. The Client acknowledges that nothing in this Contract gives rise to any responsibilities on Kinetic Partners US LLP's part for ensuring that the Client meets any of its regulatory obligations which shall remain the sole responsibility of the Client.

### 16. Claims

Any claim made by any party in respect of loss or damage suffered as a result of, arising from or in connection with Services whether in contract or tort or under statute must be made, where Services have been delivered, within three years of the date on which the act or omission giving rise to the claim was performed. If the Contract has been terminated, any claim must be made within three years of the date of termination. If the loss or damage is suffered as a result, arising from or in connection with our unauthorised disclosure of confidential information by either party, a claim must be made within two years of the date on which the unauthorised disclosure took place.

### 17. Third Party Claims

17.1. You agree that, except where we are liable pursuant to clause 15.1, you will indemnify us from and against all liability, claims, actions, proceedings, costs, damages or demands arising out of or in connection with unauthorised disclosure of the Services or any product thereof to any third party.

17.2. You will promptly on demand reimburse us all reasonable costs and expenses incurred in connection with the investigation of, preparation for the defence of, any pending or threatening litigation or claims directly related to your unauthorised disclosure of the Services or any products thereof to any third party, other than where we have acted or are alleged to have acted negligently, with wilful default, fraudulently or due to our breach of contract.

### 18. Termination

18.1. We and you have the right to terminate this Contract by giving notice in writing at any time. Termination will not affect our rights to Fees or charges incurred prior to termination which will be charged on a pro rata basis. Termination will not affect any contingency fee obligations or any rights already accrued under this Contract.

18.2. If any invoice is overdue for payment, or if we have made a request for money on account and it has not been satisfied within seven days, we may terminate this contract immediately by giving notice to you and we may stop work on all matters on which we act for you. We may also deliver an invoice for all unbilled work we have carried out on your behalf up to that date. In these circumstances we may immediately deduct amounts invoiced to you from any amounts held by us on your behalf. We may also immediately terminate this Contract if you have supplied us with falsely misleading, inaccurate or incomplete information or if a conflict of interest arises which might adversely affect you or us.

18.3. In the event that this Contract is terminated you agree to meet all reasonable costs of providing information to our successor.

### 19. Retention of Papers

Wherever possible our papers are filed electronically. It is our policy to permit destruction of correspondence and any other documentation after six years unless alternative arrangements have been agreed in writing and subject to applicable law.

### 20. Email Communications

20.1. If you have the necessary facilities we may use email for communicating with you unless you tell us not to do so. You accept and agree that communications over the internet are not completely secure. You will let us know beforehand if there are any communications that should not be sent over the internet.

20.2. We take reasonable precautions to prevent viruses or other harmful devices by use of a fire wall and virus checking software. If we are to communicate by email it is on the basis that you agree to do likewise.

## 21. Complaints

If you have any complaints about our service to you, you should in the first instance bring them to the attention of the relevant client member. If your complaint is not then resolved to your satisfaction, please write to the Compliance Officer at Kinetic Partners US LLP, c/o One London Wall, London, EC2Y 5HB, UK.

## 22. Severability

If any provision of this Contract is held to be invalid, illegal or unenforceable (in whole or in part) it will to that extent be deemed not to form part of this Contract and the remainder of this Contract will continue in full force and effect.

If any of the provisions of this Contract become invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired. Where, however, the provisions of such applicable law may be waived, they are hereby waived by the parties hereto to the full extent permitted by law to the end that this Contract shall be deemed to be a valid and binding Contract enforceable in accordance with its terms. In the event that any provision of this Contract becomes invalid, illegal or unenforceable, the parties hereto agree to substitute for such invalid, illegal or unenforceable provision a new provision which services the purpose of the invalid, illegal or unenforceable provision to the fullest possible extent and shall otherwise agree to the amendment or variation of this Contract to restore the balance of the parties' respective interests in this Contract.

## 23. Jurisdiction

23.1. Any dispute that may arise out of or in connection with the Services or otherwise in connection with this Contract, including the recovery of our Fees, will be governed by US law and the Courts of the United States will have exclusive jurisdiction to hear and determine any proceedings, subject to our right to institute proceedings in any other Court of competent jurisdiction.

23.2. This engagement letter is governed by, and construed in accordance with US law. The Courts of the United States will have exclusive jurisdiction in relation to any claim, dispute or difference concerning this engagement letter and any matter arising from it. Each party irrevocably waives any right it may have to object to any action being brought in those courts, to claim that the action has been brought in an inappropriate forum, or to claim that those courts do not have jurisdiction.

## 24. Restrictive Covenants

Neither party shall entice or endeavour to entice away from the other or employ any person under a contract of employment with the other party, and directly involved in the provision of the Services, without the prior consent of the other party, during the period of the engagement or within a period of twelve months from the date of termination of the engagement, whether alone or jointly with or as principal partner, agent, director, employee or consultant of any other person, firm or corporation, and whether directly or indirectly in competition with any of the other party's businesses carried on during the period of engagement or within a period of twelve months after the termination of the engagement. For the avoidance of doubt, nothing in this paragraph 24 shall restrict you or us from employing any such person who you or we (as

applicable) can demonstrate has responded to any form of general advertising.

## 25. Conflict of Interest and Independence

Because of Kinetic Partners' geographic scope, as well as the breadth and diversity of Kinetic Partners' practice, it is possible that other present or future clients of Kinetic Partners will have contacts with you. Accordingly, to prevent any future misunderstanding and to preserve Kinetic Partners' ability to represent you and its other clients, you and we agree as follows with respect to certain conflicts of interest issues:

a) Unless we have your specific agreement that we may do so, neither we nor any other Kinetic Partners' entity will provide services to another client in a matter which is substantially related to a matter in which we are providing services to you and in which the other client is adverse to you. We understand the term "matter" to refer to transactions, negotiations, proceedings or other services involving specific parties.

b) In the absence of a conflict as described in subparagraph (a) above, you acknowledge that we and other Kinetic Partners' entities may provide services to any other client either generally or in any matter in which you may have an interest, including, but not limited to:

(i) agreements; licenses; mergers and acquisitions; joint ventures; loans and financings; securities offerings; bankruptcy, insolvency or similar proceedings; patents, copyrights, trademarks, trade secrets or other intellectual property; real estate; government contracts; the protection of rights; and representation before regulatory authorities as to these matters and others; and

(ii) litigation matters brought by or against you as long as such matters are not the same as or substantially related to matters in which we are, or have been, providing services to you.

If at a later time you withdraw or modify this advance waiver in any material respect, you agree that at such time we shall have the right to withdraw from our engagement with you pursuant to this agreement.

c) For the avoidance of doubt, we do not view this advance consent to permit unauthorised disclosure or use of any client confidences. Subject to section 11 (Data Protection & Confidentiality):

(i) we will preserve the confidentiality of any confidential information you provide to us; and

(ii) we will not disclose to you or use on your behalf any documents or information with respect to which we owe a duty of confidentiality to another client or person.

d) The fact that we may have your documents and/or information, which may be relevant to another matter in which we or other Kinetic Partners' entities are providing services to another client, will not prevent us or other Kinetic Partners' entities from providing services to that other client in that matter without any further consent from you.

26. **Novation of Contract**

Kinetic Partners US LLP reserves the right to novate this contract or engagement to an associated entity which has similar qualifications and resources to Kinetic Partners US LLP to provide the agreed service to you and will inform you 30 days in advance of doing so.

27. **Force Majeure**

Neither party shall be liable to the other for any loss or damage which may be suffered by the other party due to any cause beyond the first party's reasonable control including without limitation any act of God, inclement weather, failure or shortage of power supplies or computer equipment, flood, drought, lightning or fire, strike, lock-out, trade dispute or labour disturbance, the act or omission of government authorities, other public telecommunications operator or other competent authority, war, military operations or not.

28. **Survival**

Sections 9 (Ownership), 11 (Data Protection & Confidentiality), 13 (Publicity), 15 (Liability) and 23 (Jurisdiction) and all other provisions of these Terms of Business intended to survive termination of the Contract shall survive termination as the context requires.

29. **The Provisions of Services Regulations 2009**

Our professional indemnity insurer is Markel International Limited of The Markel Building, 49 Leadenhall Street, London. The territorial coverage is worldwide.

30. **Assignment**

30.1. The Client shall not assign, sub-licence, transfer, charge or otherwise alienate any of its rights or obligations under this Contract without the prior written consent of Kinetic Partners US LLP which may not unreasonably be withheld by Kinetic Partners US LLP.

30.2. Kinetic Partners US LLP may transfer, assign, charge, sub-licence, delegate or sub-contract all or any of its rights or obligations hereunder. Such transfer, assignment, charge, sub-licensing, delegation or sub-contraction shall be notified to the Client at least one month prior to becoming effective and giving the Client the right to terminate the Service with immediate effect.

31. **Entire Contract**

31.1. This Contract represents the entire understanding between the parties in relation to the subject matter hereof and supersedes all other agreements and representations made by either party, whether oral or written and this Contract may only be modified if such notification is in writing and signed by a duly authorised representative of each party hereto.

31.2. If any provision in this Standard Terms of Business or any associated engagement letter, or its application, are found to be invalid, illegal or otherwise unenforceable in any respect, the validity, legality or enforceability of any other provisions shall not in any way be affected or impaired.

32. **Service of Notices, etc.**

32.1. Any notice, invoice or other documents which may be given by Kinetic Partners US LLP under this Contract shall be deemed to have been duly given if left at or sent by first class pre-paid post or fax to an address notified to Kinetic Partners US LLP in writing by the Client as an address to which notices, invoices or other documents may be sent or if in default thereof, its registered office.

32.2. Any notice, invoice or other document which may be given to Kinetic Partners US LLP under this Contract shall be deemed to have been duly given if left at or sent by first class pre-paid post or fax to the current business address, or any such other address as Kinetic Partners US LLP may from time to time prescribe and notify to the Client for that purpose.

32.3. Notices sent as above will be deemed to have been received two Business Days after the day of posting (in the case of first class pre-paid post) or on the next Business Day after transmission (in the case of fax messages, but only if a transmission report is generated by the sender's fax machine recording a message from the recipient's fax machine, confirming that the fax was sent to the number indicated above and confirming that all pages were successfully transmitted).

33. **No Waiver**

Failure by either party to exercise and enforce any rights conferred by this Contract shall not be deemed to be a waiver of any such right and will not operate so as to bar the exercise or enforcement thereof of any right on any later occasion.

# **EXHIBIT C**

**Proposed Order**

NYI-4570244v9

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X
                                                      :
In re                                                 :        Chapter 11
                                                      :        Case No. 13-13098 (REG)
                                                      :
        SOUNDVIEW ELITE LTD., *et al.*,               :        (Jointly Administered)
                                                      :
                                Debtors.              :
                                                      :
------------------------------------------------------------ X

**ORDER AUTHORIZING CHAPTER 11 TRUSTEE**
**TO RETAIN AND EMPLOY KINETIC PARTNERS AS HER**
**FINANCIAL CONSULTANT *NUNC PRO TUNC* TO FEBRUARY 13, 2014**

This matter coming before the Court on the Application of Chapter 11 Trustee for

an Order Authorizing Her to Retain and Employ Kinetic Partners US LLP as Her Financial

Consultant *Nunc Pro Tunc* to February 13, 2014 (the "**Application**"),[1] filed by Corinne Ball, in

her capacity as the Trustee in the above-captioned Chapter 11 Cases; the Court having reviewed

the Application, the Varga Declaration and having considered the statements of counsel with

respect to the Application at a hearing before the Court on the Application (the "**Hearing**"); and

the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C.

§§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iii) notice of the

Application and the Hearing was sufficient under the circumstances, (iv) Kinetic Partners does

not hold or represent any interest materially adverse to the Debtors' estates and is a "disinterested

person," as such term is defined in section 101(14) of the Bankruptcy Code and as required by

section 327(a) of the Bankruptcy Code, (v) the terms and conditions of Kinetic Partners'

employment, as described in the Application, are reasonable (as that term is used in

---

[1]        Capitalized terms used but not otherwise defined herein have the meanings given to them in the
        Application.

section 328(a) of the Bankruptcy Code) and (vi) the Application and all related papers fully

comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; and the Court

having determined that the legal and factual bases set forth in the Application, the Varga

Declaration and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Application is GRANTED to the extent provided herein.

2.      The Trustee is authorized, pursuant to sections 327(a) and 328(a) of the

Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1, to retain and employ

Kinetic Partners as her financial consultant in these Chapter 11 Cases, on the terms and

conditions set forth in the Application and the Engagement Letter, *nunc pro tunc* to

February 13, 2014.

3.      Kinetic Partners shall be compensated for its services and reimbursed for

any related expenses as set forth in the Application and the Engagement Letter and shall file

interim and final fee applications for allowance of its compensation and expenses in accordance

with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the

Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of

New York, the United States Trustee Fee Guidelines and any applicable orders of this Court.

4.      Prior to any increase in the hourly rates listed in the Engagement Letter,

Kinetic Partners shall file a supplemental affidavit with the Court and give ten (10) business

days' notice to the U.S. Trustee.

5.      Notwithstanding anything in the Engagement Letter to the contrary, all

requests of Kinetic Partners for payment of indemnity pursuant to the Engagement Letter shall be

made by means of an application (interim or final as the case may be) and shall be subject to

review by the Court to ensure that payment of such indemnity conforms to the terms of the

Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement

in respect of which indemnity is sought, provided, however, that in no event shall Kinetic

Partners be indemnified (a) in the case of its own bad faith, self-dealing, breach of fiduciary

duty (if any), negligence, willful misconduct or breach of the Engagement Letter or (b) if a court

of competent jurisdiction (by a final non-appealable order) finds Kinetic Partners directly liable

for bad faith, self-dealing, breach of fiduciary duty (if any), negligence, willful misconduct or

breach of the Engagement Letter.

6.    The terms and conditions of Kinetic Partners' retention, including, without

limitation, the fee and expense structure and the indemnification provision as modified by this

Order, are approved pursuant to section 328(a) of the Bankruptcy Code.

7.    To the extent that this Order is inconsistent with the Engagement Letter,

the terms of this Order shall govern.

8.    This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation, interpretation and/or enforcement of this Order.


Dated: New York, New York
        _____, 2014

                                        _____
                                        HONORABLE ROBERT E. GERBER
                                        UNITED STATES BANKRUPTCY JUDGE