JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Veerle Roovers
William J. Hine

Attorneys for Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
In re                                                      :    Chapter 11
                                                           :
SOUNDVIEW ELITE LTD., *et al.*,                            :
                                                           :    Case No. 13-13098 (REG)
                    Debtors.                               :
                                                           :    (Jointly Administered)
                                                           :
---------------------------------------------------------- x
                                                           :
CORINNE BALL, as Chapter 11 Trustee of                     :
SOUNDVIEW ELITE LTD.,                                      :    Adv. Pro. No.: _____
                                                           :
                    Plaintiff,                             :
                                                           :
            v.                                             :
                                                           :
SOUNDVIEW COMPOSITE LTD.,                                  :
                                                           :
                    Defendant.                             :
---------------------------------------------------------- x

**COMPLAINT UNDER 11 U.S.C. §§ 541 AND 542 FOR TURNOVER AND AN
ACCOUNTING OF ESTATE PROPERTY AND
<u>ATTORNEYS' FEES, COSTS AND LITIGATION EXPENSES</u>**

Plaintiff Corinne Ball, not individually, but solely in her capacity as the Chapter 11 Trustee (the "**Plaintiff**" or "**Trustee**") of, among others, Soundview Elite Ltd. (the "**Debtor**" or "**Soundview Elite**"), pursuant to 11 U.S.C. §§ 101, 105, 541, 542, *et seq.*, by and through her counsel, Jones Day, for her Complaint against Soundview Composite, Ltd. ("**Defendant**" or "**Soundview Composite**") alleges the following based upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Debtor's available business records and other documents assembled to date. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This action arises from a large investment by the Debtor in shares issued by the Defendant fund, and the Defendant's subsequent failure to honor the Debtor's duly executed and delivered request for redemption of such shares. The Debtor has complied with its requirements under the operative subscription agreement for the redemption of such shares (a fact that Defendant has effectively conceded in communications with Cayman Islands regulators), but Defendant has breached its obligation to return to the Debtor the value of the Debtor's investment as of the date of the requested redemption.

2. Thus, this is a straightforward action for the turnover of assets that constitute property of the bankrupt Debtor (for whom the Plaintiff here acts as trustee pursuant to the Court's order, dated February 3, 1014 (Docket No. 164)) and for an accounting of the value of such property. Accompanying this claim under section 542(b) of title 11 of the United States Code (the "**Bankruptcy Code**") is a cause of action for attorneys' fees, costs and expenses incurred in having to bring this adversary proceeding to secure the return of estate property.

NYI-4577334v8

## THE PARTIES

3. Debtor Soundview Elite is a mutual fund that was initially incorporated as an international business company in the Commonwealth of the Bahamas in October 2003 and commenced investment activities on November 1, 2003. In June 2005, Soundview Elite's registration was transferred to the Cayman Islands where it was registered as an exempted open-ended investment company in the Cayman Islands under the provisions of the Companies Law (2004 Revision). On September 24, 2013 (the "**Petition Date**"), Debtor Soundview Elite, along with the five related debtor funds, commenced a voluntary case under title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). As set forth above, this Court approved the appointment of Plaintiff as Trustee on February 3, 2014.

4. Upon information and belief, the "voting shares" of Debtor Soundview Elite (which represent the management or control interest in the fund) have at all times been majority owned by Soundview Capital Management Ltd. ("**Soundview Capital Management**"), a Bahamian company which also acted as Soundview Elite's investment manager. Outside investors owned the "participating shares" of Debtor Soundview Elite, which reflected their 100% economic interest in the fund. During the first years of Debtor Soundview Elite's existence (*i.e.*, October 2003 through June 19, 2008), Soundview Capital Management was indirectly owned by a joint venture between Hamilton Lane LLC and the Citco Group Ltd. ("**Citco**"). As described below, between June 20, 2008 and the Petition Date, Soundview Capital Management was ultimately indirectly owned in part by Fletcher Asset Management, Inc. ("**Fletcher Asset Management**"). Fletcher Asset Management is an investment adviser based in New York that was and is owned, controlled and operated by Alphonse Fletcher, Jr. ("**Fletcher**"), a resident of New York at the time, and certain of his personal associates, also U.S.

- 2 -

residents. Upon information and belief, at some point after June 2008, Fletcher Asset Management served as agent for Soundview Capital Management in providing investment management services to Debtor Soundview Elite.

5.    Defendant Soundview Composite is a fund incorporated on May 8, 2007 as an exempted open-ended investment company in the Cayman Islands under the provisions of the Companies Law (2004 Revision). Upon information and belief, despite being incorporated in the Cayman Islands, Soundview Composite has for many years engaged in substantial business operations in the United States, and in New York in particular. Soundview Capital Management owned the voting shares of Defendant Soundview Composite and acted as its investment manager under the terms of an investment management agreement, dated May 14, 2007. Since June 2008, the directors of Soundview Composite and Soundview Capital Management have been personal associates of Fletcher who are also U.S. residents. Fletcher himself was appointed director of both Soundview Composite and Soundview Capital Management in September 2012, positions he continued to hold on the Petition Date.

6.    Upon information and belief, since June 20, 2008, the majority of Soundview Composite's business and investing operations were conducted under the direction of Fletcher Asset Management, operating out of its offices at 48 Wall Street, New York. Since June 2008, Soundview Composite's directors have all been U.S. residents. And as of July 2013, Messrs. Fletcher and George Ladner, both U.S. residents and the sole directors of Soundview Composite, were also directors of Soundview Capital Management and were affiliated with Fletcher Asset Management, the entities that managed all the daily operations, investing, financial reporting, record keeping, transactions and other business functions of Soundview Composite. And while certain of Soundview Composite's third party service providers were ostensibly located overseas,

NYI-4577334v8

upon information and belief, since June 20, 2008, virtually all the business operations of Soundview Composite were conducted out of the offices of Fletcher Asset Management and Soundview Capital Management both located at 48 Wall Street in New York City.

7. Likewise, upon information and belief, since approximately June 20, 2008 virtually all the books and records of Soundview Composite were maintained at Fletcher Asset Management's New York offices, where many of them are located today. Also, upon information and belief, since June 20, 2008, the Fletcher Asset Management and Soundview Capital Management employees who managed Soundview Composite's business worked at these New York offices. The financial assets of Soundview Composite are held in accounts at Wilmington Trust Company ("**Wilmington Trust**"), located in Delaware. And in 2013-2014, Soundview Composite appeared in an interpleader action brought by Wilmington Trust in the Delaware Superior Court concerning the very funds that are the subject of the redemption requests at issue in this proceeding.

8. In sum, upon information and belief, virtually all of the activities of Soundview Composite over the last several years, many of which are at issue here, including those involving Debtor Soundview Elite's redemption request, took place in or were connected to the United States.

## JURISDICTION AND VENUE

9. This adversary proceeding is a core proceeding under, among other things, 28 U.S.C. § 157(b). Because this is a core proceeding, the Bankruptcy Court has jurisdiction and power under 28 U.S.C. § 157(b) to hear and determine this adversary proceeding.

10. This adversary proceeding is commenced pursuant to Section 101, 105(a) and 541, *et seq.* of the Bankruptcy Code; the general equity powers of the Bankruptcy Code; the

general common law; and pursuant to Federal Rules of Bankruptcy 6009, 7001 and 7008 to recover money and property of the estate.

11. The United States District Court for the Southern District of New York has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. By virtue of 28 U.S.C. § 157(b), and the Amended Standing Order of Reference M10-468, dated January 31, 2012, this adversary proceeding is automatically referred to the Bankruptcy Court.

12. The Bankruptcy Court has personal jurisdiction over this Defendant pursuant to Bankruptcy Rule 7004 and other authorities.

13. Venue of the adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409.

## FACTUAL ALLEGATIONS

14. This adversary proceeding involves one of the many funds managed by Fletcher and his associates. The allegations here represent only a small subset of the financial machinations and potential wrongdoing at issue in the underlying bankruptcy cases. The narrow issue before the Bankruptcy Court today is the failure of Soundview Composite (a non-Debtor entity that, upon information and belief, is still controlled by Fletcher) to honor its contractual obligation to redeem the H Shares purchased by Debtor Soundview Elite and to return to Soundview Elite, at least, the approximate $3.8 million dollars held in the Wilmington Trust account of Soundview Composite as well as other Soundview Composite cash and non-cash assets possibly owed to Debtor Soundview Elite.

The Soundview Composite Private Placement Memorandum

15. On or about May 14, 2007, Soundview Composite issued a Confidential Private Placement Memorandum (the "**Private Placement Memorandum**") setting forth the terms and conditions of its private offering to sell six different classes (D, H, E, F, Y and P) of non-voting

participating shares of stock. The offering was for the sale of shares that were not registered under U.S. securities laws, and the Private Placement Memorandum made plain that the purchasers of such shares could not be U.S. entities.

16. Debtor Soundview Elite, a Cayman Islands fund, was to be the purchaser of the H Shares of Soundview Composite. As it turned out, Soundview Elite was the only purchaser of *any* of the offered classes of shares. In short, Debtor Soundview Elite purchased a 100% interest in Soundview Composite.

17. The stated purpose of the offering was "to give investors access to the hedge fund industry and achieve capital appreciation by investing a substantial portion of [the Soundview Composite's, or the Fund's] assets among a selection of multi-manager funds run by the Investment Manager or its affiliates (the '**Master Funds**')." The Investment Manager in this context was Soundview Capital Management, which was retained by Soundview Composite pursuant to an Investment Management Agreement. Soundview Capital Management owned all the voting shares of Soundview Composite.

18. Citco, the indirect owner of Soundview Capital Management (before Fletcher acquired certain Citco assets, including Soundview Capital Management), was the original administrator of Soundview Composite. At the time the Private Placement Memorandum was issued, the Directors of Soundview Composite were CFS Company Ltd. and CFS Corporation Ltd.

19. Pursuant to the Private Placement Memorandum, Soundview Capital Management was to have discretion in allocating the assets of Soundview Composite among a group of money managers employing various types of investment strategies. Soundview Composite was also allowed to borrow money to secure the benefits of leverage in investing the

fund's money.  The Private Placement Memorandum contained many purported disclaimers and disclosures of the multiple conflicts of interest under which Soundview Composite was to be managed and operate.

20.   The Private Placement Memorandum described the rights of investors, *i.e.*, Debtor Soundview Elite, to redeem their shares.  The Private Placement Memorandum provided, in pertinent part, that:

> Shareholders generally may redeem all or some of their Shares of any Class after the applicable one-year lock-up period on any quarterly Redemption Date at the then current Net Asset Value per Share of such Class by sending a facsimile request for redemption to the Subadministrator in accordance with the notice requirements described above.  Completed request for redemption form must be mailed or delivered to the Subadminstrator.
>
> *   *   *
>
> Shares also may be redeemed at such other times on such terms and conditions as the Directors, acting in their sole discretion, may decide.  Requests for redemption are irrevocable upon receipt thereof by the Subadminstrator.

(Private Placement Memorandum at 30)

21.   The Private Placement Memorandum required that redemption requests be received at least 45 days prior to a scheduled Redemption Date in order to be acted upon by that Redemption Date.  (Private Placement Memorandum at 31)  Redemption requests received within the 45 day window (*i.e.*, providing the fund less than 45 days notice) would be deemed deferred until the next Redemption Date, unless the 45 day notice requirement is waived by the Directors.  (*Id.* at 31-32)

22.   The Private Placement Memorandum set forth time requirements for payments to be made to redeeming shareholders:

> Payment of not less than 90% of the estimated value of the Shares requested to be redeemed will be made within 40 days following

> the Redemption Date for the Class of Shares which are being redeemed, and the remaining balance of the net redemption proceeds will be paid in the applicable currency within ten Business Days after the official Net Asset Value of the applicable Class is published, in each case unless redemptions are limited, deferred or suspended.

(Private Placement Memorandum at 31)

23. The Private Placement Memorandum provided that "[t]he right to redeem is contingent upon the Fund having sufficient assets to discharge its liabilities on the Redemption Date." (Private Placement Memorandum at 31) The Private Placement Memorandum also purported to limit the value of shares to be redeemed on any given Redemption to 10% of the Net Asset Value of the fund, unless such limitation is waived by the Directors (Private Placement Memorandum at 32) -- this limitation was apparently referred to colloquially as a "gating" requirement.

24. The Private Placement Memorandum also stated that the Directors may suspend redemptions and the determination of Net Asset Value under certain circumstances. (Private Placement Memorandum at 34)

> Whenever the Directors declare a suspension in the determination of the Net Asset Value or the Fund, then as soon as may be practicable after any such declaration, the Subadministrator shall give notice of such declaration to all shareholders then requesting redemption. During any period when the determination of Net Asset Value is suspended, no Shares may be issued or redeemed.

(*Id.*)

25. Upon information and belief, no such suspension was ever declared and no suspension notice was ever sent to any holders of participating shares in Soundview Composite, including Debtor Soundview Elite.

The Subscription Agreement and Debtor Soundview Elite's Investment

- 8 -

NYI-4577334v8

26. Upon information and belief, sometime after the issuance of the Private Placement Memorandum, pursuant to a Subscription Agreement, Debtor Soundview Elite (operating under the direction of Soundview Capital Management) invested approximately $12.87 million to acquire approximately 15,311 H Shares of Soundview Composite. As noted above, Debtor Soundview Elite was the *only* purchaser of any of the classes of Soundview Composite shares. Debtor Soundview Elite therefore became the holder of 100% of the non-voting, participating interests in Soundview Composite.

27. Among other things, the Subscription Agreement memorialized Debtor Soundview Elite's redemption rights. Upon information and belief, Soundview Elite's right to redeem H Shares was limited and restricted in the manner set forth in the Private Placement Memorandum. Debtor Soundview Elite's right to redeem was also subject to the one-year lock-up period described in the Private Placement Memorandum.

<u>Fletcher Acquires Ownership of Soundview Composite, Soundview Elite and SCM</u>

28. As noted, in or about June 2008, Fletcher acquired certain Citco assets, including ownership and/or control of Soundview Capital Management and therefore Soundview Composite and Debtor Soundview Elite. As part of the acquisition, Citco agreed to remain as fund administrator for, among other funds, Soundview Composite and Debtor Soundview Elite. Thus, Citco retained an active role in administering these two funds which Fletcher had acquired and now controlled.

29. After the acquisition, Fletcher began installing his personal associates as directors of these funds. On June 30, 2008, Denis Kiely and Stewart Turner, both New York residents and associates of Fletcher, became the directors of Soundview Composite and Debtor Soundview Elite. They held these positions for several years. For a brief period from March 26 through

- 9 -

June 19, 2013, Solon Group, Inc., a U.S. entity, served as a purported "independent" director of Soundview Composite and Debtor Soundview Elite.  Later, Fletcher himself became a director of Soundview Composite (on September 4, 2012) and Debtor Soundview Elite (on August 21, 2012), and Fletcher's associate Ladner also became a director of those two entities sometime between December 2012 and July 2013.  On September 4, 2012, Fletcher became a director of Soundview Capital Management, and Ladner was appointed a director of Soundview Capital Management prior to July 2013.  Upon information and belief, all of these present or former directors were U.S. residents at the time they served in these positions.

30.     Since Citco was to remain as fund administrator after Fletcher's acquisition, there was no need to retain an immediate replacement.  This changed in or around July 2011, when HSBC Bank (Cayman) Limited ("**HSBC Cayman**") was retained as the fund administrator for, among other funds, Soundview Composite and Debtor Soundview Elite.  In or about January 1, 2013, Pinnacle Fund Administration LLC ("**Pinnacle**"), an entity based in Charlotte, North Carolina, became the fund administrator for Soundview Composite and Debtor Soundview Elite.

31.     Upon information and belief, after Fletcher's acquisition of these Citco assets, Soundview Capital Management began enlisting the help of Fletcher Asset Management, the investment management company Fletcher owned and controlled, to manage the investments and business affairs of, among other funds, Soundview Composite and Debtor Soundview Elite.  Upon information and belief, Fletcher Asset Management (under Fletcher's direction) effectively took over the management of these funds.

32.     In July 2010, Debtor Soundview Elite, by then ultimately controlled by Fletcher (through Fletcher Asset Management), issued a redemption request for approximately half of its holdings of Soundview Composite.  The request was eventually honored and Debtor Soundview

- 10 -

Elite thereby reduced its holdings in Soundview Composite to 7,191.06 shares, valued (as of December 31, 2010) at approximately $6.147 million. As of March 31, 2011, Soundview Composite's records valued Debtor Soundview Elite's remaining H Shares at $6,358,335.25.

<u>Debtor Soundview Elite's Request to Redeem All Its Shares of Soundview Composite</u>

33. On or around July 2011, Debtor Soundview Elite, then controlled by Fletcher, forwarded an additional request for redemption of its remaining holdings of shares in Soundview Composite, with a requested Redemption Date of August 31, 2011 (the "**2011 Redemption Request**").

34. Upon information and belief, the 2011 Redemption Request was sent to and received by HSBC Cayman, then the administrator of Soundview Composite. Upon information and belief, Fletcher and the Directors of both Soundview Composite and Debtor Soundview Elite were well aware of the 2011 Redemption Request. Indeed, at that time, the Directors of Soundview Composite were the same individuals who served as directors of Debtor Soundview Elite, namely Stewart Turner and Denis Kiely, both close associates of Fletcher. And Fletcher Asset Management served as the *de facto* investment manager of both these entities at the time. Fletcher effectively controlled all the entities involved in this redemption request.

35. Upon information and belief, no objection or refusal to honor the 2011 Redemption Request was ever issued by or on behalf of Soundview Composite, nor was any such notice forwarded to Debtor Soundview Elite. Debtor Soundview Elite's 2011 Redemption Request was accepted and acknowledged by Soundview Composite and those acting on its behalf.

36. The validity of Debtor Soundview Elite's 2011 Redemption Request (and Soundview Composite's acceptance of such requests) has been confirmed by Soundview

- 11 -

Composite.  In a letter, dated May 11, 2012, sent by Soundview Composite to the Cayman Islands Monetary Authority (the "**Cayman Islands Monetary Authority**") in response to inquiries by the Cayman Islands Monetary Authority into Soundview Composite's redemption practices, Soundview Composite wrote that "the sole investor in the Fund is Soundview Elite, which has put in a redemption request which is outstanding."  In response to the Cayman Islands Monetary Authority's question about whether redemptions or the calculation of Net Asset Value had ever been gated or suspended, Soundview Composite wrote:  "With respect to the Fund, it has never been gated or suspended.  It has only one investor, Soundview."

37.     In another letter, dated June 10, 2013 and apparently sent on July 10, 2013, from Soundview Composite to the Cayman Islands Monetary Authority, Soundview Composite also admitted, among other things, that it:  (i) had not suspended its redemptions; (ii) held one pending redemption request with an estimated value of $5,000,000; and (iii) intended to satisfy its pending redemption request in accordance with the governing documents.  In sum, Soundview Composite reported to the Cayman Islands Monetary Authority that Debtor Soundview Elite's 2011 Redemption Request was valid and Soundview Composite intended to honor it.  To date, it has not done so.

38.     While it is difficult to assemble records showing the exact Net Asset Value of Debtor Soundview Elite's holding of Soundview Composite H Shares at the time the 2011 Redemption Request was issued (the "**Owed Amount**"), Debtor Soundview Elite's records indicate that, as of December 31, 2011, it valued its, as yet unredeemed, holdings of 7,191.06 H Shares of Soundview Composite at approximately $5.525 million.  As noted, Soundview Composite had placed a higher value on such shares (approximately $6.36 million) a few months before the 2011 Redemption Request.

39.  In an affidavit dated December 2, 2013 (subject to cross examination at a hearing before this Court on December 17, 2013 and redirect examination on December 19, 2013), an expert retained by, *inter alia*, debtor in possession Soundview Elite (while it was still controlled by Fletcher, Fletcher Asset Management and Soundview Capital Management) reported to this Bankruptcy Court that, as of July 31, 2013, the value of Soundview Elite's redemption receivables owed to it by Soundview Composite was approximately $3.875 million, with an additional $469,000 owed as an "investment receivable."

40.  Plaintiff expects that a more accurate valuation of Debtor Soundview Elite's holdings and investment in Soundview Composite will have to be conducted, with the assistance of expert analysis and testimony, at trial.  Plaintiff suspects that the value of Soundview Composite's cash and non-cash assets owed to Debtor Soundview Elite may be worth more than the $3.875 million noted above.

41.  To date, Soundview Composite has paid nothing to Debtor Soundview Elite in connection with these receivables despite (i) the provisions of the Private Placement Memorandum requiring 90% payment within 40 days and the balance to be paid ten days after calculation of Net Asset Value, and (ii) Soundview Composite's 2013 representation to the Cayman Islands Monetary Authority that it intended to honor Debtor Soundview Elite's redemption request.  Upon information and belief, Debtor Soundview Elite has requested payment on several occasions – most recently in connection with the Trustee's counsel's February and March 2014 discussions with Fletcher about various issues concerning the chapter 11 cases of Debtor Soundview Elite and five affiliated debtors.

## FIRST CAUSE OF ACTION

## (TURNOVER AND ACCOUNTING PURSUANT TO 11 U.S.C. §§ 541 AND 542)

42. Plaintiff repeats and realleges the allegations of paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43. Section 541(a) of the Bankruptcy Code defines "property of the estate" to include, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case … wherever located and by whomever held." 11 U.S.C. § 541(a)(1).

44. Section 542(a) of the Bankruptcy Code provides that "an entity, other than a custodian in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title … shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

45. Section 542(b) of the Bankruptcy Code provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee." 11 U.S.C. § 542(b).

46. The Owed Amount is property of the Debtor Soundview Elite's estate as defined in section 541(a) of the Bankruptcy Code presently in the possession, custody, or control of the Defendant Soundview Composite which may be used or sold under section 363 of the Bankruptcy Code. As such the Owed Amount is valuable and beneficial to Debtor Soundview Elite's estate.

47. Defendant Soundview Composite is also required to pay the Owed Amount to Debtor Soundview Elite pursuant to section 542(b) of the Bankruptcy Code as a debt that is property of Debtor Soundview Elite's estate and that is matured and payable on demand.

- 14 -

48. Defendant Soundview Composite has no legal or contractual basis that permits it to hold or setoff the Owed Amount pursuant to the Private Placement Memorandum, Subscription Agreement or other operative document.

49. As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, Plaintiff is entitled to the immediate payment and turnover from the Defendant Soundview Composite of the Owed Amount.

50. As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, Plaintiff is also entitle to an accounting of the Owed Amount.

51. Based on the uncertainty associated with valuing Soundview Composite's assets and the Amount Owed, Plaintiff contends that the approximate $3.875 million in cash held in the accounts of or on behalf of Soundview Composite should immediately be turned over to the Plaintiff, and thereafter an accounting should be performed to determine (i) the value of the remaining cash and non-cash assets of Soundview Composite, and (ii) whether some or all of such assets should also be turned over to the Plaintiff as part of the Amount Owed to Debtor Soundview Elite.

## SECOND CAUSE OF ACTION
## (ATTORNEYS' FEES, COSTS AND LITIGATION EXPENSES)

52. Plaintiff repeats and realleges the allegations of paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53. Plaintiff has been forced to incur attorneys' fees and expenses resulting from Defendant's refusal to return and turnover to Plaintiff the Owed Amount.

54. Plaintiff should be awarded attorneys' fees, costs and litigation expenses associated with this action to recover funds owed to Debtor Soundview Elite by Defendant.

NYI-4577334v8

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendant Soundview Composite as follows:

1. Awarding Plaintiff, in her capacity as Trustee of Debtor Soundview Elite, the Owed Amount (in an amount to be determined at trial) plus interest;

2. Awarding Plaintiff reasonable costs and expenses incurred in this action, including its attorney's fees; and

3. Awarding such other and further relief that the Court deems just and proper.

Dated:   New York, New York
         April 1, 2014

JONES DAY

_/s/ Veerle Roovers_
Veerle Roovers
William J. Hine
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

*Attorneys for Chapter 11 Trustee*

- 16 -

NYI-4577334v8