Hearing Date and Time:  **August 6, 2014 at 9:45 a.m. (ET)**
Objection Deadline:  **July 29, 2014 at 4:00 p.m. (ET)**

JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Veerle Roovers
Stephen J. Pearson
Amy Edgy Ferber

*Attorneys for the Chapter 11 Trustee*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
                        :

In re                        :        Chapter 11

                        :        Case No. 13-13098 (REG)

                        :

        SOUNDVIEW ELITE LTD., *et al.*,     :        (Jointly Administered)

                        :

                Debtors.    :

                        :

---------------------------------------------------------- X

## OBJECTION OF THE CHAPTER 11 TRUSTEE
## TO THE MOTION TO REMOVE CHAPTER 11 TRUSTEE,
## <u>DISMISS THIS ACTION, AND OTHER AND FURTHER RELIEF</u>

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

OBJECTION...................................................................................................... 2

I.      MUHO IS PRECLUDED FROM MAKING THE ARGUMENTS IN THE
        MOTION................................................................................................ 2

        A.      Issue Preclusion Prevents Muho From Bringing The Motion ............... 2

        B.      It Is Law Of The Case That The Debtors' Chapter 11 Cases Were Properly
                Filed ................................................................................................ 5

        C.      The Motion Is Barred By The Doctrine Of Laches ............................... 6

II.     THE MERITS OF THE MOTION ARE BASELESS...................................... 9

        A.      Muho's Allegations Regarding His Control Of The Debtors Are Incorrect .......... 9

        B.      The Reasons This Court Ordered The Appointment Of A Chapter 11
                Trustee Are Still Present ...................................................................... 10

        C.      Muho Is Not An Appropriate Party To Control The Debtors ............................ 11

CONCLUSION.................................................................................................. 12

## TABLE OF AUTHORITIES

**Page**

CASES

641 Ave. of the Ams. Ltd. P'ship v. 641 Assocs.,
    189 B.R. 583 (S.D.N.Y. 1995)...................................................................................6

In re Rock & Republic Enters.,
    No. 10-11728 (AJG), 2011 Bankr. LEXIS 2401 (Bankr. S.D.N.Y. June 20, 2011)................6

In re Shea & Gould,
    214 B.R. 739 (Bankr. S.D.N.Y. 1997), aff'd, 229 B.R. 88 (S.D.N.Y. 1997)...........................8

In re Soundview Elite Ltd., et al.,
    Case No. 13-13098 (REG) (Bankr. S.D.N.Y. Jan. 23, 2014) [Docket No. 156] ...........5, 10, 11

Rezzonico v. H & R Block, Inc.,
    182 F.3d 144 (2d Cir. 1999), cert. denied, 528 U.S. 1189 (2000) ...........................................3

Ross v. Tognetti (In re Tognetti),
    No. 04-9400 (CGM), 2006 Bankr. LEXIS 2216 (Bankr. S.D.N.Y. June 21, 2006)................7

Schiro v. Farley,
    510 U.S. 222 (1994), reh'g denied, 510 U.S. 1215 (1994) ......................................................3

Soundview Elite Ltd. and Vanquish Fund Ltd. v. Muho and Leveraged Hawk, Inc.,
    Case No. 1:13-cv-06895-AT (S.D.N.Y. Feb. 28, 2014) [Docket No. 27] ................................4

U.S. v. Bruno,
    531 Fed. Appx. 47 (2d Cir. 2013)...........................................................................................3

Ulster Sav. Bank v. Kizelnik (In re Kizelnik),
    190 B.R. 171 (Bankr. S.D.N.Y. 1995)....................................................................................6

Wilmington Trust, N.A. v. Soundview Elite Ltd., et al.,
    C.A. No. N13C-06-156 (JTV) (Del. Sup. Ct. Jan. 17, 2014) [Transaction No.
    54864967] ................................................................................................................................4

TO:    THE HONORABLE ROBERT E. GERBER
        UNITED STATES BANKRUPTCY JUDGE

Corinne Ball, not individually but solely in her capacity as chapter 11 trustee

(the "**Trustee**") of the above-captioned debtors (the "**Debtors**"), respectfully submits this

objection to the Motion To Remove Chapter 11 Trustee, Dismiss This Action, And Other And

Further Relief filed by Gerti Muho [Docket No. 291] (the "**Motion**").

## PRELIMINARY STATEMENT

Filed within days of the Trustee seeking to enforce a judgment against Muho, the

Motion relies entirely on the unsupported and completely false assertion that "during all times

since April 29, 2013 Gerti Muho has been the sole party in control of the [Debtors] and the

[Debtors] themselves had merged into Leveraged Hawk, Inc. . . . on that same date." (Motion

at 1). The Motion utilizes this false premise to argue that the Court should dismiss the

chapter 11 cases of the Debtors (the "**Chapter 11 Cases**") as wrongly filed and that the Trustee

should be terminated with sole control of the Debtors being placed in the hands of Muho.

The Motion should be rejected because the arguments therein are precluded by the

doctrines of issue preclusion, law of the case and laches. Issue preclusion applies because the

issue of Muho's control of certain or all of the Debtors has been addressed by two other courts

and both courts have rejected the contention that Muho controls certain or all of the Debtors and

both courts have issued final judgments against Muho. Moreover, it is law of this case that the

Debtors' Chapter 11 Cases were properly filed. As a result, Muho cannot now argue that such

filings were unauthorized or flawed. Additionally, the Motion is precluded by the doctrine of

laches as Muho failed to appear and participate when this Court adjudicated a motion to dismiss

the Chapter 11 Cases and a motion to appoint a chapter 11 trustee, which Muho received notice

of through an entity he solely controls, Leveraged Hawk, Inc. ("**Leveraged Hawk**").

Even if the Court were to consider the substance of the Motion, it should be

denied as baseless.  It cannot be disputed that Muho resigned as a director of the Debtors on

April 3, 2013, well before the Debtors filed the Chapter 11 Cases.  Lastly, the Motion should be

denied on its merits for the same reasons the Court initially ordered the appointment of a

chapter 11 trustee — that there were numerous matters of concern that necessitated investigation

and potential litigation, including a transfer of more than $2 million Muho made from the HSBC

bank account of Debtor Soundview Elite Ltd. ("**Soundview Elite**") to Leveraged Hawk, and the

conduct of the Debtors' management that required investigation could not be examined by

management themselves due to clear conflicts of interest — and because Muho is not an

appropriate party to control the Debtors.

## **OBJECTION**

## I.    MUHO IS PRECLUDED FROM MAKING THE ARGUMENTS IN THE MOTION

The Trustee disputes the assertion that Muho has been the sole party in control of

any or all of the Debtors since April 29, 2013 (or in control of the Debtors in any manner since

April 3, 2013) based on a supposed merger of the Debtors into Leveraged Hawk.  However, the

Court need not even consider this factual assertion because, as a threshold matter, the Motion is

barred by the doctrines of issue preclusion, law of the case and laches.

### A.    Issue Preclusion Prevents Muho From Bringing The Motion

Muho is precluded from arguing that he is the sole party in control of any or all of

the Debtors because his contention on that point has been discredited by two separate courts in

final and valid judgments, and Muho is precluded from trying the same unsuccessful and

frivolous argument before a third court.  The doctrine of issue preclusion (or collateral estoppel) bars a party from relitigating issues that have been previously addressed and resolved in a valid and final judgment in an action involving the same parties.  See Rezzonico v. H & R Block, Inc., 182 F.3d 144, 148 (2d Cir. 1999), cert. denied, 528 U.S. 1189 (2000) ("[I]ssue preclusion means that when an issue has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (citing Schiro v. Farley, 510 U.S. 222, 232 (1994), reh'g denied, 510 U.S. 1215 (1994)); see also U.S. v. Bruno, 531 Fed. Appx. 47, 49 (2d Cir. 2013) ("Collateral estoppel provides that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.") (citations omitted).

In the case captioned Soundview Elite Ltd. and Vanquish Fund Ltd. v. Muho and Leveraged Hawk, Inc., Case No. 1:13-cv-06895-AT (S.D.N.Y.) (the "**District Court Action**"), Muho made the exact same argument that he brings before this Court with respect to Soundview Elite, i.e., that he was the sole party in control of Soundview Elite based on a purported merger of Soundview Elite into Leveraged Hawk.  The District Court Action was initiated by Soundview Elite against Muho and Leveraged Hawk to recover more than $2 million that Muho fraudulently transferred from the HSBC bank account of Soundview Elite to Leveraged Hawk. In fact, Exhibit A of the Motion, which Muho relies upon as the only evidence supporting his claim here, consists of pleadings he filed in the District Court Action, including his Emergency Motion to Dissolve Temporary Restraining Order and Motion to Dismiss for Insufficiency of Process (the "**Emergency Motion to Dissolve**") and three affidavits he submitted in support of that motion.[1]  The main argument featured in Muho's Emergency Motion to Dissolve was that

---

[1]    Exhibit A to the Motion contains, in part, Docket Nos. 21-24 filed by Muho in the District Court Action. For ease of reference, the Emergency Motion to Dissolve is attached hereto as **Exhibit A**.

the District Court Action should be dismissed because Muho is allegedly the rightful party in control of Soundview Elite based on its supposed merger with Leveraged Hawk. Judge Torres denied the Emergency Motion to Dissolve as "frivolous."[2] The court in the District Court Action entered a judgment against Muho and Leveraged Hawk in the amount of $2,194,185.89.[3]

Similarly, in Wilmington Trust, N.A. v. Soundview Elite Ltd., et al., C.A. No. N13C-06-156 (JTV) (Del. Sup. Ct.), an interpleader action where Leveraged Hawk (the entity Muho claims to own and control)[4] and the Debtors were parties, the Delaware Superior Court held that "Muho resigned from positions with any of the above-named 15 fund defendants [which included the Debtors and nine other non-Debtor affiliates] on or about April 3, 2013, and from that date ceased to have any management or control relationship in any of said funds, and that defendant Leveraged Hawk Inc. has no management or control relationship in any of the said funds."[5] Muho initially appeared in that action *pro se* purporting to act on behalf of Leveraged Hawk, and later he hired counsel for Leveraged Hawk, who filed, among other pleadings, answers to the complaint and cross-claims filed against Leveraged Hawk alleging that Muho had authority to control the funds of the 15 defendants (including the six Debtors). In the end, as noted above, the Delaware Superior Court found that Muho did not have a right to control the defendants, including the Debtors, or their funds.[6]

Thus, two courts have denied by valid and final judgments the assertion that Muho is the party in control of all or certain of the Debtors. Having already lost twice on this

---

[2]    District Court Action, Docket No. 27 (Feb. 28, 2014), attached hereto as **Exhibit B**.

[3]    District Court Action, Docket No. 37 (Apr. 4, 2014), attached hereto as **Exhibit C**.

[4]    See Motion at ¶ 5 ("On April 29, 2013 Gerti Muho created Leveraged Hawk, Inc."); Id. at Exhibit A, p. 32 of Motion (Gerti Muho signing state of Delaware Certificate of Merger as President of Leveraged Hawk).

[5]    Wilmington Trust, N.A. v. Soundview Elite Ltd., et al., C.A. No. N13C-06-156 (JTV) (Del. Sup. Ct. Jan. 17, 2014) [Transaction No. 54864967, at 2], attached hereto as **Exhibit D**.

[6]    Id.

same argument, Muho is precluded and estopped from asserting the same claim for a third time in the Motion.

**B.    It Is Law Of The Case That The Debtors' Chapter 11 Cases Were Properly Filed**

The law of the case doctrine also bars the Motion.  In particular, this doctrine bars Muho from trying to relitigate the question of whether these Chapter 11 Cases were properly filed, which he does in the Motion by arguing that "[t]here were and are no other Directors [other than Muho] who could possibly have had authority to file this bankruptcy proceeding" and that the parties that filed the Chapter 11 Cases did so "without any lawful authority."  (Motion at 1-2).

This Court has already held that Alphonse Fletcher and George Ladner were the directors of the Debtors and Soundview Capital Management (the sole entity holding a voting interest in three of the Debtors) at the time of the commencement of the Chapter 11 Cases, and, as such, they had the authority to file the Chapter 11 Cases.  See Bench Decision on Motions to Dismiss, For Relief From Stay, For Appointment of Trustee and On Sanctions For Contempt [Docket No. 156] (the **"Bench Decision"**).  The Court held that "[e]ach of the human beings [*e.g.*, Fletcher and Ladner] who needed to have input into the decision to file [the Chapter 11 Cases] did so, and focused on the exact decision that needed to be made."[7]  Even more specifically, the Court held that "no individual who was entitled to vote on the authorization [to file the Chapter 11 Cases] was deprived of the opportunity to do so, or even failed to do so."[8]

The Court's Bench Decision is the law of this case on which others have relied and, as such, Muho is precluded from reopening and relitigating this question.  The law of the

---

[7]    See Bench Decision at 8-11.

[8]    Id. at 11.

case doctrine provides that once a bankruptcy court has ruled on the merits of an issue of law, that decision is binding and should be adhered to in subsequent stages of the bankruptcy case. See 641 Ave. of the Ams. Ltd. P'ship v. 641 Assocs., 189 B.R. 583, 588 (S.D.N.Y. 1995) ("[U]nder the law of the case doctrine, a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation."); In re Rock & Republic Enters., No. 10-11728 (AJG), 2011 Bankr. LEXIS 2401, at *21 (Bankr. S.D.N.Y. June 20, 2011) ("The law of the case doctrine provides that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise."); Ulster Sav. Bank v. Kizelnik (In re Kizelnik), 190 B.R. 171, 180 (Bankr. S.D.N.Y. 1995) ("The doctrine of law of the case holds that a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.") (internal quotation and citations omitted).  The Court has already held as a matter of law that the Chapter 11 Cases were filed by the appropriate and required parties and that the Chapter 11 Cases should not be dismissed.  Muho has presented no legal, factual or procedural basis for revisiting that holding.

### C.    The Motion Is Barred By The Doctrine Of Laches

The two requests for relief that Muho seeks in the Motion, *i.e.*, dismissal of the Chapter 11 Cases and a ruling that a chapter 11 trustee is not necessary for the Debtors, have already been extensively litigated before this Court.[9]  These issues were fully briefed and argued at a four day long evidentiary hearing from December 17 - 20, 2013.  Muho, through Leveraged

---

[9]    See, e.g., Motion of the United States Trustee Pursuant to 11 U.S.C. § 1104 for Order Directing the Appointment of a Chapter 11 Trustee [Docket No. 82] (seeking the appointment of a chapter 11 trustee for the Debtors); The Joint Official Liquidators' Memorandum of Law In Support of Their Motion to Dismiss With Prejudice and for Related Relief [Docket No. 97] (seeking, among other things, the dismissal of the Chapter 11 Cases); Motion for Order Dismissing or Abstaining from Proceeding in These Cases, or Granting Related Relief From the Automatic Stay [Docket No. 108] (same).

Hawk, was provided notice of the litigation, the objection deadlines for briefing on both topics and the date of the hearing.[10] Rather than participate in the briefing or hearing, Muho allowed the objection deadlines and hearing to pass without making any filing or appearance.

Muho had the opportunity to timely raise the factual contentions and legal arguments he now proffers in the Motion when the possible dismissal of the Chapter 11 Cases and appointment of a chapter 11 trustee were properly before the Court. And he had the chance to do so before the Court ruled on either subject. Muho failed to appear and waived his right to be heard on these issues. He should not now be allowed to reopen these matters after the objection deadlines, of which he was on notice, have passed and well after the Court has decided these issues. See, e.g., Ross v. Tognetti (In re Tognetti), No. 04-9400 (CGM), 2006 Bankr. LEXIS 2216, at *49 (Bankr. S.D.N.Y. June 21, 2006) (bankruptcy court need not reach the merits of motion to dismiss for alleged improper conversion to chapter 7 where objection deadline for initial conversion had passed and the court's conversion order was never appealed or challenged)).

"Laches is an equitable doctrine by which a court denies relief to a claimant who has unreasonably delayed in asserting the claim, when that delay has prejudiced the party against whom relief is sought." Id. Courts have held the doctrine of laches to bar a motion to dismiss bankruptcy cases where the party bringing the motion could have advanced the same legal arguments earlier, especially where the factors asserted in favor of dismissal were known to that party for a long time. See Id. at 49-51 (laches bars a motion to dismiss bankruptcy case where

---

[10]    See Certificate of Service of Ross G. Shank [Docket No. 106] (certifying that Leveraged Hawk was served via first class mail the Motion and Memorandum of Law in Support of Entry of Order Pursuant to 11 U.S.C. § 1104(a) and Fed. R. Bankr. P. 2007.1 Directing Appointment of a Chapter 11 Trustee [Docket No. 94], which motion listed the objection deadline and the hearing date); Certificate of Service of Ross G. Shank [Docket No. 127] (certifying that Leveraged Hawk was served via first class mail the Joinder of Pasig Ltd. in the Joint Official Liquidators' Motion to Dismiss with Prejudice and for Related Relief [Docket No. 112], which joinder listed the objection deadline and the hearing date).

the factors argued in favor dismissal were known to the movant for some period of time and

debtor and creditors would be prejudiced by delay in bringing the motion because they "would

not have needed to go to the cost and expense of pursuing rights in the bankruptcy court");

In re Shea & Gould, 214 B.R. 739, 750 (Bankr. S.D.N.Y. 1997), aff'd, 229 B.R. 88 (S.D.N.Y.

1997) (laches bars a motion to dismiss bankruptcy case where party seeking dismissal could have

advanced the same arguments at the time the debtor filed the case, there is prejudice to the debtor

due to its expending time and money in administering the case and negotiating with interested

parties, and there is prejudice to creditors "because they will be forced to initiate or reinitiate

potentially time consuming and expensive litigation to liquidate and satisfy their claims").

Here, all the allegations made in the Motion were known to Muho at the time of

the filing of the Chapter 11 Cases.  In addition, dismissing the Chapter 11 Cases now, after nine

months of administration, investigation, negotiation and litigation would be a significant waste of

resources and prejudice the Debtors' estates and their creditors.  Indeed, it was only after the

Trustee initiated efforts to collect funds from Muho and Leveraged Hawk in satisfaction of the

judgment Soundview Elite Ltd. obtained in the District Court Action that Muho decided to bring

the Motion.[11]

---

[11]    Muho has initiated an action in the United States District Court for the Northern District of California,
captioned Muho v. Citibank N.A., Case No. 4:14-cv-03219-DMR, in which he seeks damages for the
freezing of his accounts by Citibank.  Citibank froze Muho's accounts in accordance with a temporary
restraining order issued in the District Court Action.  The Trustee is in the process of filing a notice of
suggestion of bankruptcy in Muho v. Citibank N.A. and reserves the right to seek relief for violation of the
automatic stay if Muho continues to assert such claims.

## II.    THE MERITS OF THE MOTION ARE BASELESS

Even if the Court were to consider the factual assertions and legal arguments made in the Motion, it is apparent that they are baseless.  The very premise of the Motion is untenable because Muho's claim that he has been in control of the Debtors is contradicted by unrebutted evidence.  Moreover, the reasons this Court ordered the appointment of a chapter 11 trustee are still present and Muho has made no showing to the contrary.  Nor can he show that he is an appropriate party to control the Debtors.

### A.    Muho's Allegations Regarding His Control Of The Debtors Are Incorrect

Muho's claim that he has been the sole party in control of the Debtors since April 29, 2013 is erroneous.  Unrebutted sworn testimony submitted to the Court shows that Muho resigned as director of the Debtors on April 3, 2013 and had no authority to take any action on behalf of any of the Debtors thereafter.[12]  Thus, any actions taken by Muho purportedly on behalf of the Debtors after April 3, 2013, especially unilateral action to award himself control of the Debtors (which Muho contends occurred on April 29, 2013), were ineffectual and fraudulent.  The Motion sets forth no evidence, aside from self-serving statements made by Muho and documents solely executed by Muho, that demonstrates that he had authority to take any actions on behalf of the Debtors or that any such transactions took place.

---

[12]    See Direct Testimony/Affidavit of Alphonse Fletcher, Jr. On Motions to Dismiss, Convert, or Appoint A Trustee [Corrected] [Docket No. 118, Exhibit FF] (copies of Muho's April 3, 2013 resignations from the Boards of Directors of the Fletcher affiliated funds, including the Debtors); Id. at 39 ("As a result, and after speaking with Mr. Saunders, we requested that Muho step down from the board[s], which he did.  A copy of his April 3rd resignation is annexed hereto as Exhibit 'FF.'").  Excerpts from the Direct Testimony/Affidavit of Alphonse Fletcher, Jr. On Motions to Dismiss, Convert, or Appoint A Trustee [Corrected] swearing to the resignation of Muho from the Debtors, including copies of Muho's April 3, 2013 resignations from the Board of Directors of the Debtors are attached hereto as **Exhibit E**.

B.    **The Reasons This Court Ordered The Appointment Of A Chapter 11 Trustee Are Still Present**

On January 23, 2014, this Court ordered the appointment of a chapter 11 trustee for the Debtors because:  (1) there were numerous matters of concern that necessitated investigation and potential litigation,[13] and (2) the conduct of the Debtors' management that required investigation could not be examined by management themselves due to clear conflicts of interest.[14]  None of the reasons for appointing the Trustee has changed and Muho does not point to any new evidence or changed circumstances to warrant removal of the Trustee. The possible management misconduct noted by this Court in the Bench Decision still requires investigation and may give rise to further litigation.  The Trustee is in the midst of conducting her investigation into such matters and there is no reason to now cut that investigation short prior to the Trustee reporting back to the Court.  If anything, third party investigation and control is now vital because both the Trustee and various creditors have begun to bring litigation against certain of the Debtors' affiliates, the Debtors' former management and entities owned by the Debtors' former management.

---

[13]    The matters listed by the Court in the Bench Decision that necessitated investigation and potential litigation, included the $2 million transfer that was the subject of the District Court Action, the apparent backdating of documents, the payment of management fees to Fletcher Asset Management based on seemingly inflated values for assets under management, the failure to produce audited financials for five years, the failure to produce net asset value statements for three years, the continued payments of management fees to Fletcher Asset Management at the same time redemption requests were not being honored, the Debtors' purchase of the stock of Fletcher International, Ltd. ("**FILB**") when FILB was already in bankruptcy and whether the matters identified by the chapter 11 trustee of FILB occurred with the Debtors as well.  Bench Decision at 15.

[14]    Id. at 15-16.

-10-

### C.    Muho Is Not An Appropriate Party To Control The Debtors

Additionally, Muho's argument that he should be the one to control the Debtors, investigate the activities of the Debtors and their former management, and pursue any requisite litigation is preposterous for several reasons.  First, Muho, as a former director of the Debtors, is himself subject to investigation for potential misconduct in directing the affairs of the Debtors. As this Court aptly held, "[i]t is wholly unrealistic to expect the Debtors' current management to appropriately investigate and prosecute potential breach of fiduciary duty actions and avoidance actions so long as current management, which will be the focus of much of the investigation, remains in place."[15]  Second, Muho, as described above in Section I.A, is subject to a judgment issued against him in the District Court Action because of his fraudulent transfer of over $2 million from one of the Debtors' accounts to himself, a transaction which this Court specifically listed as one of the reasons for appointing the Trustee.[16]  The notion that a party who has a judgment against him for stealing money from the Debtors should be able to remove a Court appointed chapter 11 trustee so he can get control over the Debtors and conduct an investigation into his own actions is contrary to all notions of justice and equity.

---

[15]    Id. at 16.

[16]    Id. at 15.

## **CONCLUSION**

Accordingly, the Trustee respectfully requests that the Court (i) deny the Motion in its

entirety, (ii) award costs and attorney's fees to the Trustee and (iii) grant such other related relief

as the Court deems proper.

Respectfully submitted,

Dated:   July 25, 2014
        New York, New York

 /s/ Veerle Roovers                              
Veerle Roovers
Stephen J. Pearson
Amy Edgy Ferber
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

*Attorneys for the Chapter 11 Trustee*

# EXHIBIT A

Gerti Muho
1100 Biscayne Blvd. 5303
Miami, Florida 33132
Phone: + 1 212 480 00 01
Facsimile: + 1 888 292 73 95
gm@gmcapital.net

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 2/28/14

SOUNDVIEW ELITE LTD., AND
VANQUISH LTD.,

                              Plaintiffs,

        -against-

GERTI MUHO, AND
LEVERAGED HAWK, INC.

                              Defendant.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

Civil Action No. 13 cv 06895 (AT)

*Emergency Motion to Dissolve TRO issued ex-parte October 22, 2013*

Emergency Motion to Dissolve Temporary Restraining Order and Motion to Dismiss for Insufficiency of Process—Unauthorized Issuance.

1.    Defendant Gerti Muho moves the Court to dismiss the action on the ground that the process in this action is insufficient in that the summons in this action was issued unlawfully by attorney Peter C. Harvey, an unauthorized person for both Plaintiffs.

2.    the Court is unable to provide Plaintiff relief where Plaintiff fails to allege this court has subject matter jurisdiction to provide Plaintiff relief.

3.      Defendant *Gerti Muho* moves the Court to dismiss this action and dissolve the ex-parte TRO issued October 22, 2013 on the ground that Plaintiff's fails to allege that Plaintiff is authorized to institute or maintain this action.

4.      Defendant Gerti Muho alleges that plaintiff Soundview Elite Ltd. and Plaintiff Vanquish Ltd. are are not themselves corporations organized in this or in any U.S. state, despite allegations by Plaintiff of Plaintiff being domiciled and having their principal place of business located in New York, at 48 Wall Street, 4th Floor, despite both Plaintiffs ever paying any filing or license fees to the Ste of New York, and both lack capacity to bring this suit under the law of the State of New York.

Respectfully submitted,

Gerti Muho
Pro-Se
1100 Biscayne Blvd. 5303
Miami, Florida 33132
Phone: + 1 212 480 00 01
Facsimile: + 1 888 292 73 95
gm@gmcapital.net

Defendant Gerti Muho states, pro-se, that:

# PRELIMINARY STATEMENT

Defendant Gerti Muho ("**GM**" "**Investment Adviser**" "**Adviser**") respectfully submits this memorandum of law and three supporting Affidavits Defendants incorporate herein: *Supporting Defendants Affidavit No. 01: Key Events Leading to Leveraged Hawk, Inc. Surviving the Richcourt Funds and the Richcourt Management Companies. Timeline Charts Included, Supporting Affidavit No. 02: The Founding of GM Capital Management, Inc.*: and *Supporting Affidavit No. 03: GM Threatened Away From New York and Sued Ex-Parte Under False Oaths*, all (i) in support of Defendants motion pursuant to Fed. R.Civ.P. 65(b) to dissolve ex-parte temporary restraining order entered October 22, 2013 and (ii) in support Defendants motion to dismiss this action on the grounds listed herein.

This lawsuit arises from a financial transaction GM Capital Management, Inc., an SEC registered investment advisory firm, and real party in interests for both named Plaintiff funds, undertook last August to close bank accounts Plaintiff's held in blatant violation of U.S. Securities and Tax laws; Defendant Investment Adviser representative has been personally charged together with Delaware fund Leveraged Hawk, Inc. ("**Leveraged**") stand charged of theft and unjust enrichment by disgruntled minority shareholder Fletcher Asset Management, Inc.

This case represent another vexatious lawsuit filed by Peter Harvey and Buddy Fletcher to (i) cut GM Capital's access to funds, (ii) to get a court order in a state they knew I had long left saying I'm a thief, (iii) to force me to come to New York for a bogus depositions information

on accounts only they can access—so as to force me to come to New York, in person, so their cop friends could charge me for state law crimes and rob me of my freedom too—teaching me a lesson, destroying the one who chose to serve his investors over the two, for all to see, and destroying the credibility of who they know is the government's strongest witness against them —I spoke to my FBI contact a week or two ago and he assured me neither Buddy nor Harvey had approached them about my 'theft', and that he would be altered if they would, and (iv) to swap any recovery they are assured of their tricks will get, since they've lead me to my near destitute state (Harvey laughed last week when I told him I had no electricity) out of Soundview Elite and my investors hands into Vanquish, a shell of a fund, they want to use to funnel recoveries into their own pockets. Vanquish has as much right to Soundview's funds and Peter Harvey and Buddy Fletcher do—none, and coincidentally GM Capital is that dead fund's legal party in interest too.

This complaint must be dismissed on numerous legal grounds; or so it appears to me, a non-attorney forced to file this motion pro-se (need and not choice). The facts muddy and confuse this case. And since they're largely irrelevant, I leave them for last.

## SUMMARY OF GROUNDS FOR DISMISSAL

The Complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(1) because there is no basis for this Court to exercise subject matter jurisdiction over this matter. Plaintiff alleges no federal cause of action and diversity jurisdiction simply cannot be met with Plaintiff and Defendant Leveraged Hawk, Inc. both domiciling in the State of New York. The Complaint is subject to dismissal for Defendant Adviser under Fed. R. Civ. P. 12(b)(2) because this court has no personal jurisdiction over Florida residents. The Complaint is subject to dismissal under Fed.

R. Civ. P. 12(b)(3) because there is no substantial connection between this venue and the dispute. Finally, the Complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) because it does not even come close to satisfying pleading standards and because the claims asserted suffer from defects which require their dismissal with prejudice.

In addition, Plaintiff lacks standing to assert this claim because the alleged injury was to Soundview Elite, a subsidiaries of subsidiaries of subsidiaries. The sole basis for plaintiffs to assert injury is that they hold equity in the Bermuda entity that held a minority stake in a Bahamas entity that holds all the equity of the British Virgin Island parent of four failed investment management entities that sold their control of Soundview Elite to Leveraged Hawk, Inc. months ago, unchallenged. Because the only purported injury may come to defendants from damages to the end-of-the-line control subsidiary, such a claim is not direct and may be asserted only as a derivative claim. But the entity in which plaintiffs owned an interest was not harmed by the alleged conversion at all and actually benefitted from Defendants use of the funds to sue former managers Citco Group, Ltd and Fletcher Asset Management, Inc. for more than $200 million in damages the unregistered managers sought to get away with. Plaintiff may possibly allege a multiple-derivative mismanagement claim, but had made no mismanagement allegations.

## THE COURT MUST DISMISS A CASE THAT IS NOT PROSECUTED IN THE NAME OF THE REAL PARTY IN INTEREST.

Alphonse Fletcher, Jr., Floyd Saunders, Patterson Belknap Webb & Tyler LLP, Fletcher Asset Management, Inc., Fletcher Asset Management, George Ladner, Peter C. Harvey, Jane Metcalf, Citibank N.A., and any other members of the group prosecuting this action—not one,

not all stand to represent Soundview Elite Ltd.'s and Vanquish's real interests. None of them prosecute this action in the name of the real parties in interest. GM Capital Management, Inc., unnamed in this action and the only SEC registered investment advisory firm of any of the persons I've listed—adviser of funds that include named Plaintiff and more  is the only party that can stand to represent the Plaintiffs as their real party in interest.

The first sentence of Rule 17(a) provides: "An action must be prosecuted in the name of the real party in interest," which has been interpreted to mean the party entitled to enforce the right under the controlling substantive law. The party enforcing the right is not necessarily the party who will benefit from any recovery. The party seeking to enforce the right must be the real party in interest not simply with respect to the original claim **but also with respect to counterclaims, crossclaims, injunctive relief, and intervening claims**.

Plaintiff appears to allege it acts pursuant to corporate secretaries, and law firm associates. It's claims as to authority are shifty. Fletcher Asset Management, Inc. does not list either Soundview elite Ltd. or Vanquish Fund Ltd. as a fund it controls.

Failure to list either fund on its Schedule D of its form ADV suggests Fletcher Asset Management, Inc. is not the funds legal representative in the United States, and while it chooses to file suit here for the Plaintiff funds, it provides no proof that is is the real party of interest with counter claims, crossclaims, intervening claims, etc.

EXPERT FROM FORM ADV REQUIRES PLAINTIFF TO APPOINT AN AGENT FOR SERVICE OF PROCESS FOR THE FUNDS. THERE IS ONE BUT ONE: GM CAPITAL MANAGEMENT, INC. AND DEFENDANT INVESTMENT ADVISER.

"By signing this Form ADV Execution Page, you, the undersigned adviser, irrevocably appoint the Secretary of State or other legally designated officer, of the state in which you maintain your *principal office and place of business* and any other state in which you are

submitting a *notice filing,* as your agents to receive service, and agree that such *persons* may accept service on your behalf, of any notice, subpoena, summons, *order* instituting *proceedings,* demand for arbitration, or other process or papers, and you further agree that such service may be made by registered or certified mail, in any federal or state action, administrative *proceeding* or arbitration brought against you in any place subject to the jurisdiction of the United States, if the action, *proceeding* or arbitration (a) arises out of any activity in connection with your investment advisory business that is subject to the jurisdiction of the United States, and (b) is *founded,* directly or indirectly, upon the provisions of: (i) the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Company Act of 1940, or the Investment Advisers Act of 1940, or any rule or regulation under any of these acts, or (ii) the laws of the state in which you maintain your *principal office and place of business* or of any state in which you are submitting a *notice filing.*

### Signature

I, the undersigned, sign this Form ADV on behalf of, and with the authority of, the investment adviser. The investment adviser and I both certify, under penalty of perjury under the laws of the United States of America, that the information and statements made in this ADV, including exhibits and any other information submitted, are true and correct, and that I am signing this Form ADV Execution Page as a free and voluntary act.

I certify that the adviser's books and records will be preserved and available for inspection as required by law. Finally, I authorize *any person* having *custody* or possession of these books and records to make them available to federal and state regulatory representatives."[1]

## THE COURT MUST DISMISS THIS CASE FOR THE PLAINTIFF IS NOT THE REAL PARTY OF INTERESTS.

Plaintiff does not have standing to represent the listed funds duly merged into Leveraged Hawk, Inc. and Plaintiff failed to timely attack by June 9, 2013—the last day Plaintiffs could have attacked the merger but did not. *See Damon Alarm Corp. v. American Dist. Tel. Co.*, S.D.N.Y. 1969, 304 F.Supp. 83. (Delaware corporation which was absorbed in New York corporation as

---

[1] FORM ADV

result of statutory merger went out of existence when merger became effective and action could not be maintained against it by service of process after effective date of merger).

# THE COURT MUST DISMISS THE CASE MUST DISMISS THIS CASE ON JURISDICTION GROUNDS.

## 1. THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER THIS MATTER AND MUST DISMISS THIS CASE.

### A. THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS CASE BECAUSE PLAINTIFF HAS NOT ALLEGED A FEDERAL CAUSE OF ACTION.

Federal district courts have subject matter jurisdiction over a case when "federal law creates the right of action and provides the rule of decision." Mims v. Arrow Financial Servs., LLC, slip op. at 8 (U.S. Jan. 18, 2012). A suit "arises under" federal law when the plaintiff's statement of the cause of action shows that it is based upon federal law. Vaden v. Discover Bank, 129 S. Ct. 1262, 173 L.Ed. 2d 206, 2009 U.S. LEXIS 1781 (2009). Plaintiff makes no such allegations.

Plaintiff fails to allege a right of action whose rule is provided by federal law. Plaintiff's complaint alleges conversion and unjust enrichment. Neither conversion nor unjust enrichment is a federal cause of action. Both alleged causes of actions are state law causes of action, and, as such, don't confer to this court federal question jurisdiction. Ippolito v. Lennon, 542 N.Y.S.2d 3, 6 (App. Div. 1989). See Trading Ltd. v. Wildenstein, 944 N.E.2d 1104, 1110 (N.Y. 2011) (second alteration in original) (quoting Citibank, N.A. v. Walker, 787 N.Y.S.2d 48, 50 (N.Y. App. Div.

2004), abrogated on other grounds by *Butler v. Catinella*, 868 N.Y.S.2d 101, 101 (N.Y. App. Div. 2008).

## B. THE COURT LACKS DIVERSITY JURISDICTION OVER THIS CASE.

### 1. Plaintiff Allege No Relevant Facts Why The Effective Certificate of Merger Filed with the Secretary of State of the State of Delaware Should Be Completely Ignored—Magically Set Aside.

The court lacks diversity jurisdiction over this case. Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants. See *Casas Office Machines v. Mita Copystar America, Inc.*, 42 F.3d 668, 673 (1st Cir.1994). Defendants challenge Plaintiff's jurisdictional allegations. Specifically, Defendants challenge allegations by Plaintiff that Soundview Elite Ltd. continues as a going concern—i.e., that the unchallenged Certificate of Merger duly filed with the Secretary of State of the State of Delaware merging Plaintiff funds into Leveraged Hawk, Inc. is invalid. That despite Fletcher Asset Management Inc. and Plaintiff's (assuming for a moment the two are not one and the same) both of which's knowing failure to challenge the Effective Certificate of Merger legally makes Leveraged Hawk, Inc. the legal surviver of Plaintff funds and more can be ignored. That a reason exists to set aside the certificate despite the certificate's being filed in compliance with all competent laws and un-challengeable by any one entity—man, woman, child, or Buddy Fletcher, a minute after June 9, 2013. Assuming Plaintiff can allege why U.S. federal and state laws should be turned upside down, the certificate of merger can be ignored and that the Certificate of Meger for a reason should not here be conclusive on the issue of whether Soundview Elite continues as a going

concern in the United States. It doesn't. It's survived by Leveraged Hawk, Inc. No shareholder, not even Buddy Fletcher can rewrite lost rights—ex attorney general or not.

### 2. Even If the Certificate of Merger is Magically Set Aside to Handicap the Stronger Legal Team (pro-se), Plaintiff Has Not Alleged Diversity.

Assuming millions in legal fees can put together one reason why the unchallenged certificate of merger should be ignored. Assuming Plaintiff can succumb the first unsuccumbable task and prove Soundview Elite continues as a going concern—or not assuming but just destroying Plaintiff's comeback to the merger even without the certificate of merger. As if the legally filed document just never existed.

No certificate, arguendo. Hate giving it away. Plaintiff fails to allege diversity jurisdiction; still no Federal jurisdiction—still the Court must dismiss. Defendants challenge Plaintiff's allegations that Soundview Elite is not domiciled in New York.

Plaintiff itself alleges, openly in the complaint that Soundview Elite is located on Wall Street.[2] It's address is 48 Wall Street, Fourth Floor, New York, NY 10005. It's only address is on Wall Street. It's only address if Fletcher Asset Management's address, and technically has not been Plaintiff since Leveraged bought control of Plaintiff, assets, liabilities and all April 29, 2013. Defendant wholly agrees that before merging with Leveraged Hawk, Inc. in April Plaintiff's center of all interests were New York.

Plaintiff alleges the same in its complaint. Plaintiff doesn't allege it is not domiciled in New York—I assume it lets the court assume an exotic name cannot be domiciled in N.Y. For purposes of diversity jurisdiction, citizenship is based on domicile—not exotic names. *Linardos*

---

[2] These allegations by Plaintiff of New York domicile contradict earlier allegations Fletcher Asset Management made in Wilmington's Delaware.

*v. Fortuna*, 157 F.3d 945, 947 (2d Cir.1998); *Newman--Green*, 490 U.S. at 828. "Domicile is the place where a person has his true and fixed home and principal establishment, and to which, whenever he is absent he has the intention of returning." *Linardos*, 157 F.3d at 948. A P.O. Box in Cayman cannot be a person's principal establishment. Plaintiff fails to allege it even alleged leases a P.O. Box in Cayman or elsewhere.

Plaintiff must allege the entities legal existence with proof required by law, Plaintiff bears the burden of proving, by a preponderance of the evidence, the facts supporting jurisdiction. *Bank One v. Montle*, 964 F.2d 48, 50 (1st Cir.1992); *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 98 (1st Cir.1982); *Garcia–Perez*, 208 F.Supp.2d 200; *Palermo v. Abrams*, 62 F.Supp.2d 408, 410 (D.P.R.1999) Casellas, J. ( [t]he party invoking subject matter jurisdiction must support its allegation of jurisdiction by "**competent proof**") (emphasis added).

Federal courts "are not at liberty to overlook limitations on their subject matter," *Francis v. Goodman*, 81 F.3d 5, 8 (1st Cir.1996), but rather are required to strictly construe those statutes which grant their jurisdiction, *Garcia–Perez v. Santaella* 208 F.Supp.2d 200, 203 (D.P.R.2002). *See also Alicea–Rivera v. SIMED*, 12 F.Supp.2d 243, 245 (D.P.R.1998). In cases in where diversity of citizenship is the sole basis for invoking subject matter jurisdiction, without a preponderance of the evidence establishing diversity, the district court would lack judicial power to adjudicate the controversy. *Francis, 81 F.3d at 6.*

Plaintiff provides  no proof—let alone competent proof to establish legal existence and the Court must dismiss this case.

**3.      Plaintiff dooms diversity jurisdiction with allegation of its New York domicile, conclusively and the Court must dismiss the case.**

Leveraged Hawk, Inc. survives Plaintiff by operation under U.S. law for all purposes. If once more one is force to just ignores that fact, for the mental exercise again for just a moment again, Plaintiff has forever dooms diversity jurisdiction by alleging its New York domicile in its complaint—conclusively so, and the Court must dismiss the case.

Even if Plaintiff can show Plaintiff has interests outside New York and outside the U.S. that allow Plaintiff to conjure up the appearance of having a foreign domicile, maybe a boat—the Court cannot ignore Plaintiff's New York domicile allegations. Plaintiff will then have two domiciles. And where dual domiciles exists, only the American domicile determines diversity.

The law on persons with multiple citizens is hardly esoteric: "In matters of diversity jurisdiction American citizenship will determine diversity...only the American nationality of the dual citizen should be recognized under *28 U.S.C. § 1332(a)*." *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 504 (2d Cir. 1991); see also *Lemos*, 5 F. Supp. 2d at 165 ("[T]here is an emerging consensus among courts that, for a dual national citizen, only the American citizenship is relevant for purposes of diversity jurisdiction under 28 U.S.C. § 1332.") (internal quotation marks and citations omitted); *Fuerst*, 832 F. Supp. 2d at 217 (same).

Thus, when a party is a dual citizen domiciled abroad, as is the case here, courts can never have diversity jurisdiction. This is so because (i) the party is a citizen of no state and thus there is no jurisdiction pursuant to § 1332(a)(1) and (ii) the foreign citizenship of the party is not recognized and thus there is no diversity pursuant to § 1332(a)(2). *See Fuerst*, 832 F. Supp. 2d at 217 ("[D]iversity jurisdiction may be properly invoked only when a dual citizen's domicile, and thus his citizenship, is in a [U.S.] state diverse from that of adverse parties.") (internal quotation

marks and citations omitted); *Lemos*, 5 F. Supp. 2d at 165 (holding that because the plaintiff, who was a dual citizen of Greece and the United States, was not domiciled in the United States "she [was] a citizen of no state for the purposes of diversity jurisdiction"); *Lehman Gov't Secs*, 1996 WL 447995, at *2 (concerning a party who was a dual citizen of the United States and Israel and domiciled in Israel: "Since diversity jurisdiction is to be determined on the basis of [a dual citizen's] American citizenship, but he is not a citizen of a state, he cannot sue a citizen of state in the absence of federal question jurisdiction."). *Lehman Gov't Secs*, 1996 WL 447995, at *2 (concerning a party who was a dual citizen of the United States and Israel and domiciled in Israel: "Since diversity jurisdiction is to be determined on the basis of [a dual citizen's] American citizenship, but he is not a citizen of a state, he cannot sue a citizen of state in the absence of federal question jurisdiction.").

It is a prerequisite of state citizenship (a stated requirement of the statute) that a person be a citizen of the United States. See Scott v. Sandford, 60 U.S. (19 How.) 393,405 (1857). 86. See Del., Lackawanna & W. R.R. v. Petrowsky, 250 F. 554 (2d Cir. 1918). See Hammerstein v. Lyme, 200 F. 165 (W.D. Mo. 1912); Sadat v. Mertes, 615 F. Supp. 1176 (7th Cir. 1980) (and cases cited). 28 U.S.C. § 1332(a). The Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, tit. II, § 201(a), 125 Stat. 762 (Dec. 7, 2011), states that "the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and who are domiciled in the same State."

And the Jurisdiction and Venue Clarification Act of 2011 precludes jurisdiction if the foreign citizens or subjects are lawfully domiciled in the same state as the U.S. plaintiff. See Pub.

L. No. 112-63, tit. II, § 201(a), 125 Stat. 762 (Dec. 7, 2011} (amendment to 28 U.S.C. § 1332(a)).

### 4. Defendants Fault To Properly Allege Diversity In Proper Form And The Court Must Dismiss This Case.

Diversity Cannot be Alleged on Information and Belief. It is well-established that diversity of citizenship "should be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record." *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996) (internal citation omitted); *Ganoe v. Lummis*, 662 F.Supp. 718, 723 (S.D.N.Y 1987) ("The party seeking to invoke federal jurisdiction on the basis of diversity must affirmatively allege the existence both of diversity of citizenship and the requisite amount in controversy."); *R.G. Barry* 612 F.2d at 655 ("the burden falls squarely upon the removing party to establish its right to a federal forum by competent proof.").

Indeed, courts hold that allegations of federal subject matter jurisdiction may not be made on the basis of information and belief; rather, they must be made on personal knowledge. *Am.'s Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir.1992) (only affidavits made on personal knowledge, and not claims made " 'to the best of my knowledge and belief,' " are sufficient to establish citizenship for jurisdictional purposes); *See Virtual Worlds, LLC v. Seaboard Int'l Energy Corp.*, No. CV 10-4432 PA (JCGx), 2010 WL 2553468, at *2 (C.D. Cal. June 18, 2010) ("Because Removing Defendant has alleged Plaintiff's citizenship on 'information and belief,' the Notice of Removal's allegations are insufficient to establish Plaintiff's citizenship."); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)

("Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties."); Vail v. Doe, 39 F. Supp. 2d 477, 477 (D.N.J. 1999) (stating citizenship allegation that is upon information and belief "does not convince the Court that there is diversity among the parties"); *Lewis v. Consol. Freightways Corp.*, No. 04-6102, 2005 WL 503317, at *1 (E.D.Pa. 2005) (stating citizenship allegation that is upon information and belief is insufficient).

**Plaintiff's cannot conjure up new facts so as to allege a basis for diversity jurisdiction if he did not on the face of the complaint, and the Court is required to dismiss this case.**

Plaintiff fails to allege diversity jurisdiction. Plaintiff's failure to allege jurisdiction is fatal to this Court's jurisdiction. Plaintiff is required to have alleged justification on the face of the complaint; the face of the complaint must be sufficient to show federal subject matter jurisdiction (that is, the answer or special defenses are not sufficient to afford subject matter jurisdiction). *See Am. Natl Red Cross v. S.G.*, 505 U.S. 247 (1992) See also Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546 (2005); Holmes Grp., Inc. v. Vornado Air Circulation Sys., 535 U.S. 826 (2002); Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355 (2002); Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aero. & Agric. Implement Workers of Am., 523 U.S. 653. Grupo Dataflux v. Atlas Global Grp., LP., 541 U.S. 567 (2004) (affirming the longstanding rule that subject matter jurisdiction in diversity cases depends on the state of facts that existed at the time of filing, where a party's post-filing change in citizenship did not cure the lack of subject matter jurisdiction). But, as the Court notes in Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826 (1989}.

5. Leveraged Hawk, Inc. is a Delaware C-corporation headquarted and registered with the Secretary of State of New York to operate in the State of New York. See also Form D filed with the Securities and Exchange Commission stating the active fund is based in New York.[3]

6. GM Capital Management, Inc. a New York based investment advisory firm register with the U.S. Securities & Exchange Commission—the only registered investment adviser actually even if we include non-party Fletcher Asset Management, Inc. See GM Capital Management, Inc.'s FORM-ADV, linked below and accompanying affidavits.[4]

7. Plaintiff falsely alleges I reside in New York. Claims in complete disregard of truth and justice to have even served me in person in New York—causing me so, so much harm and pain, personal and professional with this order. I do not. If I did as Plaintiff alleges diversity jurisdiction fails because ever single party is New York based.

8. Plaintiff falsely alleges I reside in New York. I do not. See affidavits. Adding a defendant the Court has no personal jurisdiction over fails to create diversity jurisdiction all other parties are domiciled in New York and the Court Must Dismiss this Case.

C.  PLAINTIFF DEFRAUDED THIS COURT BY ALLEGING, BASELESSLY AND SO, SO RECKLESSNESS THAT THIS COURT HAD PERSONAL JURISDICTION OVER ME AND THAT MY USUAL PLACE OF "ABODE" IS MY GRANDMOTHER'S ADDRESS; THIS COURT HAS NO PERSONAL JURISDICTION OVER ME, PERSONALLY, AND MUST DISMISS THIS CASE—AND IMMEDIATELY PLEASE DISSOLVE THE MONTHS OLD, EX-PARTE TRO THAT HAS LEFT ME WITHOUT LIGHTS ETC. SEE ACCOMPANYING AFFIDAVITS.

1.  Insufficient Process FRCP 12(b)(4) and Insufficient Service of Process, FRCP 12(b)(5) require this Court to dismiss this case with prejudice.

---

[3] http://www.sec.gov/Archives/edgar/data/1578347/000157834713000001/xslFormDX01/primary_doc.xml

[4] http://www.adviserinfo.sec.gov/iapd/content/viewform/adv/sections/iapd_AdvIdentifyingInfoSection.aspx?ORG_PK=168066&RGLTR_PK=50000&STATE_CD=&FLNG_PK=000F29A40008016B0572F5600468FFA9056C8CC0

Plaintiff claims to have served me at my grandmother's house, assuming Plaintiff tried to serve me at me at all. I wasn't in New York at the time. I wasn't served. I don't know if my grandmother was served. She doesn't read well and she doesn't purport to be my representative. She also doesn't speak one word of English. It is maddening that I go hungry at times and have been left penniless for months by my misguided adversaries ill-willed goals. Goals that try to make me personally bound to judgments I had no part of and do not bind me. See Taylor v. Sturgell, 553 U.S. 880 (2008), in which the Court applies the traditional rule that no person is "bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a part}' by service of process." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). A claim that the recipient of service was not authorized to receive it may be raised by a motion to dismiss. *Santos v. State Farm Fire & Casualty Co.*, 902 F.2d 1092, 1095 (2d Cir. 1990). I never authorized another person to accept service for me personally, and the Court must dismiss this suit for failure of service of process.

I noticed among my private bank documents and my driving records Peter Harvey seems to provide to this Court on a weekly basis, that certain e-mails have popped up that insinuate to this Court service of process appears to have been provided to me via e-mail by my ill-hearted adversaries. Since slamming my reputation with private bank documents, e-mails, investments, and, well, whatever irrelevant information Buddy and Peter conjure up to attack my character, it would have been fantastic if the two had also provided the court that certain e-mail I have included as part of Affidavit 4, Exh 24, that the two never answered. Maybe the ex-parte TRO they forced this Court to issue with their lies was to be my answer.

E-mails post-dating the issuance of the ex-parte TRO's that insinuate notice are wholly irrelevant to whether I was made a part of the process that forced me bound without any service of process, as required under the law. Now I thank Mr. Harvey for sending me around Christmas time some documents about this case. He should have also included in that e-mail the affidavits Floyd Saunders and Jane Metcalfe swore on this court. I looked thoroughly for those affidavits and could not find them in the document bunch Harvey sent me for Christmas. I didn't care much after all about some driving case I refused to settle a year ago for even 300$$ as I recall. And one would think affidavits used to destroy one's business ex-parte; affidavits by Floyd Saunders and a complete stranger that go even further than the lies Floyd Saunders told the Wilmington Court should have been sent to me. I think they should be part of the Christmas e-mail process. They weren't, and the e-mails were no process. It's not that they post date the TRO by months. It's not that e-mail can't provide process, either. If I had had just one of the ten law firms I beat before the current one appeared, I wouldn't mind the law firm working via e-mail to expedite all process. But I don't have that law firm. I don't have a way to know what needs to satisfy process. I'm not a lawyer and know nothing of litigation. And there's a kick to that: I'm not a lawyer, and I don't have a lawyer. I don't have a lawyer and I'm not a lawyer because while skipping to Court to sue Wilmington Trust June 17, 2013, I received an e-mail that looked like process, wasn't process, I was told was process, that caused me to take as process, and led to me not to sue for my funds as I should and could but caused me to turn home, cry, and continue my nightmare. If I was spending millions GM Capital is the only party legally responsible for, I would have herds of lawyers and maybe I wouldn't complain about even e-mails shown this Court that insinuate, but don't provide process. Sorry. See Armco, Inc. v. Penrod-Stauffer Bldg.

Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984) (where the defendant did not acknowledge service by mail, "there was no valid service of process, the district court was without jurisdiction of the defendant, and the default judgment was void").

**Plaintiff's Unjust Enrichment Claims Should t0o be Dismissed with Prejudice.**

Plaintiff offers nothing to show that defendants' defendants' receipt of the funds and expenditures, and payments made to the fund's sole registered investment adviser and benefits received constitute unjust enrichment. Defendant further has established in the affidavits that Plaintiff is already in receipt of consideration that far exceeds payments made by Plaintiff to Leveraged Hawk, Inc, if one can even call the transfers to the entity purchasing control of Plaintiff payment. Transfers that domesticated funds and brought Plaintiff steps closer to complete legal compliance, and the end of Plaintiff's continual exposure to criminal liability. Even if consideration turns out to have been less than fair, Defendant in his affidavits establishes enrichments if any were anything but unfair. Allegations the Plaintiff's themselves do not appear to dispute, and have not alleged in any instance.

Plaintiff's Conversion Claim is Estopped for Failure to Timely Prosecute on a timely manner despite Plaintiff failing on numerous times to allege the same in order to avoid bringing Plaintiff in suits created for the purpose of attacking and weakening Plaintiff to attack 5 months later in this case.

SUMMARY OF FACTS RELATED TO PLAINTIFF'S CONVERSION CLAIM.

This case began last year. In April of last year, I exercised the fiduciary authority I owed shareholders and stakeholders of Richcourt Holding, Inc., of four holding companies, and of sixteen or so hedge funds and accepted on behalf of Richcourt Holding, Inc. one thousand Class

A common shares of co-defendant Leveraged Hawk, Inc. ("Leveraged"). The Class A shares represented all issued and outstanding Class A shares of Leveraged, and made Richcourt Holding, Inc. the owner of ten percent of Leveraged's vote and seventy-five percent of its earnings.

Before the sale Richcourt Holding, Inc. was millions underwater but held one hundred percent of the vote. In a myriad of other transactions, I gave investors and beneficial owners of the funds $115 million in assets ninety percent of the vote. They had had none. I then gave the funds their first ever, aligned-in-interests, and SEC Registered Investment Advisory firm, in the funds two decades, or GM Capital Management, Inc. I then merged away twenty one or so entities, the four holding companies and the sixteen or so funds companies, all into surviving Leveraged. All right. All in good faith. And benefitting all involved.

I quickly assured Alphonse Fletcher Jr. ("Buddy") I would still welcome his advice. Buddy controls Fletcher Asset Management, Inc. ("FAM"). FAM was once SEC registered but for two years has been just off. FAM is a non-controlling shareholders of Richcourt Holding, Inc.'s parent entity. And I even offered to support his proxy Deborah for a seat on Leveraged's Board.

I honestly hoped Buddy would have accepted my offer. The man's a rare genius. Unfortunately my attempt at appeasement failed. Buddy and his proxy Deborah flat out refused, unfortunately. FAM, Citco, Deborah, and a whole host of phantom "managers" wanted to direct the funds assets what appears were just catastrophic returns for the funds investors. To FAM, Citco and other manager's gains, though.

*Page 20 of 29*

But FAM & Co. appeared in May to be succumbing to a bitter understand of its new non-managing shareholder place. For years FAM claimed to the SEC and others it had no control over the funds management. And now it really didn't. I asked FAM and it's law firms to return my investors funds—millions I had sent them between January and April from Leveraged—most paid to the very law firms Buddy had so selfishly then advised.

The law firms didn't return my investors funds, but it appeared they had started, like dominoes, to recuse themselves from almost a dozen in April, to what appeared a month to be but a very few—Weill Gotshall, Walkers, Ritch & Connolly, and the lawyer that came to replace Cohen & Gresser. Peter C. Harvey and Patterson and the whole bunch of law firms that popped up months later had never been affiliated with the merged funds. Peter Harvey was a loyal Fletcher fund lawyer after all, and Fletcher and his funds paid Patterson a flat fixed monthly fee each month.

I provided FAM, Deborah, and the world with the all the documents that established my authority over the funds. I registered and listed the all the funds on GM Capital Management Inc.'s SEC registration that is made publicly available to all on the SEC's website. The very same documents that the law abiding HSBC Private Bank in Monaco and Switzerland had their lawyers review for a month before the August transfer that led to this case in September-October. I openly claimed legal entitlement to the management of every penny of the funds $120 million in April. I informed Wilmington Trust April 30 to immediately inform the authorities should FAM, or Floyd or anyone other than myself attempt to move. I allowed that bank the time to be thorough in May, worked with the government, and in all enjoyed the sense of security that FAM had accepted its fate. That FAM—with millions in its coffers and with every premier law firm at

its disposal, never shy in court, clearly must have bitterly accepted. FAM could have easily

challenged my authority and dominion at any moment—and did not. Clearly I should have no

fear to meet my investors need for a legal representative they could at anytime sue and hold

responsible, should they see the need for.

For at least five years before I sent my investors a letter in January 2013, my investors

had never had a piece of writing from either FAM or Citco—or anyone. No one in years it

appears claimed any responsibility to my investors over their funds. Noone had ever had control.

I claimed control. I made it public. I did it understanding that I would be held responsible

for every penny that every one fund held from that day on. $120 million I alone accepted

responsibility for. FAM appeared to have accepted defeat. I heard FAM proxy Deborah had

claimed the agreement I had signed on behalf of the parties involved in the merger looked funny

and not legitimate, but a challenge to my agreements was the last thing I worried for.

FAM had lost the ability to access all funds since April. Had every ability to, but filed no

suit. Led me to believe that it accepted my dominion over the assets. That it would, if needed sue

me as a shareholders, and that I needed not fear vexatious suits. That it would not, many many

months later claim I was a thief. That since it could have challenged my legal rights in April and

May, and did not. That I had not quivered as I had claimed ownership of all the funds, and told it

it did not.

But FAM's acceptance for months of my authority in silence turned out to be bitterly

false. FAM lured me to then at the end of May destroy my last enemy and FAM's last stand:

proxy Deborah H. Midanek. Deborah I heard whispers was leading the challenge to my

authority, claiming I had never removed her as director. Again, why whisper you unjust evil

FAM lady. So I sat down at the end of May and gave Deborah 3 reasons why she was never

appointed a director:

> (i) that she had failed to consent prior to my consent March 12th and Buddy's consent
>
> March 22nd or so, as required by offshore law,
>
> (ii) that while the pertinent jurisdictions recognize both de-jure and de-facto directors on
>
> companies boards, they did not recognize de-facto director claims by non-individuals,
>
> but by corporations serving as directors—as Deborah had required she serve, and
>
> (iii) that while it is true that there existed resolutions signed by me and Buddy—that
>
> consent to Deborah's company joining the funds boards (the funds directors had no real
>
> control but she was a being a pest), if she noticed I had consented that Deborah's

company join as director on the 12th and Buddy on the 22nd. And reminded here that

having had a boards two directors both having consent to her company's joining of the

funds board, did not mean the Board of Directors ever consent to her company joining

those Boards, as required for before one can be appointed a director of a board. This

meant should I have informed her that my consent had been withdrawn at a time or

another between the 12th and the 22nd, she would have had each director at a time

consent but never both at the same time and never the board.

I gave FAM proxy Deborah that May 29th three equally sufficient reasons to stop her

whispering.

And with my only whisperer out of the way I marched on Wilmington Trust and to

success for having saved the funds, Leveraged, and my investors unopposed even if I stood alone

without counsel. I held best title to the $120 million. FAM deprived of all access to every penny.

It stood by with a dozen law firms and millions of dollars. Never filed a suit. Never claimed me a drunk. Never a thief. For months doing nothing after my open seize that robbed them of the control they had no right to keep.

But it sues in September. Ex-parte without service or notice. And it points not to the months it had stood by while I held title to 60x what it now claims made me a thief, but to an in-personam interpleader case in civil court in Wilmington Delaware where every piece of dirt and lie had been thrown at me.

FAM Proxy Deborah, FAM, and Wilmington Trust file thousand of pages attacking and mocking me. The old law firms are gone. New names, and as I read their endless filings new stories appear. I steal supplies, I am an employee, a drunk, fired by a Secretary, and that grandest of them all: that FAM proxy Deborah alleges she was now appointed months later, April 10th. And her appointment is made by fancy shiny resolutions with fancy words no fund had ever used before. And boy do they attack me. But they don't name me, and without a lawyer I can't fight back.

Soon dozens of law suits pop-up worldwide: Citco, FAM, and a whole host of new characters, each repeating each others lies against me.

These grown man's thrill of having robbed this kid—me, by legal might, if not legal right is exhibited by a letter Peter Harvey rushes to write the attorney he has learned has agreed to represent me.

Claiming I have stolen money under exotic sounding statutes out of none other than HSBC, Peter tells the attorney that he will make sure every one that touches a penny, even one penny will be without a doubt giving it all back. That I had no money. And that I had said so

myself when I had tried to represent myself in Wilmington a few weeks ago. That the Judge had shown me and told me that I wan't a party and that if I had no money, too bad. That I stole to pay for legal representation and that that is the only explanation of how I could be able to afford to pay a firm of such a stature that my attorney happened to be. Mr. Harvey has no idea how much I'm paying the guy, but Mr. Harvey can't afford me fighting back. Horrible. And Mr. Harvey in that suit  filed for Summary Judgement attacking me entirely, the one party not named as a source of vexation in the interpleader.

Then after legal maneuvering that is too fantastic to believe, two months after having first been called ex-parte a thief and five months after I openly informed them all I was the only one who could access all funds, not a thief but the investors only legal representative. For the first three months they watched me threaten them away from my investors money, then the next two months they joined and sued Leveraged while picking every character flow they could plausible allege and throw it at me. And a month later, after they had filed suits across enough jurisdiction and had enough court documents with flows about me, they file this case against me. Ex-parte, and push their claims a bit further against me and request I go to weird places, and spend as many days as necessary for depositions they don't need, so they can put enough together to stick the label of prisoner on me. They file in federal court but go to the NYPD. They claim they will be heeding to federal police soon also. They have not as of mid January. Why?

Because Plaintiff waited five months to charge Defendant with conversion after staying completely quiet the first three months despite Defendant claiming best title to $120 million in assets, and attacks Plaintiff the next two months in court proceedings that deliberately leave

Plaintiff out, Plaintiff is estopped by Prosecution Laches from claiming in this action Defendnat commits laches.

I will end the focus on irrelevant facts by adding the following to address all my phantom crimes:

(i)     I spend $2 million to recover $200 million for my investors, thousand maybe misspent I myself I would say in frustration-- frustration law firm after law firm caused me by their inexplicable turning down of millions I offered them to represent me, the funds including Soundivew Elite, and the true investors and their best interests,

(ii)    I wasted precious time I should have used to file a certain suit in May against a certain Delaware bank, by helping three federal agencies understand as much as possible of the 300 plus gigabytes of new information FAM, Citco, and JP Morgan intentionally hid from them for amore than a decade; information that the government could have used to recover billions from the aforementioned three, and more, much more, from other reputable names in international finance. Oh, and I offered them my time, and the information, not for the 15-33% receovery reward the agencies involved generally offer for this type of information. Nope, I knowingly forewent asking for bounties from the agencies that Congress thinks are needed to offer those weak snitches who must have no qualms about being paid to follow the law and without doing any work at all—and paid best of all with offers of 15%-33% of the monies recovered. I didn't even asked for the written guarantees against prosecution that are common in this type of work. This guarantee, of course, would have been of little value to me for I honestly thought and think I have never done justice the slightest wrong.  I offered my time, and my information for free

when I should have filed a suit for my rights. A suit that maybe would have prevented the harm I've since suffered.

## THE COURT MUST DISSOLVE THE EX-PARTE TRO ORDER PLAINTIFF DEFRAUDED THIS COURT TO ISSUE OCTOBER 22, 2013.

### A. STANDARD OF REVIEW

The standard for granting preliminary injunctive relief (as well as with regard to the issuance of a TRO) in the Second Circuit is well established. Plaintiff seeking such relief must show:

(a) irreparable harm and either:

(1) likelihood of success on the merits; or

(2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

(emphasis added)

Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979).

The standard discussed above is heightened in a situation in which the injunction will alter the status quo. In a case in which the Plaintiff seeks to alter the status quo, the Second

Circuit has stated that the Plaintiff must make a "clear" or "substantial" showing of a likelihood of success and a strong showing irreparable harm. Malkentzos v. De Buono, 923 F.SUPP. 505, 512 (S.D.N.Y. 1996). Defendants assert this heightened standard is applicable in this case.

## A. PLAINTIFF HAS NOT SHOWN IRREPARABLE HARM.

One of the cornerstones of a Plaintiffs request for a TRO centers upon Plaintiffs proving that the failure to receive injunctive relief will irreparably harm the Plaintiff. In this case, the Plaintiffs factual admissions coupled with the Defendants' submissions to this Court demonstrate that Plaintiff has not and cannot make this showing.

## CONCLUSION

Defendants assert that the issue for the Court at this point is whether the Court should continue its Order granting Plaintiff its Temporary Restraining Order, or whether the Court should dissolve the Order. Defendants assert the Court's review in consideration at this point, must take into account the fact that its initial Order is one that requires mandatory action changing the status quo. As such, the Plaintiff must make a clear of substantial showing of a likelihood of success and a strong showing of irreparable harm. Plaintiff has not met its burden in this case, and, therefore, Defendants request the Court grant the Relief requested in Defendants' Motion to Dissolve/Alternative Motion for Modification from Relief.

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOUNDVIEW ELITE LTD. and VANQUISH FUND
LTD.,

                              Plaintiffs,

              -against-

GERTI MUHO and LEVERAGED HAWK, INC.,

                              Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/28/14

13 Civ. 6895 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Defendant's "emergency motion to dissolve TRO issued ex-parte on October 22, 2013" is DENIED. "[F]ederal courts have inherent power to strike frivolous motions." *Mathis v. Martin*, No. 13 Civ. 02597, 2013 WL 5609134, at *3 (D. Md. Oct. 11, 2013) (citations omitted).

The Clerk of Court is directed to mail a copy of this order to *Pro Se* Defendant.

SO ORDERED.

Dated: February 28, 2014
       New York, New York

                                        _____
                                        ANALISA TORRES
                                        United States District Judge

# EXHIBIT C

Peter C. Harvey
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Phone: (212) 336.2810
Facsimile: (212) 226.2222
Email: pcharvey@pbwt.com

*Attorneys for Plaintiffs Soundview Elite LTD.,
and Vanquish Fund Ltd.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/9/14

- - - - - - - - - - - - - - - - - - - - - - - - - x :  **UNITED STATES DISTRICT COURT**
:  **SOUTHERN DISTRICT OF NEW YORK**
:
:
:
SOUNDVIEW ELITE LTD., and                          :
VANQUISH FUND LTD.,                                :
:
                                  Plaintiffs,       :   Civil Action No. 13 cv 06895 (AT)
:
            -against-                               :          **DEFAULT JUDGMENT**
:
GERTI MUHO and LEVERAGED                           :
HAWK, INC.                                          :
:
                                  Defendants.       :
- - - - - - - - - - - - - - - - - - - - - - - - - x

**THIS ACTION HAVING BEEN COMMENCED** on September 27, 2013 by

the filing of the Summons and Complaint; and a copy of the Summons and Complaint having

been personally served on the Defendant Leveraged Hawk, Inc., on October 1, 2013, by

personally delivering a copy of the Summons and Complaint to Registered Agent Solutions, Inc.,

an authorized agent, and on the Defendant Gerti Muho, on October 2, 2013, by personally

delivering a copy of the Summons and Complaint to a person of suitable age and discretion

residing in the Defendant Gerti Muho's usual place of abode; and proof of service upon both

Defendants having been filed on October 2, 2013; and the Defendants not having answered the Complaint; and the time for answering the Complaint having expired, it is

**ORDERED, ADJUDGED and DECREED** that:

Plaintiffs have judgment against Defendants Gerti Muho and Leveraged Hawk, Inc., jointly and severally, in the liquidated amount $2,067,377.24, with interest at 9%, from August 8, 2013 up to and including  April 4    2014,  amounting to $121,832.81 plus costs of this action in the amount of  $4,975.84, as well as punitive damages in the amount of $    0    amounting in all to $ 2,194,185.89 .

**IT IS SO ORDERED.**

Dated:  April 4, 2014
        New York, New York

_____
ANALISA TORRES
United States District Judge

2

6627451v.1

# EXHIBIT D

EFiled: Jan 17 2014 01:34PM EST
Transaction ID 54864967
Case No. N13C-06-156 JTV CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, | )<br>)<br>) |
| | C.A. No.  N13C-06-156 JTV CCLD |
| Plaintiff, | )<br>)<br>) |
| SOUNDVIEW ELITE LTD., PREMIUM DESIGNATED, SOUNDVIEW STAR LTD., PITAGORA FUND LTD., AMERICA ALTERNATIVE INVEST-MENTS, INC., ELITE DESIGNATED, RICHCOURT EURO STRATEGIES, INC., STAR DESGINATED, RICHCOURT COMPOSTIE INC, SOUNDVIEW PREMIUM LTD., RICHCOURT ALL-WEATHER B INC., SOUNDVIEW COMPOSITE LTD., RICHCOURT ALL-WEATHER FUND INC., NEW WAVE FUND SPC, OPTIMA ABSOLUTE RETURN FUND LTD., and LEVERAGED HAWK, INC., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | |

## ORDER

This 17th day of January, 2014,

IT APPEARING that on August 28, 2013, the Court granted plaintiff's motion for interpleader as to the funds of the following 15 defendants: Soundview Elite Ltd., Premium Designated, Soundview Star Ltd., Pitagora Fund Ltd., America Alternative Investments, Inc., Elite Designated, Richcourt Euro Strategies Inc., Star Designated, Richcourt Composite Inc., Soundview Premium Ltd., Richcourt Allweather B Inc.,

*Wilmington Trust v. Soundview, et al.*
C.A. No.  N13C-06-156 JTV
January 17, 2014

Soundview Composite Ltd., Richcourt Allweather Fund Inc., New Wave SPC, and

Optimate Absolute Return Fund Ltd.; and

     IT FURTHER APPEARING that on September 24, 2013, the following six

defendants filed petitions in bankrupcty: Soundview Elite Ltd., Premium Designated,

Soundview Star Ltd., Elite Designated, Star Designated, and Soundview Premium

Ltd. ("the bankruptcy defendants"); and

     IT FURTHER APPEARING that a control dispute exists as to the following

funds: America Alternative Investments, Inc., Richcourt Euro Strategies Inc.,

Richcourt Composite Inc., Richcourt Allweather B Inc., Richcourt Allweather Fund

Inc. and Optimate Absolute Return Fund Ltd.; and

     IT FURTHER APPEARING that New Wave SPC is in winding-up

proceedings; and

     IT FURTHER APPEARING from the unrebutted affidavits filed by defendants

Pitagora Fund Ltd. and Soundview Composite Ltd. in support of their motions for

summary judgment that Mr. Muho resigned from positions with any of the above-

named 15 fund defendants on or about April 3, 2013, and from that date ceased to

have any management or control relationship in any of said funds, and that defendant

Leveraged Hawk Inc. has no management or control relationship in any of the said

funds;

     NOW, THEREFORE, IT IS ORDERED that the action against Pitagora Fund

Ltd., America Alternative Investments, Inc., Richcourt Euro Strategires Inc.,

Richcourt Composite Inc., Richcourt Allweather B Inc., Soundview Composite Ltd.,

Richcourt Allweather Fund Inc., New Wave SPC, and Optimate Absolute Return

2

*Wilmington Trust v. Soundview, et al.*
C.A. No.  N13C-06-156 JTV
January 17, 2014

Fund Ltd is severed from the action against the bankruptcy defendants; and

IT IS FURTHER ORDERED that the motions for summary judgment filed by defendants Pitagora Fund Ltd. and Soundview Composite Ltd. are granted, the grant of interpleader as to those funds is terminated, and Wilmington Trust Company may disburse the funds of those two defendants respectively to them; and

IT IS FURTHER ORDERED that the remaining funds subject to the Court's grant of interpleader on August 28, 2013 shall, for administrative purposes, continue to be held in their respective accounts at Wilmington Trust Company; provided, however, that interpleader of the funds of the bankruptcy defendants shall be subject and subordinate to any bankruptcy court order pertaining to said funds.


        /s/    James T. Vaughn, Jr.
                President Judge

# EXHIBIT E

HEARING DATE AND TIME:    December 17, 2013 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE:       December 10, 2013

**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006 Telephone
(973) 538-5146 Facsimile
-and-
156 West 56th St.
New York, NY 10019
Warren J. Martin Jr.
Mark J. Politan
Terri Jane Freedman

Counsel to the Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X

In re:

    Soundview Elite, Ltd., *et al.*,                    Case No. 13-13098 (REG)
                                        (Jointly Administered)

                Debtors

-------------------------------------------------------- X

**DIRECT TESTIMONY/AFFIDAVIT OF ALPHONSE FLETCHER, JR. ON MOTIONS**
**TO DISMISS, CONVERT, OR APPOINT A TRUSTEE [CORRECTED]**

Pages Intentionally Omitted

involvement in the investigation not be known to Mr.
Fletcher."

113.    Midanek and the Richcourt Funds she "stole" from the Richcourt Family of Funds

were the only other Winding Up Petitioners (other than Citco) proceeding against these Debtors-

in-possession in the Cayman Islands.   In Midanek's case, she used related party, inter-entity

claims and confidential information to seek to liquidate those few entities she hadn't been able to

gain control of by other means.

### C.    The Gerti Muho Affair

114.    Muho was hired to work as an associate for RF Services and Fletcher Asset

Management in June 2012.  He was an impressive young man, who had graduated Summa Cum

Laude from St. John's with a degree in Finance in 2005, and had thereafter worked for a time,

before graduating from University of California Berkeley School of Law in May 2012.   His

credit report commissioned by us in June of 2012 was unremarkable, and a full background

check by Ross Security Consultants dated July 16, 2012 included the statement of an Assistant

Law professor at Berkeley that,

> "on both fronts, trustworthiness and character, Gerti is wonderful.  I worked with
> him for two years as a student here at Berkeley and he consistently proved himself
> to be hardworking, smart and honest."

A copy of redacted versions of the Muho credit report and Confidential Background Report are

annexed hereto as Exhibit "DD".  In September of 2012, Muho was appointed to the Board of

Directors of the Richcourt Funds.

115.    On January 3, 2013, as we were later advised, Muho was arrested in New York

City and charged with reckless endangerment, and driving while intoxicated, after allegedly

fleeing from New York City police officers and instigating a high-speed chase to avoid being

stopped.  See Exhibit "EE", description at para. 10.  I did not learn of this arrest or the pending charges until a month or two later.

116.    Immediately upon learning of this incident, however, and after a number of ensuing discussions with Mr. Muho, Mr. Floyd Saunders, corporate secretary for the Funds and the officer with regular contact with Muho, confirmed that Muho no longer had the ability to perform his job properly.  This was based on his arrest for reckless conduct, his frequent absences from the office, as well as his erratic communications, which were also noted by Ms. Midanek.  As a result, and after speaking with Mr. Saunders, we requested that Muho step down from the board, which he did.  A copy of his April 3rd resignation is annexed hereto as Exhibit "FF".

117.    On or about May 1, 2013, the Debtors advised Wilmington Trust that the Bank should not accept instructions of any sort any from Mr. Muho concerning funds held on behalf of any Richcourt entities.  A copy of our e-mail to Wilmington Trust is annexed hereto as Exhibit "GG".  Specifically, the Funds (through Deborah Midanek) told Wilmington Trust that Muho was no longer an authorized representative of the Richcourt entities and could not authorize transfers to or from any of the accounts created by the Richcourt entities.  *Id.*

118.    Unfortunately, Muho's erratic behavior continued following his separation from the Fletcher affiliates and these Debtors, to the Debtors' detriment.  On or about May 7, 2013, Wilmington Trust received instructions from Mr. Muho completely contrary to those received on May 1 from the Richcourt entities.  In an email, Mr. Muho requested that the sum of $5 million be transferred from accounts owned by the Richcourt entities, including Soundview Elite.  See Exhibit "EE" Complaint at para. 19.

119.    Wilmington Trust did not follow Muho's instructions but instead froze the accounts, and filed an interpleader action on June 17, 2013.  See Exhibit "HH", hereto.  The result, of course is that the Debtors lost access to their cash, further complicating any restructuring and recovery efforts.

120.    On or about August 8, 2013, Muho somehow succeeded in transferring $2,067,377.24 from the HSBC accounts of Debtor Soundview and non-Debtor, Vanquish Fund Limited, to an account of his own entity.  This is all the more remarkable because Muho was not a signatory on the HSBC accounts.  Thus, unlike the letter Midanek wrote to Wilmington Trust (see Exhibit "GG"), it does not appear that the Debtors through Deborah Midanek sent any similar correspondence to HSBC, although the Debtors' counsel's communications with HSBC addresses HSBC's unexplained behavior.  See Exhibit "II" hereto.

121.    On September 27, 2013, the Debtor Soundview Elite and non-Debtor Vanquish Fund Limited sued Muho for conversion, theft and unjust enrichment.  On October 25, 2013, the litigation counsel, Peter Harvey, Esq., obtained an order freezing some $400,000 of the converted funds at Citibank.  See Exhibit "JJ".  Mr. Harvey has been retained in these cases as Special Litigation Counsel to the Debtors.

122.    Mr. Muho is a criminal, although one who was difficult to identify, based upon the background check we obtained.  When his erratic behavior became known to the Debtors, both Deborah Midanek and I immediately took steps to have him removed from all roles with the Debtors.  After his removal, he began taking actions to steal from the Debtors.  The Debtors-in-possession have responded with an action to recover the funds and have had some substantial success, although there is much more to accomplish.

40

2609125

123.    I make no excuses for my own failure to recognize sooner that Muho was a problem.  My judgment on this matter was obviously far from perfect, and it was a huge mistake by me to have Gerti Muho as part of the team working to restructure these Debtors.

### D.    Money and Fund Administrators

124.    The Court is by now extremely familiar with the Gerti Muho affair and the Wilmington Trust Interpleader, resulting in the Debtors having no access to any of their funds since early May 2013.  Obviously, without access to funds, employees, administrators, accountants and attorneys cannot be paid.  Nonetheless, given the propaganda surrounding me, we decided to insist from the Petition Date forward, that until we had our day in Court, no funds whatsoever of these Debtors would be spent absent order of this Court.

125.    Given this strategic approach by the Debtors, it is unfortunate that as a result of objections by the Joint Liquidators and Pasig, assumption of the Six Debtors' agreements with Pinnacle was denied for now, without prejudice.  This denial has left us with no access to an active fund administrator from April 2013, through the present date, after just having retained Pinnacle in January 2013.

126.    Once Pinnacle is retained, the funds will be able to complete their official books and records, complete their schedules and statements for the U.S. Trustee and move forward to quickly propose plans of orderly liquidation or reorganization.

## V.    WHY I PREFER A U.S. BANKRUPTCY PROCEEDING TO A CAYMAN WINDING UP PROCEEDING

### A.    The United Community Bank Asset Tragedy

127.    In the spring of 2011, the Louisiana Pension Funds, who were the largest investors — approximately $100 million — in FIA Leveraged,  began raising serious concerns about their investments, based upon what they were hearing from a reporter.   Specifically,

Pages Intentionally Omitted

are indirect investors in Fletcher International Ltd. (Bermuda) Estate.  The Soundview Debtors'

claims against the Fletcher International Ltd. (Bermuda) Estate should be vigorously prosecuted,

and the subordination should be opposed.

145.    I have never stolen money; I have never run a Ponzi scheme.  The Trustee's

allegations, at best, are that Assets Under Management were calculated in an incorrect manner,

a   previously discredited allegation that the evidence contradicts quite pointedly, and that the

Louisiana Pension Funds monies were used in ways not envisioned in the offering memorandum.

This allegation is also belied by a careful review of the offering memorandum, as done in paras.

51-53 supra.

146.    As the Court is well aware, the funds of these Debtors are under the control of

Wilmington Trust, and soon to be moved to a separate financial institution, which meets the U.S.

Trustee's requirements under §345.  In either case, however, as the Debtors have proposed, no

funds or assets of these Debtors will be expended without express court authority.

147.    Under these circumstances, I believe that I can efficiently shepherd a resolution of

these cases when compared against the cost of a trustee and the historical ignorance any such

trustee will bring to the table.  For the investors, a trustee's structural ignorance means terrible

cost. I submit that a U.S. Bankruptcy with a Debtor-in-possession in control is the best approach.

148.    Further affiant sayeth not.

_____
Alphonse Fletcher, Jr.

Sworn to and subscribed before me
on this _10_ day of December, 2013.

_____
Notary Public

JOHN MINJIRAS
Commission # 1924632
Notary Public - California
San Francisco County
My Comm. Expires Mar 5, 2015

State of California County of

SAN FRANCISCO

Subscribed and sworn to (or affirmed)

before me on this _10_ day of DECEMBER, 20 _13_, by

ALPHONSE FLETCHER, JR.

proved to me on the basis of satisfactory evidence

to be the person(s) who appeared before me.

49

Signature _____

(Seal)

Pages Intentionally Omitted

# EXHIBIT FF

Wednesday, April 3, 2013

The Board of Directors
**America Alternative Investments, Inc.**

I respectfully submit my resignation from the Board of Directors
("**Board**") of America Alternative Investments, Inc. ("**Company**") effective as
of April 3, 2013.

It has been a privilege to serve on the Company's Board and I wish the
Company the best in all future endeavors.

Sincerely,

Gerti Muho

cc.   Alphonse Fletcher, Jr.
      Deborah Hicks Midanek
      Floyd Saunders

Wednesday, April 3, 2013

The Board of Directors
**Elite Designated**

I respectfully submit my resignation from the Board of Directors ("*Board*") of Elite Designated ("*Company*") effective as of April 3, 2013.

It has been a privilege to serve on the Company's Board and I wish the Company the best in all future endeavors.

Sincerely,

Gerti Muho

cc.  Alphonse Fletcher, Jr.
     Deborah Hicks Midanek
     Floyd Saunders

Wednesday, April 3, 2013

The Board of Directors
**New Wave Fund SPC**

I respectfully submit my resignation from the Board of Directors
("***Board***") of New Wave Fund SPC ("***Company***") effective as of April 3, 2013.

It has been a privilege to serve on the Company's Board and I wish the
Company the best in all future endeavors.

Sincerely,

Gerti Muho

cc.   Alphonse Fletcher, Jr.
      Deborah Hicks Midanek
      Floyd Saunders

Wednesday, April 3, 2013

The Board of Directors
**Star Designated**

I respectfully submit my resignation from the Board of Directors ("**Board**") of Star Designated ("**Company**") effective as of April 3, 2013.

It has been a privilege to serve on the Company's Board and I wish the Company the best in all future endeavors.

Sincerely,

Gerti Muho

cc.  Alphonse Fletcher, Jr.
Deborah Hicks Midanek
Floyd Saunders

Wednesday, April 3, 2013

The Board of Directors
**Optima Absolute Return Fund Ltd.**

I respectfully submit my resignation from the Board of Directors ("***Board***") of Optima Absolute Return Fund Ltd. ("***Company***") effective as of April 3, 2013.

It has been a privilege to serve on the Company's Board and I wish the Company the best in all future endeavors.

Sincerely,

Gerti Muho

cc. Alphonse Fletcher, Jr.
Deborah Hicks Midanek
Floyd Saunders

Wednesday, April 3, 2013

The Board of Directors
**Premium Designated**

I respectfully submit my resignation from the Board of Directors ("***Board***") of Premium Designated ("***Company***") effective as of April 3, 2013.

It has been a privilege to serve on the Company's Board and I wish the Company the best in all future endeavors.

Sincerely,

Gerti Muho

cc.  Alphonse Fletcher, Jr.
     Deborah Hicks Midanek
     Floyd Saunders

Wednesday, April 3, 2013

The Board of Directors
**Pitagora Fund Ltd.**

I respectfully submit my resignation from the Board of Directors
("*Board*") of Pitagora Fund Ltd. ("*Company*") effective as of April 3, 2013.

It has been a privilege to serve on the Company's Board and I wish the
Company the best in all future endeavors.

Sincerely,

Gerti Muho

cc.  Alphonse Fletcher, Jr.
     Deborah Hicks Midanek
     Floyd Saunders

Wednesday, April 3, 2013

The Board of Directors
**Richcourt Allweather Fund Inc.**

     I respectfully submit my resignation from the Board of Directors ("**Board**") of Richcourt Allweather Fund Inc. ("**Company**") effective as of April 3, 2013.

     It has been a privilege to serve on the Company's Board and I wish the Company the best in all future endeavors.

Sincerely,

Gerti Muho

cc.  Alphonse Fletcher, Jr.
     Deborah Hicks Midanek
     Floyd Saunders

Wednesday, April 3, 2013

The Board of Directors
**Richcourt Holding, Inc.**

I respectfully submit my resignation from the Board of Directors
("**Board**") of Richcourt Holding, Inc. ("**Company**") effective as of April 3,
2013.

It has been a privilege to serve on the Company's Board and I wish the
Company the best in all future endeavors.

Sincerely,

Gerti Muho

cc:  Alphonse Fletcher, Jr.
     Deborah Hicks Midanek
     Floyd Saunders

Wednesday, April 3, 2013

The Board of Directors
**Richcourt Composite Inc.**

I respectfully submit my resignation from the Board of Directors
("*Board*") of Richcourt Composite Inc. ("*Company*") effective as of April 3,
2013.

It has been a privilege to serve on the Company's Board and I wish the
Company the best in all future endeavors.

Sincerely,

Gerti Muho

cc.  Alphonse Fletcher, Jr.
     Deborah Hicks Midanek
     Floyd Saunders

Wednesday, April 3, 2013

The Board of Directors
**Richourt Euro Strategies**

I respectfully submit my resignation from the Board of Directors ("*Board*") of Richourt Euro Strategies ("*Company*") effective as of April 3, 2013.

It has been a privilege to serve on the Company's Board and I wish the Company the best in all future endeavors.

Sincerely,

Gerti Muho

cc. Alphonse Fletcher, Jr.
Deborah Hicks Midanek
Floyd Saunders

Wednesday, April 3, 2013

The Board of Directors
**Richcourt Top Stars I Fund Ltd**

I respectfully submit my resignation from the Board of Directors
(*"Board"*) of Richcourt Top Stars I Fund Ltd (*"Company"*) effective as of April
3, 2013.

It has been a privilege to serve on the Company's Board and I wish the
Company the best in all future endeavors.

Sincerely,

Gerti Muho

cc.  Alphonse Fletcher, Jr.
     Deborah Hicks Midanek
     Floyd Saunders

Wednesday, April 3, 2013

The Board of Directors
**Soundview Composite Ltd**

    I respectfully submit my resignation from the Board of Directors ("*Board*") of Soundview Composite Ltd ("*Company*") effective as of April 3, 2013.

    It has been a privilege to serve on the Company's Board and I wish the Company the best in all future endeavors.

Sincerely,

Gerti Muho

cc. Alphonse Fletcher, Jr.
    Deborah Hicks Midanek
    Floyd Saunders

Wednesday, April 3, 2013

The Board of Directors
**Soundview Elite Ltd.**

I respectfully submit my resignation from the Board of Directors ("*Board*") of Soundview Elite Ltd. ("*Company*") effective as of April 3, 2013.

It has been a privilege to serve on the Company's Board and I wish the Company the best in all future endeavors.

Sincerely,

Gerti Muho

cc.  Alphonse Fletcher, Jr.
     Deborah Hicks Midanek
     Floyd Saunders

Wednesday, April 3, 2013

The Board of Directors
**Soundview Premium, Ltd.**


I respectfully submit my resignation from the Board of Directors
(*"Board"*) of Soundview Premium, Ltd. (*"Company"*) effective as of April 3,
2013.


It has been a privilege to serve on the Company's Board and I wish the
Company the best in all future endeavors.


Sincerely,

Gerti Muho


cc.  Alphonse Fletcher, Jr.
     Deborah Hicks Midanek
     Floyd Saunders

Wednesday, April 3, 2013

The Board of Directors
**Soundview Star Ltd.**

I respectfully submit my resignation from the Board of Directors ("***Board***") of Soundview Star Ltd. ("***Company***") effective as of April 3, 2013.

It has been a privilege to serve on the Company's Board and I wish the Company the best in all future endeavors.

Sincerely,

Gerti Muho

cc. Alphonse Fletcher, Jr.
Deborah Hicks Midanek
Floyd Saunders