IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                          :        Chapter 11
                                                :
       SOUNDVIEW ELITE LTD., et al.,            :        Case No. 13-13098 (REG)
                                                :
                          Debtors.              :        (Jointly Administered)
                                                :
------------------------------------------------------------x

**ADDENDUM TO CROSS-BORDER INSOLVENCY PROTOCOL**

**REGARDING SOUNDVIEW ELITE LTD.,**

**SOUNDVIEW PREMIUM, LTD. AND SOUNDVIEW STAR LTD.**

# TABLE OF CONTENTS

**Page**

I      GENERAL .................................................................................................................................1

II     COMMON ADJUDICATION METHODOLOGY FOR VALID CLAIMS OF REDEMPTION CREDITORS..............................................................................................2

III    CLAIMS AND PAYMENT THEREOF.............................................................................3

IV   RESERVE PROVISIONS AND GUIDELINES FOR THE LIMITED DEBTORS' CHAPTER 11 CASES AND THE CAYMAN ISLANDS PROCEEDINGS .......................5

V     DISTRIBUTION PROVISIONS AND GUIDELINES.......................................................7

VI    ADDENDUM EFFECTIVE DATE.....................................................................................9

VII   MISCELLANEOUS ...........................................................................................................9

APPENDIX A – GLOSSARY OF DEFINED TERMS ...........................................A-1-8

APPENDIX B – WAIVER, RELEASE AND EXCULPATION PROVISIONS ..................B-1-4

This Addendum (the "**Addendum**") to the Cross-Border International Protocol Regarding Soundview Elite Ltd., Soundview Premium, Ltd. and Soundview Star Ltd. (Docket No. 516) (the "**Protocol**") is entered into between:

(a) Peter Anderson and Matthew Wright, solely in their capacity as Joint Official Liquidators of the Limited Debtors in the Cayman Islands Proceedings; and

(b) Corinne Ball, not personally, but solely in her capacity as Trustee appointed in the Chapter 11 Cases.

## RECITALS

Whereas, pursuant to section 12.5 of the Protocol (which was approved by the US Bankruptcy Court and the Grand Court of the Cayman Islands), it was agreed that the Parties should file the Addendum which would set forth the distribution scheme for allowed claims, including the valuation methodology (the "**Common Redemption Claims Adjudication Methodology**") to be used by the Trustee and the JOLs for the allowance, disallowance or rejection of claims or debts filed by or on behalf of investors in the Limited Debtors.

## AGREEMENT

Now, the Parties agree that:

## I    GENERAL

1.1    <u>Acknowledgment and Agreement</u>.  The Trustee and the JOLs acknowledge and agree that:

(a) The laws of the United States and the Cayman Islands differ (or may differ) in certain respects on issues concerning the administration of the Estates; and

(b) In consequence it has been and may continue to be necessary to elect that the laws of one country should be treated as applying exclusively to certain issues in order for the Estates to be administered efficiently and without potential inconsistencies depending on where such issues are presented for determination; and

(c) Decisions of the Trustee and the JOLs regarding the adjudication of Claims in accordance with the Addendum shall be binding in the Chapter 11 Cases and the Cayman Islands Proceedings.

1.2    <u>Trustee's Investigation</u>.  The Trustee will File a report detailing the outcome of her Investigation with the Bankruptcy Court as soon as is reasonable practicable after her Investigation has concluded.  At the Trustee's discretion, an interim report may be Filed.

1.3     Waiver, Release, Exculpation, Insurance and Indemnification. The Trustee and the JOLs for themselves and for the creditors and Interest Holders in the Limited Debtors' Chapter 11 Cases and the Cayman Islands Proceedings agree to and accept, and they and the creditors and Interest Holders in the Limited Debtors' Chapter 11 Cases and the Cayman Islands Proceedings shall be bound by, the waiver, release, exculpation, insurance and indemnification provisions, appended hereto as Appendix B.

## II     COMMON ADJUDICATION METHODOLOGY FOR VALID CLAIMS OF REDEMPTION CREDITORS

2.1     All valid Claims of Redemption Creditors (other than Insider Claims) Filed in accordance with the Bar Date Order shall be deemed Filed based on the Redemption Requests submitted by the relevant Redemption Creditor prior to the Petition Date, without regard to the actual date on which each such Redemption Request was submitted. All such Redemption Creditor Claims shall rank *pari passu* and shall be adjudicated by the JOLS (a) in accordance with Cayman Islands law as to timing and notice and to the extent that such law can be reconciled with this Addendum, (b) by reference to the net asset value of each of the Limited Debtors as at 31 July 2013 as prepared by the former directors and (c) on the basis that no redemption gating mechanism was implemented by the Limited Debtors. The JOLs, in consultation with the Trustee, shall determine the validity and amount of each Claim set forth in this subsection, irrespective of the jurisdiction in which such Claim was Filed, and provide a schedule of such Claims to the Trustee. The Trustee shall subsequently amend the Schedules accordingly, to list such Claims as liquidated, not contingent and not disputed.

2.2     All Claims of Redemption Creditors that are Insiders Filed in accordance with the Bar Date Order shall be valued by the JOLs *for reserve purposes only*, provided that such valuation shall not constitute the allowance, or admission, of the validity of such Claims.

2.3     If a putative Redemption Creditor failed to file a Redemption Request prior to the Petition Date then that Redemption Creditor shall have no valid Redemption Creditor Claim against any Estate, but will retain an Interest in the applicable Estate.

2.4     To the extent that any Claim of a Redemption Creditor has not been validated or allowed, pendent validation or allowance (in whole or in part), the JOLs shall reserve for such Claim. The JOLs may, in the event that the quantum of Redemption Creditor Claims is impacted by fraud or default, take such steps (in consultation with the Trustee) as are appropriate to address the situation.

## III     CLAIMS AND PAYMENT THEREOF

3.1     The Trustee and the JOLs acknowledge and agree that the Cash to make the distributions pursuant to the Addendum and to fund the Reserves, other applicable reserves and the Available Cash will be available from (a) funds realized in connection with past operations of the Limited Debtors, (b) funds realized in connection with the liquidation of the non-Cash assets of the Limited Debtors, including the Liquidation Recoveries, and (c) the receipt of $1 million by Soundview Elite from the BVI Funds pursuant to the Interfund Settlement, provided that no Cash

or non-Cash assets of a Limited Debtor shall be distributed or transferred before the Reserves have been fully funded by such Limited Debtor.

3.2    Soundview Elite owns the following non-Cash assets:

| | Currency | Most recent Value | Date of Value | No. of Shares | Custodian / Registered Name |
|---|---|---|---|---|---|
| 72 CAPITAL INT LTD SR D 1301FF 70 72CILTD 290570 RES | USD | 0.00 | | 2,412.3221 | Citco (sub-custodied at HSBC Monaco) |
| 72 CAPITAL INTERNATIONAL LTD SR D CL 1301FF 72CILTD 290570SI | USD | 0.00 | | 30,290.2870 | Citco (sub-custodied at HSBC Monaco) |
| 72 CAPITAL INTERNATIONL LTD SR E CL 1301KW 72CILTD129720 RES | USD | 92.89 | 24-Mar-14 | 92.8941 | Citco (sub-custodied at HSBC Monaco) |
| 72 CAPITAL INTERNATIONL LTD SR E CL 1301KW 72CILTD129720 SI | USD | 6,885.45 | 30-Mar-14 | 6,885.4465 | Citco (sub-custodied at HSBC Monaco) |
| S.A.C. CAPITAL INTL CL. -E- SIES-13-01KW-20 SCILTD 12970 | USD | 417.26 | 31-Aug-13 | 3.7802 | Soundview Elite Ltd - held at HSBC Monaco |
| S.A.C. CAPITAL INTL SERIES D CLASS 13-01FF SCILTD-290570 | USD | 46,250.09 | 31-Jul-13 | 420.5035 | Soundview Elite Ltd - held at HSBC Monaco |
| S.A.C. CAPITAL INTL SERIES D CLASS 13-01FF SCILTD-290570 SI | USD | 66,393.61 | 31-Aug-13 | 67,254.8581 | Soundview Elite Ltd - held at HSBC Monaco |
| S.A.C. CAPITAL INTL SERIES E CLASS 13-01KW SCILTD 129720 SI | USD | 15,114.21 | 31-Aug-13 | 14,958.5299 | Soundview Elite Ltd - held at HSBC Monaco |
| S.A.C. CAPITAL INTL SERIES E CLASS E11-12 SCILTD 187615 RES | USD | 7,639.00 | 31-Aug-13 | 10,421.2396 | Soundview Elite Ltd - held at HSBC Monaco |
| S.A.C. CAPITAL INTL SERIES E CLASS E11-12 SCILTD 187615 SI | USD | 59,689.00 | 31-Aug-13 | 41,772.7971 | Soundview Elite Ltd - held at HSBC Monaco |
| CAXTON GLOBAL INVESTMENTS LIMITED CLASS USD SI-A/A(12-2011) [2] | USD | 415,790.13 | 31-May-14 | 15,460.0000 | Nautical Nominees Ltd. FBO Soundview Elite Ltd |
| DBGM Offshore LTD CLASS USD FEB 2009 | USD | 67,672.71 | 31-May-14 | 34.6068 | Nautical Nominees Ltd. FBO Soundview Elite Ltd |
| TAO L HOLDINGS LTD USD CLASS 13-032116 | USD | | | 3.677573 | Nautical Nominees Ltd. FBO Soundview Elite Ltd |
| TUDOR BVI GLOBAL FUND LTD LEGACY CLASS | USD | 8.08 | 30-Sep-14 | 0.0056 | Citco (sub-custodied at HSBC Monaco) |
| TUDOR BVI GLOBAL FUND LTD PTG.SHS LEGACY CLASS ILLIQUID | USD | 66,016.88 | 20-Sep-13 | 43.8493 | Soundview Elite Ltd - held at HSBC Monaco |

Section 5.2 of the Protocol allocates primary responsibility for the collection and realization of assets based on their location. If asked to determine the matter, the Bankruptcy Court may take the view (applying the Bankruptcy Code and applicable case law) that some or all of these non-Cash assets are to be treated as U.S. assets, whereas a court in another jurisdiction, including the Cayman Islands Court, may take the view that the same assets are to be treated as non-U.S. assets. The Trustee and the JOLs wish to avoid wasting the Debtors' (and the Courts') resources determining sterile legal issues of this type. Accordingly, the JOLs and the Trustee hereby agree that the JOLs shall be primarily responsible for the realization and collection of the non-Cash assets listed above wherever they are physically or legally situated and without that issue having to be determined. The JOLs shall consult with the Trustee prior to any sale or liquidation of these non-Cash assets and, if their realization or collection requires or involves any action in the United States, then the Trustee shall be responsible for taking such action rather than the JOLs (as the Trustee did recently when securing the three non-Cash assets held by Nautical Nominees Ltd). For the avoidance of doubt, the JOLs shall hereafter have primary responsibility for realizing those three assets as well as the others listed above.

3.3     The JOLs and the Trustee shall take such steps as are reasonably appropriate to fully provide for payment of valid Administrative Claims incurred in the Chapter 11 Cases and the Cayman Islands Proceedings, including, but not limited to, the Trustee seeking an Administrative Claim Bar Date.

3.4     <u>Priority (Including Priority Tax), Secured and General Unsecured Claims</u>.

    3.4.1     No distributions on account of Allowed Claims of General Unsecured Creditors and Allowed Claims of Redemption Creditors shall be made until (a) all Allowed Administrative Claims, Allowed Priority Tax Claims, other Allowed Priority Claims and Allowed Secured Claims have been paid in Cash or have otherwise been fully provided for, (b) all Administrative Claims, Priority Tax Claims, other Priority Claims and Secured Claims that are Disputed Claims have been fully reserved for in the Reserves and (c) the Reserves have been fully funded as set forth herein.

    3.4.2     Payment of Allowed General Unsecured Claims and funding of any Reserves for such General Unsecured Claims that are Disputed Claims shall be required prior to any distributions on account of Allowed Claims of Redemption Creditors.

    3.4.3     Subject to sections 2.1 and 2.2 hereof, the Trustee shall adjudicate all Claims Filed against the Limited Debtors in the Chapter 11 Cases that are identified on the General Reserves Budget as being reserved for by the Trustee. Except as set forth in section 2.2 and with respect to the Claims identified on the General Reserves Budget as being reserved for by the Trustee, the JOLs shall adjudicate all General Unsecured Claims Filed against the Limited Debtors; provided, however, that the JOLs shall not adjudicate any such Claim to the extent the party that Filed such Claim is a litigation target until it is determined not to commence litigation or, if litigation is commenced, such litigation is resolved or a Final Order has been entered in such litigation.

3.5    Insider Claims.  Subject to section 2.2 hereof, and notwithstanding any provisions in the Bar Date Order or this Addendum stating otherwise, the Trustee shall be solely responsible for the adjudication of all Claims Filed by Insiders.

3.6    Objection to and/or Subordination of Insider Claims.  The Trustee objects to all Insider Claims and seeks subordination of same to all other Claims against the applicable Limited Debtor. The Trustee shall File a list of such Insider Claims with the Bankruptcy Court within 20 Business Days of the Addendum Effective Date.  If no opposition against such subordination is Filed with the Bankruptcy Court within 14 days of the filing of such list, all such Insider Claims shall be subordinated as set forth herein.

## IV    RESERVE PROVISIONS AND GUIDELINES FOR THE LIMITED DEBTORS' CHAPTER 11 CASES AND THE CAYMAN ISLANDS PROCEEDINGS

4.1    Funding of Reserves.

    4.1.1    To the extent not otherwise provided for herein or ordered by the Bankruptcy Court or the Cayman Islands Court, or paid in Cash, the Trustee and the JOLs agreed, and shall agree going forward, on appropriate reserves of Cash to be set aside in each of the Limited Debtors' Chapter 11 Cases and the Cayman Islands Proceedings *in accordance with the Budgets* prior to any distribution being made by the relevant Limited Debtor's estate in accordance with this Addendum in the Chapter 11 Cases or in the Cayman Islands Proceedings (consistent with clause 4.1.6 below), in order to pay or provide for:

        (a)    The expenses that accrued in respect of each Limited Debtor prior to the Addendum Effective Date, including Allowed Priority Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and good faith estimates for Administrative Claims (including Fee Claims of the Trustee's Professionals and JOLs and the JOLs' counsel) and General Unsecured Claims identified in the General Reserve Budget;

        (b)    All expenses and liabilities of the Estates, the Trustee and the JOLs after the Addendum Effective Date as identified in the Budgets;

        (c)    All Disputed Claims identified in the General Reserves Budget;

        (d)    Any Claims resulting from the rejection of Executory Contracts and Unexpired Leases; and

        (e)    The Trustee's commission as set forth in section 326 of the Bankruptcy Code and based on the monies disbursed or turned over in the Limited Debtors' Chapter 11 Cases by the Trustee to parties in interest (including monies disbursed or turned over at the direction of the Trustee pursuant to the Interfund Settlement)

(such Cash, collectively, the "**Reserves**").

4.1.2    All Cash of Soundview Premium shall be set aside as Reserves until Soundview Premium has received its distribution from Soundview Elite, allowing Soundview Premium to satisfy unpaid Administrative Claims in its Chapter 11 Case and its Cayman Islands Proceeding.

4.1.3    Notwithstanding the fact that the Limited Debtors hold Cash in other currencies, the Reserves will be calculated in United States dollars.

4.1.4    When additional Cash held (including from Unclaimed Property) exceeds $500,000, the Trustee and the JOLs shall consult as to whether the Reserves should be reset, and the Trustee may subsequently reset the Reserves after notice and a hearing, to:

    (a)    account for fluctuations in the non-U.S. dollar Cash in the Reserves,

    (b)    increase the Reserves to the extent they are insufficient for the purposes stated in Section 4.1.1 hereof or to pay the expenses incurred by the Trustee after September 30, 2015, and

    (c)    decrease the Reserves.

Thereafter, from time to time, any Available Cash will be distributed in accordance with the Addendum. For the avoidance of doubt, the JOLs shall have the right to object to any increase or decrease of the Reserves by the Trustee.

4.1.5    The Trustee and the JOLs shall not be obligated to physically segregate and maintain separate accounts for the Reserves. Reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Trustee and/or the JOLs to determine Available Cash.

4.1.6    The Trustee and/or the JOLs may make a distribution in respect of a Limited Debtor's Estate provided that the Reserves have been fully funded in respect of that Limited Debtor, whether or not the Reserves have also been fully funded in respect of other Limited Debtors.

4.2    Allocation of Administrative Expenses for Calculating Reserves.

    (a)    Administrative expenses shall wherever possible be attributed to the Limited Debtor in respect of which those expenses were incurred.

    (b)    Administrative expenses attributable to the Limited Debtors only which cannot be attributed to a particular Limited Debtor or Limited Debtors, shall be allocated based on identifiable available assets on the Petition Date, namely Cash and investments in both third party funds and inter-Limited Debtor receivables, and more specifically as follows: (i) 55% shall be allocated to Soundview Elite; (ii) 21% shall be allocated to Soundview Premium; and (iii) 24% shall be allocated to Soundview Star.

(c)     Administrative expenses attributable to the Debtors which cannot be attributed to a particular Debtor or Debtors, shall be allocated based on identifiable available assets on the Petition Date, namely Cash and investments in both third party funds and inter-Debtor receivables, and more specifically as follows: (i) 34% shall be allocated to Soundview Elite; (ii) 13% shall be allocated to Soundview Premium; (iii) 24% shall be allocated to Soundview Star; and (iv) the remaining 38% shall be allocated among the Designated Debtors.

4.3     Investments.   All Cash and Available Cash shall be invested in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by the Bankruptcy Court (with respect to Cash in the United States) or the Cayman Islands Court (with respect to Cash in the Cayman Islands).

## V     DISTRIBUTION PROVISIONS AND GUIDELINES

5.1     Timing of Distributions.   Distributions shall be made on the Initial Distribution Date and on any subsequent Distribution Dates. As soon as reasonably practicable after the Addendum Effective Date and after the Trustee has amended the Schedules as set forth herein and the Reserves have been fully funded, the JOLs and the Trustee shall consult with a view to the JOLs making an Initial Distribution in the Cayman Islands on account of Allowed Claims of non-Insider Redemption Creditors when practical to do so and in accordance with this Addendum. Any such Initial Distribution, and any subsequent distributions, shall be made in the Cayman Islands and in accordance with (a) the methodology set forth herein and (b) the applicable provision of Cayman Islands law for notice to stakeholders.

5.2     Distributions by the JOLs.   The JOLs will solely make distributions in accordance with this Addendum, after (a) the Reserves have been established by the Trustee and the JOLs and (b) all applicable reserves have been established by the JOLs on account of all Allowed Claims of Redemption Creditors. Electing Eligible Investors who have Filed a Claim in the Cayman Islands Proceedings without a Certification shall not be entitled to a distribution unless and until they provide a Certification to the JOLs. In case any Cash becomes available to make distributions to Holders of Interests after all Allowed Claims have been paid in full, the JOLs will solely make distributions on account of Allowed Interests in the Limited Debtors.

5.3     Funding of Distributions.   The Trustee, after sufficient Reserves have been established in accordance with Section 4.1 above, shall consult with the JOLs to determine whether a transfer of Cash held on behalf of the Limited Debtors to the JOLs is appropriate to fund distributions to holders of Allowed Claims by the JOLs as set forth in section 5.2. The Trustee shall remit to the JOLs any Cash remaining after all Allowed Claims (including any Fee Claims and the Trustee's commission) in the Limited Debtors' Chapter 11 Cases have been paid in full.

5.4     Withholding Taxes.   Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

5.5     Setoffs. Except as otherwise provided in the Addendum or the Protocol, agreements entered into in connection therewith, or in agreements previously approved by Final Order of the Bankruptcy Court, the Trustee or the JOLs may, pursuant to section 553 of the Bankruptcy Code, applicable Cayman Islands bankruptcy law or applicable non-bankruptcy law, offset against the distribution on any Allowed Claim, before any distribution is made on account of such Claim, any and all of the Claims, rights and causes of action of any nature that a Limited Debtor or its Estate may hold against the Holder of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action or omission of the Trustee or the JOLs, nor any provision of this Addendum or the Protocol, shall constitute a waiver or release by a Limited Debtor, its Estate, the Trustee or the JOLs of any such Claims, rights and causes of action that a Limited Debtor or its Estate may possess against such Holder. To the extent the Trustee or the JOLs fail to set off against a Holder and seek to collect a Claim from such Holder after a distribution is made pursuant to the Addendum, the Trustee or the JOLs shall be entitled to full recovery on the Claim against such Holder.

5.6     Assignment of Claims. In consideration of the Trustee undertaking to take the steps necessary to bring the Insider Litigation, each Redemption Creditor with an Allowed Claim shall upon the execution of this Addendum be deemed to have assigned any claims that Redemption Creditor has against any party which arise from or are connected with its investments in the applicable Limited Debtor to that Limited Debtor's Estate. Such assignments shall take effect pursuant to this Addendum on the Addendum Effective Date. If, prior to the Addendum Effective Date, a Redemption Creditor notified the JOLs and the Trustee in writing of its election not to assign some or all of such claims then such claims shall not be assigned but that Redemption Creditor's entitlement to share in any recoveries made by the Limited Debtors from the Insider Litigation shall be reduced by the total amount recovered by that Redemption Creditor from any parties who are defendants to the Insider Litigation brought by the Trustee, except to the extent that the Redemption Creditor establishes that such recoveries are not reflective of losses recoverable by the Limited Debtors.

5.7     Other Information. All Creditors entitled to receive a distribution on account of their Allowed Claim shall furnish any information requested by the JOLs or the Trustee required to be furnished by applicable law prior to such distribution being made.

5.8     Executory Contracts and Unexpired Leases. In accordance with section 365 of the Bankruptcy Code, the Trustee shall have the power and authority to assume or reject any Executory Contracts and Unexpired Leases of the Limited Debtors except for those Executory Contracts and Unexpired Leases that are governed by Cayman Islands law and/or whose place of performance is the Cayman Islands, provided that in any case the Trustee shall have the power to assume or reject Executory Contracts and Unexpired Leases for which the contract party is an Insider or that are related to a Proceeding commenced or to be commenced by the Trustee. The Trustee or JOLs, as applicable, shall File one or more notices of assumed, assumed and assigned, or rejected Executory Contracts or Unexpired Leases and serve it on the counterparties in accordance with applicable law. If no objection against such assumption, assumption and assignment, or rejection is Filed with the Bankruptcy Court within 14 days of such notice, such Executory Contracts shall be assumed, assumed and assigned, or rejected, as applicable.

## VI  ADDENDUM EFFECTIVE DATE

Notwithstanding anything to the contrary in the Protocol, the Addendum shall become effective upon its execution by the JOLs and the Trustee (the "**Addendum Effective Date**") Section 12.5 of the Protocol is hereby amended accordingly. The Parties shall present the Addendum to their respective courts followings its coming into effect on the Addendum Effective Date and any objections shall be determined as part of that process. The JOLs shall have the right to request approval of the Addendum by the Cayman Islands Court after the Addendum Effective Date, and the Trustee shall have the right to request approval of the Addendum by the Bankruptcy Court after the Addendum Effective Date.

## VII  MISCELLANEOUS

7.1  Monthly Operating Reports. As of the Addendum Effective Date, the Limited Debtors and the Trustee on behalf of the Limited Debtors, shall not be required to File monthly operating reports with the Bankruptcy Court.

7.2  Prosecution of Claims Held by the Estates. The Trustee, after consultation with the JOLs, is authorized to retain or engage such professional persons as are reasonably appropriate to pursue claims and matters in the United States on behalf of the Estates, including the Insider Litigation, and to pay the reasonable fees and expenses of such professional persons. For the avoidance of doubt, the JOLs shall have the right to object to the retention of any professional person by the Trustee. The JOLs hereby agree to the retention by the Trustee of the contingency fee counsel for whom the proposed engagement letter has been provided to the JOLs to pursue claims against the litigation targets specified by the Trustee to the JOLs.

7.3  Avoidance Actions. Except as expressly set forth in the Addendum, the effectiveness of the Addendum shall not constitute the waiver of any right, Claim or cause of action belonging to a Limited Debtor or its Estate against any Person, including, but not limited to, any right, Claim or cause of action respecting the avoidance of a transfer under section 544, 547, 548, 549 or 553(b) of the Bankruptcy Code or otherwise described or referenced in the report of the Trustee's Investigation or available to the Estates or the JOLs pursuant to Cayman Islands law. All such rights, Claims and causes of action shall remain property of the Estates

7.4  Abandonment of Property of the Limited Debtors. The Trustee, after consultation with the JOLs, shall have the right, in accordance with all applicable laws, to abandon in any commercially reasonable and lawful manner any assets of the Limited Debtors that the Trustee (a) reasonably concludes are of inconsequential benefit to the Estates or their creditors, or are placing a burden on the Estates or (b) reasonably determines, at the conclusion of distributions, to be too impractical to distribute. In such case, the Trustee will File a notice of abandonment with the Bankruptcy Court.

7.5  Books and Records. The Trustee and the JOLs are each authorized to make decisions regarding the retention and destruction of the Limited Debtors' books and records in their

respective possession or under their respective control in accordance with applicable law unless otherwise ordered by the Bankruptcy Court or the Cayman Islands Court, as applicable, provided that they shall provide 30 days' notice to each other of the destruction of any books and records. The costs of retaining these books and records are Administrative Claims against the Estates that shall be paid from Reserves.

7.6     Maintenance of Principal Office of Limited Debtors. The JOLs retain the right to maintain the Limited Debtors' principal office in the Cayman Islands which may perform the functions described in Treas. Reg. sec. 1.864-2(c)(2)(iii).

7.7     Notice of Addendum. The Trustee and JOLs will provide notice of this Addendum to: (a) all parties who have Filed proofs of Claim against a Limited Debtor, (b) all parties who received notice of the Bar Date[1] and (c) all parties who have requested notice pursuant to Bankruptcy Rule 2002.

7.8     Amendments, Waivers, Etc. This Addendum may not be waived, amended or modified in any way except in writing, signed by both the JOLs and the Trustee. Notice of any proposed amendment or modification of the Addendum shall be provided to (a) all parties who have Filed proofs of Claim against a Limited Debtor to the extent that such parties have not received a final distribution on account of their Claim and (b) all parties who have requested notice pursuant to Bankruptcy Rule 2002.

7.9     Severability. Should any provision in this Addendum be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Addendum.

---

[1]     See Affidavit of Service (Bankruptcy Court Docket No. 440); Amended Affidavit of Service (Bankruptcy Court Docket No. 448).

Dated: September 23, 2015

The Joint Official Liquidators of Soundview Elite Ltd., Soundview Premium, Ltd. and Soundview Star Ltd.:

_____

Peter Anderson, solely in his capacity as Joint Official Liquidator of Soundview Elite Ltd., Soundview Premium, Ltd. and Soundview Star Ltd. (without personal liability)

_____

Matthew Wright, solely in his capacity as Joint Official Liquidator of Soundview Elite Ltd., Soundview Premium, Ltd. and Soundview Star Ltd. (without personal liability)

The Trustee:

Corinne Ball, solely in her capacity as chapter 11 trustee of Soundview Elite Ltd., Soundview Premium, Ltd. and Soundview Star Ltd. (without personal liability)

11

# APPENDIX A – GLOSSARY OF DEFINED TERMS

As used in the Addendum, capitalized terms have the meanings set forth below.

(1)    **"Addendum Effective Date"** has the meaning set forth in Section VI of the Addendum.

(2)    **"Administrative Bar Date"** means the date fixed by the Bankruptcy Court at the Trustee's request after consultation with the JOLs by which all Persons asserting Administrative Claims arising on and after the Petition Date (other than certain excluded Claims specified by the Bankruptcy Court) against the Limited Debtors must have Filed proofs of such Administrative Claims or requests for payment of such Administrative Claims or be forever barred from asserting such Claims against the Limited Debtors, their property, or the Estates.

(3)    **"Administrative Claim"** means a Claim for costs and expenses of administration asserted or arising under sections 503(b) or 507(b) of the Bankruptcy Code (including a Fee Claim), or a Claim given the status of an Administrative Claim by Final Order of the Bankruptcy Court, and all fees due under 28 U.S.C. § 1930, or the equivalent thereof under Cayman Islands law.

(4)    **"Allowed Administrative Claim"** means all or that portion of an Administrative Claim which either (a) has been allowed by a Final Order, or (b)(i) was incurred in the ordinary course of business during the Chapter 11 Cases or the Cayman Islands Proceedings of the Limited Debtors to the extent due and owing without defense, offset or counterclaim of any kind; and (ii) proof of which was timely Filed by the Administrative Bar Date, or deemed timely Filed under applicable law or by order of the Bankruptcy Court, pursuant to the Bankruptcy Code, Bankruptcy Rules or applicable law, or Filed late, with leave pursuant to a Final Order of the Bankruptcy Court and either (x) is not objected to by the Objection Bar Date and is not otherwise a Disputed Claim, or (y) is otherwise allowed by a Final Order. Unless otherwise specified herein or by Final Order of the Bankruptcy Court, "Allowed Administrative Claim" shall not, for purposes of computation of distributions under the Addendum, include interest or similar charges accrued after the Petition Date.

(5)    **"Allowed Claim"** means, as applicable, a Claim (other than an Allowed Administrative Claim) against a Limited Debtor that is:

    (a)    listed by a Limited Debtor in the Schedules in an amount greater than zero and as being not contingent, unliquidated, disputed or undetermined, and that it is not otherwise a Disputed Claim;

    (b)    a Claim, proof of which has been timely Filed by the applicable Bar Date as set forth in the Bar Date Order, or deemed timely Filed under applicable law or by order of the Bankruptcy Court, pursuant to the Bankruptcy Code, Bankruptcy Rules or applicable law, or Filed late, with Bankruptcy Court leave pursuant to a Final Order, and either (i) is not objected to by the Objection Bar Date and is not otherwise a Disputed Claim, or (ii) is otherwise allowed by a Final Order; and

      (c)      a Claim that is allowed: (i) in a Final Order; or (ii) pursuant to the terms of the Protocol or this Addendum.

Unless otherwise specified by Final Order of the Bankruptcy Court or the Cayman Islands Court, "Allowed Claim" shall not, for purposes of computation of distributions under this Addendum, include interest or similar charges accrued after the Petition Date except with respect to any Allowed Secured Claim as permitted by section 506(b) of the Bankruptcy Code.

(6)     **"Allowed Priority Claim"** means a Priority Claim which has become an Allowed Claim.

(7)     **"Allowed Priority Tax Claim"** means a Priority Tax Claim which has become an Allowed Claim.

(8)     **"Allowed Secured Claim"** means a Secured Claim which has become an Allowed Claim.

(9)     **"Available Cash"** means all unrestricted Cash of the Limited Debtors, including any Liquidation Recoveries, after deduction of (a) Cash to be distributed in accordance herewith and (b) the Cash to fund the Reserves, with each such amount to be determined from time to time.

(10)     **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, effective in accordance with the provisions of 28 U.S.C. § 2075, as now in effect or hereafter amended.

(11)     **"Bar Date"** means the applicable bar date by which a proof of Claim must be, or must have been, Filed, as established by an order of the Bankruptcy Court (including the Bar Date Order) or the Protocol.

(12)     **"Budgets"** means the General Reserves Budget and the budgets provided by the Trustee's counsel and financial consultant[2], and the JOLs and their counsel, on a pro forma basis and containing their reasonable estimate of their fees and expenses to complete certain matters set forth therein. The budgets of the Trustee's Professionals shall not be shared with stakeholders.

(13)     **"Business Day"** means any day, other than a Saturday, Sunday, United States "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)) and Cayman public holiday.

(14)     **"BVI Funds"** means Richcourt Euro Strategies Inc., Optima Absolute Return Fund Ltd., Richcourt Allweather Fund Inc., America Alternative Investments Ltd., Richcourt Composite Inc., and Richcourt Allweather B Inc.

---

[2]    Exclusive of fees incurred in connection with the Interfund Settlement and this Addendum.

(15) **"Cash"** means the legal tender of any country. For the purposes of making a distribution, the value of the national currency of a country other than the United States shall be converted into United States dollars at the rate published in the Wall Street Journal as of the Distribution Record Date.

(16) **"Claim"** means a claim as such term is defined in section 101(5) of the Bankruptcy Code against a Debtor, including a debt of a Limited Debtor under applicable Cayman Islands law.

(17) **"Composite Proceeding"** means adversary proceeding entitled *Corinne Ball as Chapter 11 Trustee of Soundview Elite Ltd.* vs. *Soundview Composite Ltd.*, case number 14-01923 (REG) pending in the Bankruptcy Court, and any and all related Proceedings (including any and all related appeals).

(18) **"Disputed Claim"** means:

   (a) if no proof of Claim or no application for payment of an Administrative Claim has been Filed by the applicable Bar Date or deemed timely Filed under applicable law: (i) a Claim that has been listed in the Schedules as other than disputed, contingent or unliquidated, but as to which an objection has been Filed; or (ii) a Claim that has been listed in the Schedules as disputed, contingent or unliquidated or as having an unknown or otherwise undetermined value; or

   (b) if a proof of Claim or a request for payment of an Administrative Claim has been Filed by the applicable Bar Date, or has otherwise been deemed timely Filed under applicable law or leave to File a late Claim has been granted pursuant to a Final Order: (i) a Claim that is listed in the Schedules as other than disputed, contingent or unliquidated, but as to which the nature or amount of the Claim as asserted in the proof of Claim varies from the nature and amount of such Claim as it is listed in the Schedules; (ii) a Claim as to which an objection has been Filed, and which objection has not been withdrawn or denied by a Final Order; (iii) a Claim (other than Administrative Claim) for which a proof of Claim has been Filed, but for which no Claim has been listed in the Schedules; or (iv) a Claim for which a proof of Claim or request for payment has been Filed in an amount which is contingent or unliquidated, in whole or in part.

(19) **"Distribution Date"** means the date or dates set by the Trustee from time to time after the Initial Distribution Date to make payments to Holders of Allowed Claims in accordance with the Addendum.

(20) "**Distribution Record Date**" means the date that is two Business Days before (a) the Initial Distribution Date or (b) any subsequent Distribution Date, as applicable. The transfer of any Interest in a Limited Debtor by a Redemption Creditor after the Petition Date shall not be recognized for purposes of distribution on account of Allowed Claims of Redemption Creditors.

(21) **"Electing Eligible Investor"** has the meaning given to such term in the Bar Date Order.

(22)  **"Estate"** means, as to each Limited Debtor, the estate created for such Limited Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and the applicable provisions of Cayman Islands law.

(23)  **"Executory Contract or Unexpired Lease"** means a contract or lease to which a Limited Debtor is a party that is subject to assumption, assumption and assignment or rejection pursuant to section 365 of the Bankruptcy Code and includes any modifications, amendments, addenda or supplements thereto or restatements thereof.

(24)  **"Fee Claim"** means a Claim for compensation or reimbursement of expenses of a Professional (a) pursuant to sections 326, 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court or (b) under Cayman Islands law in accordance with the Protocol.

(25)  **"FILB"** means Fletcher International Ltd.

(26)  **"FILB Plan Administrator"** means Mr. Richard Davis, formerly the chapter 11 trustee for FILB.

(27)  **"File"** means file with the Bankruptcy Court, the Cayman Islands Court or the JOLs, as applicable.

(28)  **"Final Order"** means an order or judgment of the Bankruptcy Court or the Cayman Islands Court (or any other court, as applicable) which has not been reversed, stayed, modified or amended and as to which the time to appeal or seek review, rehearing, reargument or *certiorari* has expired and as to which no appeal or petition for review, rehearing, reargument, stay or *certiorari* is pending, or as to which any right to appeal or to seek *certiorari*, review, or rehearing has been waived, or, if an appeal, reargument, petition for review, *certiorari* or rehearing has been sought, the order or judgment of the Bankruptcy Court or the Cayman Islands Court (or any other court, as applicable) which has been affirmed by the highest court to which the order was appealed or from which the reargument, review or rehearing was sought, or *certiorari* has been denied, and as to which the time to take any further appeal or seek further reargument, review or rehearing has expired.

(29)  **"General Reserves Budget"** means the Budget dated August 17, 2015 as revised periodically in accordance with this Addendum[3]. The JOLs and the Trustee have agreed to reserve funds for all Claims listed on the General Reserves Budget.

(30)  **"General Unsecured Claim"** means any Claim against a Limited Debtor that is not (a) an Administrative Claim, (b) a Priority Claim, (c) a Priority Tax Claim, (d) a Secured Claim, (e) a Claim of a Redemption Creditor, (f) a Claim of an Insider or (g) an Interest.

(31)  **"Governmental Unit"** means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

---

[3]  Exclusive of fees incurred in connection with the Interfund Settlement and this Addendum.

(32)     **"Holder"** means a holder of a Claim or Interest.

(33)     **"Holder of Record"** means as of the Distribution Record Date, a Holder entitled to receive a distribution pursuant to the terms of this Addendum.

(34)     **"Indemnified Person"** means any Person who was or is made a party to or is threatened to be made a party to, or is otherwise involved in, any Proceeding by reason of the fact that such Person, or a Person for whom such Person is or was a Professional, is or was the Trustee, a JOL, or a successor to the Trustee or the JOLs, whether in an official capacity or in any other capacity.

(35)     **"Initial Distribution"** means the first distribution of (a) Cash and (b) Available Cash (if any) to Holders of Allowed Claims in accordance with this Addendum that occurs on or after the Addendum Effective Date.

(36)     **"Initial Distribution Date"** means the date on which the Initial Distribution is made.

(37)     **"Insider"** has the meaning given to such term in section 101(31) of the Bankruptcy Code and in the Bar Date Order, provided, however, that (a) to the extent there is an inconsistency between the Bankruptcy Code and the Bar Date Order, the Bar Date Order shall apply, and (b) Richcourt Allweather B Inc. and any of the Debtors shall not be considered an Insider for purposes of the Protocol or this Addendum. For the avoidance of doubt, the following Persons are considered Insiders:

    (a) Citco Group Limited;
    (b) Ermanno Unternaehrer;
    (c) Soundview Capital Management LTD.;
    (d) Richcourt Capital Management LTD.;
    (e) Citco Fund Services (Cayman Islands) Limited;
    (f) Citco Fund Services (Europe) B.V.;
    (g) Citco Global Custody (NA) N.V.;
    (h) Citco Banking Corporation N.V.;
    (i) Citco Trading Inc.;
    (j) Richcourt Holding Inc.;
    (k) CFS Company LTD.;
    (l) CFS Corporation LTD.;
    (m) Christopher G. Smeets;
    (n) Robert A. Voges;
    (o) Alphonse Fletcher, Jr.;
    (p) Fletcher Asset Management, Inc.;
    (q) Fletcher International Inc.;
    (r) George Ladner;
    (s) Enrico Laddaga;
    (t) Gabriele Magris;
    (u) Yves Bloch;
    (v) Denis Kiely;
    (w) Stewart Turner;

(x) Gerti Muho; and
(y) Floyd Saunders
.

(38)  **"Insider Litigation"** means any Proceeding against any Insider that (a) the Trustee in consultation with the JOLs, or (b) the JOLs in consultation with the Trustee may bring. For the avoidance of doubt, "Insider Litigation" includes any and all claims that may be brought during such Proceeding including, but not limited to, counterclaims by any party to the Insider Litigation.

(39)  **"Interest"** means the rights of a Holder of stock or other equity interest in a Limited Debtor and the rights of any entity to purchase or demand the issuance of any of the foregoing, including: (i) redemption, voting, participating, dividend, exchange and conversion rights and (ii) liquidation preferences.

(40)  **"Interfund Settlement"** means the settlement agreement by and among the FILB Plan Administrator on behalf of FILB, FILB, FIA Leveraged Fund and its joint official liquidators, Fletcher Income Arbitrage Fund, Ltd. and its joint official liquidators, Fletcher Fixed Income Alpha Fund, Ltd. and its joint voluntary liquidators, the Massachusetts Bay Transportation Authority Retirement Fund, Firefighters' Retirement System, New Orleans Firefighters' Pension and Relief Fund, and Municipal Employees' Retirement System of Louisiana, the Trustee on behalf of the Debtors, the JOLs, and the BVI Funds and their joint liquidators.

(41)  **"Interfund Settlement Order"** means, collectively, the Final Orders of (a) the Bankruptcy Court in the Chapter 11 Cases, (b) the Cayman Islands Court in the Cayman Islands Proceedings and (c) the British Virgin Islands Court in the winding up proceedings of the BVI Funds, each approving the Interfund Settlement.

(42)  **"Investigation"** refers to the Trustee's investigation into the Debtors' management and affairs.

(43)  **"Liquidation Recoveries"** means the amounts recovered from time to time by the Trustee or the JOLs, as the case may be, on account of the liquidation of the applicable Limited Debtor's assets (including recoveries in any Proceedings or the Insider Litigation), net of the costs and expenses of such recoveries.

(44)  **"Objection Bar Date"** means the later of: (a) 60 days after the Addendum Effective Date; (b) 60 days after the filing of a proof of Claim, and (c) such other period of limitation for objecting to a Claim as may be specifically fixed by the Bankruptcy Rules or an order of the Bankruptcy Court or the Cayman Islands Court.

(45)  **"Person"** means any individual, corporation, partnership, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, the Trustee, a JOL, or a successor of the Trustee or the JOLs, or any other entity.

(46)  **"Priority Claim"** means any Claim against a Limited Debtor that is accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or Priority Tax Claim.

(47)  **"Priority Tax Claim"** means any Claim against a Limited Debtor for taxes, interest and penalties against the Limited Debtors entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

(48)  **"Proceedings"** means any threatened, pending or completed action, suit, contested matter, adversary proceeding, appeal or other proceeding, whether civil, criminal, administrative or investigative, domestic or foreign. For the avoidance of doubt, Proceedings include the Composite Proceeding and any Insider Litigation.

(49)  **"Professionals"** means those Persons: (a) employed pursuant to an order of the Bankruptcy Court in accordance with sections 326, 327 and 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Addendum Effective Date pursuant to sections 326, 327, 328, 329, 330 and 331 of the Bankruptcy Code; (b) for which compensation and reimbursement or expenses has been allowed by the Bankruptcy Court pursuant to section 503(b)(2) of the Bankruptcy Code; or (c) for which compensation and reimbursement of expenses has been allowed pursuant to the Protocol.

(50)  **"Protocol"** has the meaning set forth in the preamble of the Addendum.

(51)  **"Redemption Creditor"** means a holder of a non-voting equity interest in a Limited Debtor (including any custodian holding such interest on account of an individual investor) who has submitted a request to redeem its equity interest prior to the Petition Date. For the avoidance of doubt, notwithstanding any provision in this Addendum to the contrary, (a) Nautical Nominees Ltd. IFO Soundview Premium Ltd. and (b) Nautical Nominees Ltd. IFO Soundview Star Ltd. are Redemption Creditors with Allowed Claims against Limited Debtor Soundview Elite in an amount to be determined in accordance with the methodology set forth in section II of the Addendum that is applicable to any and all Redemption Creditors' Claims.

(52)  **"Redemption Request"** means the most recent pending request by a Redemption Creditor to redeem its equity interest in a Limited Debtor.

(53)  **"Reserves"** has the meaning set forth in Section 4.1 of the Addendum.

(54)  **"Scheduled"** means set forth in the Schedules.

(55)  **"Schedules"** means each of the Schedules of Liabilities and Statement of Affairs, respectively, Filed by the Limited Debtors, as they have been or may hereafter be amended from time to time.

(56)  **"Secured Claim"** means that portion of a Claim against a Limited Debtor that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of a Limited Debtor in and to

property of a Limited Debtor's Estate to the extent of the value of the Claim Holder's interest in such property as of the relevant determination date or (b) subject to set off under section 553 of the Bankruptcy Code to the extent of the amount subject to set off, each as determined by sections 506(a) and 1111(b) of the Bankruptcy Code and Bankruptcy Rule 3012.

(57)     "**Unclaimed Property**" means any Cash unclaimed on or after the twelfth month following the Initial Distribution Date or any subsequent Distribution Date.  Unclaimed Property shall include:  (a) checks (and the funds represented thereby) mailed to a Holder of Record and returned as undeliverable without a proper forwarding address; (b) uncashed checks (and the funds represented thereby); or (c) checks (and the funds represented thereby) not mailed or delivered to a Holder of Record because no address was available to which to mail or deliver such property.

# APPENDIX B – WAIVER, RELEASE AND EXCULPATION PROVISIONS

1.    Waiver of Claims.  As of the Addendum Effective Date, and except as otherwise expressly provided in the Interfund Settlement Order or this Addendum, all Persons who have held, hold or may hold Claims against or Interests in the Limited Debtors shall be deemed, by virtue of their receipt of distributions and other treatment contemplated under the Addendum, to have forever covenanted with the Limited Debtors, the Trustee and the JOLs, and with each of their present agents, employees, representatives, financial advisors, accountants and attorneys, to waive and not to (a) sue, or otherwise seek any recovery from the Limited Debtors, the Estates, the Trustee, the JOLs, or any of their present agents, employees, representatives, financial advisors, accountants or attorneys, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, based upon any act or occurrence or failure to act taken before the Addendum Effective Date arising out of the business or affairs of the Limited Debtors, or (b) assert any Claim, obligation, right or cause of action and liability which any such Holder of a Claim against or Interest in the Limited Debtors may be entitled to assert against any such Person, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transaction or occurrence taking place on or before the Addendum Effective Date in any way relating to the Limited Debtors, their Chapter 11 Cases, the Cayman Islands Proceedings, this Addendum or the Protocol, to the full extent permitted by applicable law.

2.    Releases.  As of the Addendum Effective Date, and except as otherwise expressly provided in the Interfund Settlement Order or this Addendum, all Persons who, directly or indirectly, hold or who have held any Claim against or Interest in the Limited Debtors shall hereby release the Limited Debtors, their Estates, the Trustee, the JOLs, and their present employees, agents, representatives, financial advisors, attorneys and accountants from (a) any and all claims or liabilities arising from actions taken in their capacity as such; and (b) any and all Claims, obligations, rights, causes of action and liabilities which any Holder of a Claim against or Interest in a Limited Debtor may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transaction or occurrence taking place on or before the Addendum Effective Date in any way relating to the Limited Debtors, their Chapter 11 Cases, the Cayman Islands Proceedings, this Addendum or the Protocol, to the full extent permitted by applicable law.

3.    Injunction.  Except as otherwise provided in this Addendum or the Interfund Settlement Order, and subject to the occurrence of the Addendum Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Limited Debtors are, with respect to any such Claims or Interests, permanently enjoined from and after the Addendum Effective Date from:

> (a)    commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Limited Debtors, their Estates, the Trustee or the JOLs, or any of their property, or any direct successor in interest to the Limited Debtors or their Estates, or any property of any such successor;

(b)     enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against the Limited Debtors, their Estates, the Trustee, or the JOLs, or any of their property, or any direct successor in interest to the Limited Debtors or their Estates, or any property of any such successor;

(c)     creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Limited Debtors, their Estates, the Trustee, or the JOLs, or any of their property, or any direct successor in interest to the Limited Debtors or their Estates;

(d)     asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Limited Debtors, their Estates, the Trustee, or the JOLs, or any of their property, or any direct successor in interest to the Limited Debtors or their Estates; and

(e)     acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Addendum or the Interfund Settlement Order.

4.     <u>Exculpation</u>. From and after the Addendum Effective Date, the Limited Debtors, the Trustee or the JOLs, and the professional persons retained by them (including the Professionals) shall have no liability to any Person, including a Holder of a Claim against or Interest in the Limited Debtors, for any act or omission in connection with, or arising out of or related in any way to the Chapter 11 Cases, the Cayman Islands Proceedings, the Protocol and the Addendum (including the formulation and implementation thereof and any contract, instrument, release or other agreement or document entered into in connection therewith) or the property to be distributed pursuant to the Addendum and the Protocol, <u>provided</u>, <u>however</u>, that the foregoing shall not affect the liability that otherwise would result from any such act or omission (a) by the Limited Debtors, the JOLs or the JOLs' professional persons to the extent that such act or omission is determined by the Cayman Islands Court to have constituted gross negligence or willful misconduct and (b) by the Limited Debtors, the Trustee or the Trustee's professional persons (including the Professionals) to the extent that such act or omission is determined by the Bankruptcy Court to have constituted gross negligence or willful misconduct. The Trustee and the JOLs, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Addendum and the Protocol such that any act or omission taken upon advice of counsel shall not constitute gross negligence or willful misconduct.

5.     <u>Indemnification and Insurance</u>.

(f)     The Estates shall indemnify and hold harmless any Indemnified Person who was or is made a party or is threatened to be made a party to, or is otherwise involved in, any Proceeding or any inquiry or investigation that could lead to such a Proceeding against any and all expenses, liability and loss (including attorneys' fees, judgments, excise and similar taxes and punitive damages, fines or penalties and amounts paid in settlement) actually incurred or suffered by

him or her in connection with the investigation, defense, appeal or settlement of any such Proceeding, <u>provided</u> <u>that</u> such Indemnified Person acted in good faith and in a manner the Indemnified Person reasonably believed to be in, or not opposed to, the best interests of the Estates and, with respect to any criminal action or proceeding, had no reasonable cause to believe his or her conduct was unlawful. The termination of any action, suit or Proceeding by judgment, order, settlement, conviction, or upon a plea of *nolo contendere* or its equivalent, shall not, of itself, create a presumption that the Indemnified Person did not act in good faith and in a manner which is reasonably believed to be in or not opposed to the best interests of the Estates or, with respect to any criminal action or Proceeding, that the Indemnified Person had reasonable cause to believe that the conduct was unlawful.

(g)     The right to indemnification conferred in this Section shall be a contractual right, and shall include the right to be paid or reimbursed by the Estates for any expenses incurred in investigating, defending, appealing or settling, being a witness in or participating in any such Proceeding on an ongoing basis in advance of the final disposition of such Proceeding and without any determination as to the Indemnified Person's ultimate entitlement to indemnification. Expenses (including attorneys' fees) incurred by an Indemnified Person in defending a Proceeding shall be paid by the Estates on an ongoing basis in advance of the final disposition of such Proceeding upon receipt of a written undertaking, by or on behalf of such Indemnified Person, to repay all amounts so advanced if it shall ultimately be determined that he or she is not entitled to be indemnified by the Estates under this Section or otherwise.

(h)     Notwithstanding anything to the contrary in this Addendum, the obligations of the Limited Debtors and their Estates to indemnify the Trustee, the JOLS, or their Professionals, pursuant to the Limited Debtors' certificates of incorporation, by-laws, or other organizational documents, applicable statutes, and pre-Addendum Effective Date agreements, with respect to all present and future actions, suits, and proceedings against any of such indemnified Persons based upon any act or omission related to service with, for, or on behalf of any such Limited Debtor, the Trustee or the JOLs at any time, as such obligations were in effect at the time of any such act or omission, in all cases net of applicable insurance proceeds, shall remain unaffected on or after the Addendum Effective Date.

(i)     The Trustee and the JOLs are authorized to purchase commercially reasonable liability insurance respecting the implementation of their duties and obligations under this Addendum and the Protocol.

6.     <u>Existing or Future Claims.</u> The waiver of claims, releases and injunctions provided for herein shall not operate to waive, release, enjoin or in any way determine or limit as to quantum or measure of damages any claims against any person or entity other than against the Limited Debtors, the Estates and any Indemnified Person (including the Trustee and the JOLs).

7.      <u>Government Enforcement Actions</u>.  Notwithstanding anything to the contrary contained in this Addendum, the waiver of Claims, releases and injunctions provided for herein shall not operate to waive, release, or enjoin any pending or future enforcement actions of the United States Securities and Exchange Commission or any other governmental enforcement agency against any Person other than against the Limited Debtors, their Estates, the Trustee, the JOLs and their present financial advisors, attorneys, and accountants.

8.      <u>Pre-Addendum Effective Date Settlement Agreements</u>..  Notwithstanding anything to the contrary contained herein, the waiver of Claims, releases and injunctions provided for herein shall not affect any pre-Addendum Effective Date settlement agreements entered into by the Trustee and approved by order of the Bankruptcy Court or operate to expand, diminish or otherwise have any effect on any party to those agreements' rights, claims, or defenses.